## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA

**68V BTR HOLDINGS, LLC**                                                          **PLAINTIFF**

**vs.**                                          **CIVIL ACTION NO. _____**

**CITY OF FAIRHOPE;**
**CITY OF FAIRHOPE PLANNING COMMISSION**                              **DEFENDANTS**


### COMPLAINT

COMES NOW Plaintiff 68V BTR Holdings, LLC ("Plaintiff" or "68V BTR"), by and through its counsel, and for its Complaint against Defendants City of Fairhope and City of Fairhope Planning Commission (collectively, the "Commission" or "City"), states:

### NATURE OF ACTION

1.      This is a 1983 action arising from the City of Fairhope Planning Commission's denial of 68V BTR's applications to construct two multi-occupancy housing complexes on property owned by 68V BTR in the City of Fairhope.  68V BTR met all of Fairhope's requirements for approval of the complexes, and, prior to 68V BTR's submission of the development plat applications to the Fairhope Planning Commission for approval, the Commission represented to 68V BTR that it met all requirements for approval of the complexes.

2.      However, after resident members of the Planning Commission voiced concern over how multi-occupancy apartment buildings could be "perceived," its members decided—before the application approval hearings—that the easiest way to prevent the construction of the multi-occupancy complexes would be to "just deny" the applications when they formally came up for Commission review, which the Commission subsequently did.  The Commission's denials violated its administrative duty to fairly evaluate the applications and constitutes arbitrary, capricious, and

1

unreasonable action in violation of the due process protections provided by the Fourteenth Amendment to the Constitution.

## OVERVIEW

3.      68V BTR purchased tracts of land in order to construct two multi-occupancy housing complexes and sought approval from the City of Fairhope and the City of Fairhope Planning Commission for multi-occupancy plats.  Although the development plats met all the requirements of the City's ordinances and subdivision regulations, the Commission voted to disapprove the plats after several citizens objected to the perceived "lower-income" developments.

4.      Defendants abridged Plaintiff's rights to due process under the Federal and Alabama Constitutions in refusing to approve the subdivision plats.  This is actionable under 42 U.S.C. § 1983.

## DIRECT EVIDENCE OF THE CITY'S UNLAWFUL ACTIONS

5.      In a recorded meeting of the Fairhope Planning Commission, the Commission is caught on camera stating that they intended to deny Plaintiff's development plat applications before the applications were ever even submitted to the Commission for review and approval.  In the video, taken prior to Plaintiff's submission of the building applications, the Planning Commission admits that there is no "reason" to deny the application but that they could "just deny" the application anyway because they did not want Plaintiff's multi-occupancy complexes built. **Exhibit A** (Planning Commission Video Transcript).  A true and correct copy of the transcript of the video recording is attached hereto as **Exhibit A** and incorporated herein by reference.

6.      Additionally, in a recorded conversation with Fairhope Planning Commission Member, Hollie MacKeller, MacKeller acknowledges that the Commission denied 68V BTR's subdivision applications for pretextual reasons.  **Exhibit B** (Audio Transcript).  Specifically,

MacKeller states that the pretextual reason for denying 68V BTR's application was "health and safety and traffic" but in reality, the Commission denied the application because they simply did not want the specific multi-use complexes 68V BTR sought to build. MacKeller stated that the Commission had no issue with, and approved of, other nearby apartment complexes because those complexes are "nicer and the rent is too much [at those complexes] so you're not getting . . ." **Exhibit B**. MacKeller did not finish the preceding sentence, but it is not hard for one to logically assume the direction the conversation was heading. MacKeller also acknowledges that the City would not have an issue with approving other apartment complexes in the same area. **Exhibit B**. A true and correct copy of the transcript of the audio recording is attached hereto as **Exhibit B** and incorporated herein by reference.

7.      Further, in the MacKeller audio recording, MacKeller, again acknowledging that there was no legitimate reason to deny Plaintiff's application, states that she does not believe Plaintiff would bring a lawsuit because Plaintiff is a local company whose owner lives in Daphne and owns Truland Homes and "him pushing the envelope too much would be really bad for his business." **Exhibit B**. MacKeller, in that statement, essentially admits that the Planning Commission would actually prevent businesses affiliated with 68V BTR from obtaining future subdivision approval from the City of Fairhope if 68V BTR exercised its rights under the law. **Exhibit B**.

8.      This arbitrary and abusive display of power by the Commission's member above is the same as that used by the Commission when it denied Plaintiff's plat applications at issue here. For example, when Commission staff evaluated one of 68V BTR's two proposed developments, the staff noted that "[l]and uses with similar densities exist nearby, including some with similar densities nearby, including some with Fairhope Zoning." **Exhibit C** (Skyline Staff Report). The

Staff Report then stated that "[w]ith this in mind and considering this is currently Unzoned property, **staff cannot recommend denial based solely on location of the proposed development**." *Id*. Yet, the Commission, arbitrarily and capriciously denied the application anyway purportedly based on the location of the proposed development—without any legitimate reason for doing so.

## PARTIES, JURISDICTION, AND VENUE

9.    Plaintiff 68V BTR Holdings, LLC is a local Alabama limited liability company with its principal place of business in Daphne, Alabama and doing business in Baldwin County, Alabama at all relevant times.

10.    Defendant City of Fairhope (the "City") is a class 6 municipality located in Baldwin County, Alabama.

11.    Defendant City of Fairhope Planning Commission (the "Commission") is a governmental body created and existing pursuant to Alabama Code 11-52-2 and City of Fairhope Ordinance 17-1.  Pursuant to City of Fairhope Ordinance 17-5, the Commission is vested with the power to do all things authorized by Alabama statute concerning the subdivision of unimproved property within 5 miles of the corporate limits of the city ("extra territorial jurisdiction").

12.    Jurisdiction in this case is predicated upon 28 U.S.C. §§ 1331, 1343(a), and 2201 in that it presents an actual controversy arising under and brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, and the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the Due Process and Equal Protection Clauses set forth in the Constitution of Alabama.

13.    This Court has jurisdiction of state law claims in this case pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

14.    Venue is proper in this Court pursuant to 47 U.S.C. § 332(c) (TCA), 28 U.S.C. § 1391 and 28 U.S.C. § 90(a) (4) because Plaintiff's proposed developments would be located within this judicial district, because all Defendants are residents of this judicial district and because the acts and omissions described herein occurred within this judicial district.

15.    At all times material to this action, Plaintiff has been the record owner of the fee simple title in and to approximately 17 acres of real property situated in Baldwin County, Alabama, assigned Parcel numbers 24268 and 271784 by the Baldwin County Revenue Commissioner and situated at the corner of Dyer Road and Bishop Road in the unincorporated planning area of Fairhope, Alabama (the "Skyline Property").

16.    At all times material to this action, Plaintiff has been the record owner of the fee simple title in and to the approximate 19.5 acres of real property situated in Baldwin County, Alabama assigned Parcel number 46-06-24-0-000-007.000 by the Baldwin County Revenue Commissioner and situated on Lawrence Road in the unincorporated planning area of Fairhope, Alabama in the North 1/2 of Northwest 1/4 of Northwest 1/4 of Section 24, Township 6S, Range 2E (the "Gables at Lawrence Property" or "Gables Property").

## FACTUAL BACKGROUND

17.    This case involves two properties that 68V BTR intended to develop into multi-occupancy housing complexes: (1) the Skyline Property; and (2) Gables Property (collectively, the "Properties"). Under the City of Fairhope's subdivision regulations, any owner of land within the City's jurisdiction wishing to subdivide land is required to submit to the Fairhope Planning Commission a plat of the subdivision for approval. A landowner cannot proceed with improvement, transfer, or sale of lots within a subdivision until the plat for the subdivision is approved by the Planning Commission. Because approval to improve or sell one's property

necessarily involves constitutionally-protected property and land use rights, the City of Fairhope is required to provide approval if a landowner meets the City's requirements for subdivision approval.

### A.    Preliminary Affirmations of Approval by the City and Site Preparation

18.    In June 2021, 68V BTR identified two contiguous parcels of land for development at the corner of Dyer Road and Bishop Road within the extra-territorial jurisdiction of the City of Fairhope which comprise the Skyline Property.

19.    On June 30, 2021, 68V BTR identified for development a parcel of land fronting on Lawrence within the extra-territorial jurisdiction of the City of Fairhope which comprises the Gables Property.

20.    Representatives of 68V BTR met with the City of Fairhope staff on August 18, 2021 for a preliminary meeting to discuss development of multi-occupancy complexes at the Skyline and Gables Properties. Fairhope's representatives told 68V BTR's representatives that, because the Properties were un-zoned in the county, if the projects "checked all the boxes," then the projects would be approved.

21.    On September 24, 2021, in reliance upon the ability to develop the property for multi-occupancy, 68V BTR purchased the Gables at Lawrence Property from Wendall Hudson and Tonia R. Hudson at the price of $695,000.

22.    On November 15, 2021, in reliance upon the City's representation that 68V BTR would be able to develop the Skyline Property for multi-occupancy, 68V BTR purchased the Skyline Property from Carolyn Gill Koch, trustee of the Dean George Koch Revocable Trust Agreement dated April 21, 2010, at the price of $1 million.

23.    Next, in reliance upon the ability to develop both the Properties for multi-occupancy pursuant to the City's representations, 68V BTR engaged a substantial number of third-party contractors, consultants, designers, and other service providers to perform work on the Properties, including, but not limited to, the following:

    a)  68V retained S.E. Civil, LLC ("S.E. Civil") to prepare construction plans for townhomes to be located on the Skyline Property. The plans included detailed site plans, grading and drainage plans, erosion and sediment control, utility plans, street and lighting plans, and construction details for site improvements.

    b)  68V BTR engaged WAS Design to prepare a master landscape and greenspace plan for the Skyline Property.

    c)  68V BTR engaged Neel-Schaffer, Inc. to perform a traffic study in connection with the development of the Properties.

    d)  68V BTR engaged Terracore Development Services, LLC ("Terracore") to provide development services.

    e)  68V BTR engaged Wetland Sciences, Inc. to perform a wetland delineation for the Skyline Property.

24.    Plaintiff prepared and submitted detailed pre-application plans describing the proposed development communities.  Plaintiff subsequently received permission from the City to submit applications for preliminary plat approval.

**B.    Dissent by Residents and Subsequent Backlash by the City and Commission**

25.    On November 15, 2021, S.E. Civil and Terracore on behalf of 68V BTR conducted a community meeting about the Skyline and Gables development projects.

26.    When word spread around the community that the Skyline and Gables Properties would be used for multi-occupancy housing, the project became a topic of dissent among residents of the City of Fairhope, especially among white affluent residents.  The main grief was that the multi-occupancy complexes were not expensive enough to price-out lower-income tenants, including minority tenants.

27.     The resident dissent came at a time of growing hostility against new development in Fairhope.  In response to the growing concern about new development in Fairhope, the City enacted, on December 13, 2021, Fairhope Ordinance No. 1735 (the "Moratorium"), designed to curb new development in Fairhope.  **Exhibit D** (Moratorium).  The Moratorium provided additional authority to the City and Commission to regulate land in Fairhope and temporarily prohibited "acceptance of and consideration of all Subdivision and Multiple Occupancy Project (as defined in Article IV, Section H of the Fairhope Subdivision Regulations) Applications by staff and the City of Fairhope Planning Commission outside of the corporate limits of the City of Fairhope but within the Planning Jurisdiction of the City of Fairhope." *Id*.

28.     The Moratorium would have given the City the express power to not accept and refuse to consider 68V BTR's applications for the Skyline and Gables Properties.  However, the Gables and Skyline projects indisputably met the Moratorium's "Exemption for Currently Submitted Projects." *Id*.

29.     Specifically, the Moratorium Ordinance expressly provides that "the Moratorium shall not apply to any project for which any of the following has been made to and received by staff and/or the City of Fairhope Planning Commission as required prior to the effective date of this ordinance:

a.   Informal Review or Pre-Application Conference pursuant to Article IV, Section B of the Fairhope Subdivision Regulations that occurred between December 1, 2019 and December 6, 2021; or

b.   Complete application for multiple occupancy project; or

c.   Complete application for preliminary plat approval; or

d.   Complete application for final plat approval."

30.     The Commission acknowledged that 68V BTR's Gables and Skyline projects were not subject to the Moratorium and expressed anger over the fact the projects were not subject to the Moratorium's restriction.

31.     Specifically, on February 7, 2022, at a recorded Planning Commission hearing, a Commission member, Art Dyas, expressed his frustration with the fact that 68V BTR's Skyline and Gables projects would not be subject to the Moratorium in the following language:

> [We have] busted their fannies to get zoning in place and now were going to tell them, well you know they jumped ahead of y'all and because they jumped ahead of y'all, y'all are out of luck. You're going to end up with a massive- what is it a 200 or 150 units or something like that stuck in the middle of  a zoned area? It probably is not going to be conducive or even remotely the way that district is going to be zoned in that area.

32.     **Exhibit A**.     Significantly, another Commission member, Rebecca Bryant, responded by stating that, to solve their problem, the Commission could "just deny" 68V BTR's application at the hearing.  *Id*.  The first Commission member then stated that "you've got to have reasons to deny it."  *Id*.  Bryant then indicates that a reason for denial could be fabricated at the hearing.  *Id*.  Another person present replied that "I don't think there's anything else we can say." *Id*.

33.     Also at the public meeting on February 7, 2022, the attorney for the City of Fairhope advised the Commission members that denying an application would force an applicant to come back under new regulations—i.e., the Moratorium that the Gables and Skyline projects were not subject to.

34.     After word of residents' dissent regarding the Gables and Skyline projects reached the Fairhope Planning Commission, combined with the Commission's anger over the fact 68V BTR was not subject to the Moratorium, the Commission suddenly began creating new, evolving requirements and obligations and demanding new items in regard to the Properties that were

unclear, specific to 68V BTR's two developments only (and not other developments in town), and unreasonable.

35.     For example, the Commission kept expanding the amount of "greenspace" that 68V BTR purportedly needed for the developments, even though both the Gables and Skyline projects exceeded the amount of greenspace required under Fairhope's Subdivision Regulations.

36.     It is apparent that the Commission's subsequent actions (especially when considered with the Board's statement that it "just deny" the applications) comprised a coordinated effort to deny 68V BTR's applications for the Skyline and Gables projects without regard to legitimacy.  Such conduct is the definition of arbitrary and capricious action violative of due process in the State of Alabama and federally.

37.     Nevertheless, 68V BTR complied with all of the City's new purported requirements and demands, and did everything else the City asked of it regarding the Properties—no matter how unreasonable.

38.     Additionally, 68V BTR materially revised the engineering and design of the Gables and Skyline projects at an additional cost based upon purported concerns raised at the community meeting and by Commission staff.

39.     On February 10, 2022, representatives of 68V BTR met with the Mayor of Fairhope, Sherry Sullivan, to discuss the Skyline project and issues raised by Commission staff concerning greenspace and "lot and blocks."  Sherri Sullivan assured 68V BTR that the development plats would be approved if 68V BTR checked all the boxes.

40.     However, 68V BTR's team found the requirements and demands made by the Commission to be continuously evolving and indefinite, making compliance increasingly difficult.

41.    Fairhope's evolving and indefinite demands were couched in the City's nebulous interpretation of its own land development code as it relates to types of greenspace and private roads.

42.    Specifically, the Commission made remarks regarding the scale and character of 68V BTR's proposed developments being inconsistent with surrounding areas, which evidences the City's attempt to enforce zoning ordinances on un-zoned property—an improper administrative action.

43.    The City was interpreting and enforcing its code in different ways depending on the project at issue.

44.    Based upon feedback from 68V BTR's February 10, 2022 meeting with the City, two additional units were removed from the Skyline project, at substantial financial cost to 68V BTR, to link greenspace areas together pursuant to the City's request, even though this was not a normal or reasonable request.

45.    Additionally, 68V BTR reduced the units of the Gables at Lawrence project from 150 to 136, resulting in a decreased financial profit from the development, based upon purported concerns raised by Commission staff.

**C.    Denials of Applications for Pretextual Reasons**

46.    On April 4, 2022, the Commission staff issued a recommendation for approval of the Skyline Project.  **Exhibit C.**  Nonetheless, the Commission unanimously denied the application for the Skyline project citing concerns about drainage, traffic, congestion, and safety—i.e., the pretextual reasons discussed by Commission Member, Hollie MacKeller.

47.    The Planning Commission's reasons for denying the Skyline application are directly contrary to the staff report on the Skyline Property.

48.     Specifically, and first, the Staff Report contained a third-party professional drainage report, which determined that "the proposed detention pond for the property is adequate to effectively handle and store the peak post development flows" for up to "100-year storm events." **Exhibit C**.

49.     Second, the Staff Report noted that "[l]and uses with similar densities exist nearby, including some with similar densities nearby, including some with Fairhope Zoning." **Exhibit C** (Skyline Staff Report).  The Staff Report then stated that "[w]ith this in mind and considering this is currently Unzoned property, staff cannot recommend denial based solely on location of the proposed development." *Id*.

50.     In regard to Gables, the Commission staff recommended denial of the project because it purportedly did not meet greenspace requirements, because its scale and character were allegedly inconsistent with the surrounding area, and because of purported drainage issues. **Exhibit E** (Gables Staff Report).

51.     However, the greenspace requirements of the Fairhope Subdivision Regulations are not applicable to single owner multi-occupancy projects.  Specifically, Article IV, Section H, of the Fairhope Subdivision Regulations concerning multi-occupancy projects does not incorporate or reference the design standards set forth in Article V, Section C regarding greenspace.

52.     Comparing a multi-occupancy project's scale and character with the development in surrounding areas is a "zoning" function and is not a permissible basis for denial of a subdivision plat in "un-zoned" territory.  The City's actions of regulating land use based on criteria such as the character of surrounding land constitutes unauthorized zoning action that is arbitrary, capricious, and not in accordance with law.

53.     Additionally, such a process does not involve clearly drawn standards which can be uniformly applied and which give reasonable notice to applicants of requirements with which they must comply to obtain approval.

54.     On April 4, 2022, in furtherance of the Commission's predetermined decision to deny the Gables application, Art Dyas wrongfully moved the Commission to deny the application of the Gables project on the basis of fabricated pretexts.  The other members joined, and the Commission denied the Gables application.

55.     The City's denial of the Gables application for drainage concerns is unfounded **because the third-party engineer *the City hired* to evaluate the property's drainage concluded that "*drainage design meets the minimum development standards*."**  **Exhibit E** (emphasis added).  Further, the water-flow plan for the Gables Property met Alabama drainage requirements, and the Commission internally approved of the water-flow plan before denying the application. Notwithstanding the City's prior approval of the site's drainage plan and its own hired consultant's approval, after resident dissent over the development spread and concerned residents hired their own purported engineer to come up with a list of fabricated "possible" issues regarding the Gables Property's water-flow, the Commission suddenly decided to backtrack and rely on the fabricated possible "future" issues concocted by the residents' engineer in contravention of the City's own prior determination, their hired engineer's conclusion, and basic engineering principles.

56.     The fact that the Commission denied the applications for pretextual reasons is clear not only from the Commission's predetermined decision to deny the applications before the determination hearing and the break from their own engineer's and staff's opinions but also from a recorded conversation with Commission member, Hollie MacKeller, after the denials occurred.

57.    Specifically, MacKeller acknowledges that the Commission denied 68V BTR's development applications for pretextual reasons.    **Exhibit B** (Audio Transcript).    In fact, MacKeller stated that the pretextual reasons for denying 68V BTR's applications was "health and safety and traffic," among other (fabricated) reasons, but in reality, the Commission denied the applications because they simply did not want the specific multi-occupancy complexes 68V BTR sought to build.    MacKeller stated that the Commission had no issue with, and approved of, other nearby apartment complexes because those complexes are "nicer and the rent is too much [at those complexes] so you're not getting . . . [certain types of people the Commission does not care for]. **Exhibit B**.

58.    Moreover, MacKeller, while acknowledging that there was no legitimate reason to deny the applications, boasts that 68V BTR would not bring a lawsuit for fear of the future retaliatory action the Commission would impose on the company.    The Commission is basically acting with a mob-like attitude with unchecked power to grant or deny development plats at their whim.

59.    The Commission determined it would deny 68V BTR's development applications before a hearing was ever even heard on the applications.    Of course this violated 68V BTR's property rights because 68V BTR never even had the ability to attempt to gain approval to develop its Properties.

60.    As a direct, foreseeable, and proximate result of the City and Commission's actions, Plaintiff lost business deals regarding the Properties and income derived from the Properties that it would have consummated and earned had it not been for the City and Commission's actions. 68V BTR has suffered and continues to suffer damages as a result of Defendants' actions.

**CAUSES OF ACTION**

14

### I.    Invalidation of Defendants' Arbitrary and Capricious Application Denials

61.    68V BTR realleges and incorporates by reference all paragraphs above as though fully set forth herein.

62.    Agency action must be set aside when the action is arbitrary and capricious, an abusive of discretion, or otherwise not in accordance with law.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

63.    Defendants had an administrative duty and legal requirement to approve the development plats for the Gables and Skyline Properties because Plaintiff met all requirements for approval of the plats.

64.    The City and Commission's actions in denying 68V BTR's applications for the Skyline and Gables plats was arbitrary and capricious, unreasonable, not in accordance with law, and an abuse of power and discretion.

65.    The Commission, when rendering its denials of the Skyline and Gables applications, relied on factors which it was not supposed to consider and offered explanations for its decisions that runs counter to the evidence before the Commission and are so implausible that they could not be ascribed to a difference in view or the product of agency expertise.

66.    The City and Commission failed to supply a reasoned analysis for its denial decisions and failed to offer sufficient reasons for treating similar situations differently.

67.    The Commission lacked a legitimate public interest reason for denying the Gables and Skyline development plats, and denied the applications even though 68V BTR met all requirements for approval.

68.    Defendants' actions violate the Alabama Administrative Procedure Act, state law, and Fairhope Subdivision Regulations.

69.     The Planning Commission is regulating beyond its statutory authority in imposing subdivision regulations on a multiple occupancy project where there has been no division of land and the entire project is owned by a single entity.

70.     Additionally, the City is impermissibly regulating beyond its corporate and municipal limits.

71.     The City and Commission were not acting within their police power in denying the applications submitted by 68V BTR for the Gables and Skyline Properties.

72.     The Fairhope Planning Commission is using its statutorily derived power to further goals not designated by its enabling statute.  The Planning Commission also violated its own Subdivision Regulations in denying the Gables and Skyline plat applications.

73.     The City did not treat all who seek a ruling for plat approval in an equal and uniform way and failed to strictly follow its ordinances and regulations when administering development approval rulings.

74.     The City and Commission not only lacked any rational basis for their denials of the Skyline and Gables applications but affirmatively violated Fairhope's own Subdivision Regulations because the City and Commission did not have lawful authority to regulate multi-occupancy projects as "subdivisions" and impermissibly attempted to use zoning criteria to justify its denial decision which they did not have power to do.

75.     The Skyline and Gables applications met each and every criteria for approval.  Any purported explanations the City asserts for its denial decisions are nothing but pretextual.

76.     Plaintiff has been damaged as a result of Defendants' arbitrary and capricious actions in an amount to be determined at trial but in excess of $10 million.  68V BTR has been unable to develop its Properties for multi-occupancy development.

WHEREFORE, 68V BTR respectfully requests that the Court invalidate the Commission's denials of the development plats for the Gables and Skyline Properties and approve the development plats for the Properties, enjoin enforcement of the Moratorium in regard to the Skyline and Gables plats, and award it its attorney's fees and costs, trial by jury, and all other relief the Court deems just and proper.

## II.    **Denial of Due Process**

77.    68V BTR realleges and incorporates by reference all paragraphs above as though fully set forth herein.

78.    Plaintiffs have a right to due process of law under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and seek to enforce that right under 42 U.S.C. § 1983.

79.    Both U.S. Const. Amend. XIV and Art. I, §13, Ala. Const. of 1901 (Section 13 combined with §6 collectively) guarantee Alabama citizens due process of law and protect against arbitrary and capricious conduct under color of state law.  *State v. Bush*, 12 Ala. App. 309, 68 So. 492 (1915).

80.    At all relevant times, Plaintiff had a constitutionally protected interest in the Gables and Skyline Properties, including the right to develop those Properties.

81.    Plaintiff suffered a deprivation to its interests in the Properties as a result of an abuse of governmental power by the City and Commission that was far more than sufficient to raise an ordinary tort to the stature of a constitutional violation.

82.    Plaintiff's property and land use rights have been infringed by legislative act, and Plaintiff was subject to arbitrary, capricious, and irrational action by the Commission and City.

83.    Specifically, and first, the enactment of Ala. Code 1975 § 11-52-2 and other Alabama statutes applicable to Defendants' dealings with subdivision and multi-occupancy development approval vest the City of Fairhope and the Fairhope Planning Commission with unfettered and unchecked power to make arbitrary, capricious, and irrational decisions regarding the use of land in Fairhope because the enabling statute, and other applicable statutes, do not provide appropriate limitations to act as a check on the government's abuse of power and do not provide any manageable criteria or reasoned standards to guide the City's or Commission's decision-making.

84.    With this, Ala. Code § 11-52-30 and amendments to this statute, including Acts 2021, No. 21-297 § 2, permit the City and Commission to act with unfettered discretion unguided by any objective, clearly stated criteria.

85.    The City and Commission did in fact abuse their power as a result of Ala. Code 1975 § 11-52-2,  Ala. Code § 11-52-30, and/or other state statutes applicable to the Commission and/or the City by taking arbitrary, capricious, and irrational action against 68V BTR when Fairhope (1) arbitrarily created new, unreasonable requirements for 68V BTR to meet; (2) denied 68V BTR's applications for no legitimate reason; and (3) decided to deny the applications before the hearing on the applications ever took place.

86.    Second, the Fairhope Subdivision Regulations for multiple occupancy projects are impermissibly vague since they require "at a minimum" compliance with storm water requirements, traffic requirements, building improvement standards, and site setbacks and then require site plan compliance with the thirteen goals listed in Article I, Section A of the Regulations. The use of "at a minimum" in the Regulations and the incorporation of goals fails to provide clearly drawn standards which can be uniformly applied and which give reasonable notice to applicants

of requirements with which they must comply to obtain approval as required by *Smith v. City of Mobile*, 374 So. 2d 305 (Ala. 1979).

87.     Plaintiff was the subject of arbitrary, capricious, and irrational action by the Commission and City because the Subdivision Regulations are impermissibly vague and fail to provide clearly drawn standards which can be uniformly applied and which give reasonable notice to applicants of requirements with which they must comply.

88.     Third, the Fairhope Subdivision Regulations at Article IV, Section H and other applicable provisions vest the Commission with improper and excessive authority to make decisions regarding property rights.  The City and Commission, through those Regulations acted arbitrary, capriciously, and irrationally in denying 68V BTR's applications for the Properties for no legitimate reason.

89.     The statutes and Subdivision Regulations used by the Commission here are arbitrary, capricious, and unreasonable and not fairly debatable.

90.     Fairhope's Subdivision Regulations enacted by the Fairhope Planning Commission are not of general application and fail to set forth sufficient standards to give applicants notice of what is required of them.

91.     Additionally, Defendants' denials of the Gables and Skyline Properties were done without legitimate reason and with a disregard for the surrounding facts and settled controlling principles applicable to multi-occupancy housing development.

92.     Defendants' actions surrounding the denial of the development plats for the Skyline and Gables Properties have no foundation in reason and constitute irrational, arbitrary and capricious exercises of power, having no substantial relation to the public health, safety, morals, or general welfare.

93.     Defendants' actions surrounding the denial of the development plats for the Skyline and Gables Properties did not come close to bearing a substantial relation to the public health, safety, morals, or general welfare.

94.     By its actions, the City infringed upon Plaintiff's property interests in an arbitrary and capricious manner.  The City specifically targeted Plaintiff in order to prevent it from developing a multi-occupancy subdivision.  The City's hostility to Plaintiff's property interests while knowing of Plaintiff's substantial investment of time, money, and effort exhibited a flagrant disregard of Plaintiff's constitutionally protected rights.

95.     The City and Commission are levering Plaintiff's status as a local developer and using Plaintiff's pipeline of existing and future projects with Fairhope as a weapon.  The City and Commission targeted Plaintiff for arbitrary and capricious action because of the clout Fairhope holds over Plaintiff by virtue of Plaintiff's existing projects with the City and proposed developments before the Commission, which require City and Commission approval to proceed.

96.     The City and Commission's actions regarding the decisions to deny the development plats for the Skyline and Gables Properties lack a rational basis.

97.     Defendants failed to provide 68V BTR due process in connection with their vested property rights by failing to provide clear and definite standards for development, by changing the criteria for approval, by misleading 68V BTR as to the criteria for approval, and by not seriously considering the projects on the merits and instead denying them for pre-textual reasons.

98.     Defendants failed to provide 68V BTR due process by denying the applications even though 68V BTR met all requirements for approval.

99.     Further, "[w]here reasons for disapproving a subdivision plan, or a development plan, are vague and uncertain in meaning, and provide no information to a developer to enable him

to know wherein the plan failed to meet the requirements of the regulations, . . . such action operates to deprive a developer of his property without due process of law." *Smith v. City of Mobile,* 374 So.2d 305 (Ala. 1979).

100.    The City of Fairhope Planning Commission failed to give specific reasons for its denial of 68V BTR's applications and failed to show how the applications did not meet the standards of its subdivision regulations.

101.    Fairhope's reasons for disapproving 68V BTR's subdivision plats are vague and uncertain in meaning, and provide no information to 68V BTR, nor any developer, to enable it to know where the plans failed to meet the requirements of Fairhope's Subdivision Regulations.

102.    Further, the Commission failed to provide 68V BTR with a meaningful opportunity for a hearing because it determined that it would deny the Skyline and Gables applications prior to the hearing and failed/refused to consider the merits of the applications.

103.    Plaintiff was deprived of a constitutionally protected property interest by the City and Commission without due process of law and without fair procedures.

104.    Pursuant to the Alabama Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States, Plaintiff has a constitutionally protected right to due process.

105.    Plaintiff was subject to constitutionally inadequate due process.

106.    Plaintiff has suffered damages as a result of the deprivation and denial of due process.

107.    Plaintiff has been unable to develop its Properties as a result of the City's arbitration and capricious actions and denial of due process, resulting in damages to 68V BTR in an amount to be determined at trial but in excess of $10 million.

WHEREFORE, Plaintiff requests that the Court (1) declare that Ala. Code 1975 § 11-52-2, including its amendments, and the Subdivision Regulations utilized by the Commission violate the due process clause of the Fourteenth Amendment to the United States Constitution; (2) enjoin the enforcement of the Subdivision Regulations referenced herein; (3) declare that Plaintiff's pre-zoning right to develop their property is vested and enjoin Defendants from applying the Moratorium to Plaintiff's Gables and Skyline developments and from interfering with said developments subject to acquisition of all lawfully required permits; (4) order that the development plats for the Properties at issue be approved; (5) award Plaintiff, under 42 U.S.C. § 1983, compensatory damages against both Defendants; and (6) award Plaintiff reasonable costs and attorney's fees under 42 U.S.C. § 1988.  Plaintiff demands trial by jury.

### III.    Denial of Equal Protection

108.    68V BTR realleges and incorporates by reference all paragraphs above as though fully set forth herein.

109.    Pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution, Plaintiff has a constitutionally protected right to equal protection of laws as all other similarly situated property owners.

110.    Plaintiff was treated different from similarly situated persons, and Defendants unequally applied the Fairhope Subdivision Regulations and state law for the purpose of intentionally discriminating against Plaintiff.  This is evidenced by, among other things, the recorded statement of Hollie MacKeller, as she admitted that the City would not have an issue with approving other similarly situated apartment complexes in the same area, but was specifically discriminating against Plaintiff.  Upon information and belief, race played a role in the City's denials of the Gables and Skyline development plats.

111.    Defendants violated Equal Protection based on their malicious and/or bad faith intent to injure Plaintiff.

112.    In denying Plaintiff's plat applications, the Commission and City acted maliciously and, in bad faith, conspired to arbitrarily and capriciously deny Plaintiff's applications specifically.

113.    Defendants, in accordance with their malicious and bad faith conspiracy against Plaintiff, undertook the actions set forth above that violated Plaintiff's constitutional rights to equal protection with full knowledge that such actions violated Plaintiff's constitutional rights, and that such constitutional violations gave rise to claims for monetary damages.  As such, Defendants are not entitled to Absolute or Qualified Immunity.

114.    The City acted arbitrarily and capriciously by denying Plaintiff's applications for the Gables and Skyline Properties but not denying other multi-occupancy applications from similarly situated persons.

115.    Each of those actions, both individually and in concert with each other, was for the purpose of discriminating against Plaintiff for no legitimate or rational governmental purpose and was calculated to adversely affect Plaintiff.

116.    Plaintiff has a vested right in the Properties, and likewise have a constitutionally protected right to equal protection of the law to the same degree as all other similarly situated property owners.

117.    The City's denial of Plaintiff's applications for the Skyline and Gables Properties violated Plaintiff's right to equal protection as guaranteed by the Alabama and Federal Constitutions.

118.    Defendants purposely discriminated against Plaintiff in violation of the Equal Protection clauses of the United States and Alabama Constitutions.

119.    Plaintiff was damaged as a result of the deprivation of Equal Protection in an amount to be determined at trial but in excess of $10 million.

WHEREFORE, Plaintiff respectfully requests that the Court: (a) determine that Defendants have denied Plaintiff equal protection under the law; (b) determine that the actions by Defendants were in accordance with a malicious and bad faith conspiracy against Plaintiff, were pre-textual, arbitrary and capricious, and were perpetrated with the knowledge that such deeds violated Plaintiff's constitutional rights; (c) order that the development plats for the Properties be approved; (d) award, through trial by jury, Plaintiff compensatory damages, including all reasonable attorneys' fees, in an amount to be determined at trial but in excess of $10 million; and (e) for such other relief as Plaintiff may be entitled to receive.  Plaintiff demands trial by jury.

## IV.    Equitable Estoppel

120.    68V BTR realleges and incorporates by reference all paragraphs above as though fully set forth herein.

121.    The City of Fairhope and the Commission represented to 68V BTR that 68V BTR would be able to build the Gables and Skyline multi-occupancy complexes, and that 68V BTR's plat applications for the Properties would be approved because there was no problem with the Properties or its applications.  Defendants should be estopped from later denying those same applications after the representations they made that the applications would be approved.

122.    Defendants knew that Plaintiff met all the requirements for approval of the Gables and Skyline applications and knew that the Commission intended to deny the applications anyway for no legitimate reason.  Additionally, Defendants knew that they did not intend to approve the Gables and Skyline applications, yet informed Plaintiff that they would have to make changes to

the Properties, obtain reports regarding the Properties, develop plans regarding the Properties, and meet other purported requirements and obligations pertaining to the Properties.

123.    Defendants told Plaintiff that its Gables and Skyline applications would be approved with the intention that Plaintiff would act on that communication.  Additionally, Defendants told Plaintiff that the applications for the Properties would be approved if it met all of its conditions, demands, and purported requirements.  Defendants knew full well that they were not going to approve the development plat applications for the Properties, but made said demands and purported requirements with the intention that Plaintiff would act (and subsequently fail to accomplish its unreasonable demands).

124.    Plaintiff, who did not know that Defendants intended to deny the applications or that Defendants made phony demands, relied on Defendants' assertions that there was no physical problem with developing the Properties for Plaintiff's intended purpose and that the applications would be approved if Plaintiff did what Defendants' requested.

125.    In fact, Plaintiff purchased the Gables and Skyline Properties based on Defendants' representation that they could subdivide the Properties and spent countless hours and substantial sums of money to make the Properties ready to develop.

126.    Plaintiff was harmed as a result of Defendants' subsequent inconsistent assertions in which they denied the applications and claimed there were issues with the Properties that prevented approval.  Defendants denied the applications so that Plaintiff would have to resubmit the applications under the confines of the Moratorium.

127.    Plaintiff has suffered damages as a result of Defendants' conduct pertaining to equitable estoppel in an amount to be determined at trial but in excess of $10 million.

WHEREFORE, Plaintiff demands judgment against the City and Commission for an order that the development plats for the Properties be approved, such compensatory and punitive damages as may be assessed, along with pre and post judgment interest, costs, and attorney's fees, as applicable, trial by jury, and all other further or different relief that this Court may allow.

## V.    **Misrepresentation**

128.    Defendants misrepresented material facts to Plaintiff by telling Plaintiff that its applications for the Skyline and Gables properties would be approved, by misrepresenting that it would not deny the Skyline and Gables applications, and by demanding that Plaintiff perform certain tasks and meet objectives to obtain approval from the Commission.

129.    Defendants knew that the misrepresentations it made to Plaintiff regarding approval for the Properties was not true or, at the very least, made the representations recklessly.

130.    Plaintiff justifiably relied on Defendants' misrepresentations under the circumstances.

131.    Plaintiff was damaged as a proximate consequence of Defendants' misrepresentations in an amount to be determined at trial but in excess of $10 million.

WHEREFORE, Plaintiff demands judgment against the City and Commission for an order that the development plats for the Properties be approved, such compensatory and punitive damages as may be assessed, along with pre and post judgment interest, costs, and attorney's fees, as applicable, trial by jury, and all other further or different relief that this Court may allow.

Respectfully Submitted,

68 Ventures, LLC
68V BTR Holdings, LLC
General Counsel
707 Belrose Ave.

26

Daphne, AL 36526
(251) 625-1198

By: */s/ Greg A. Bordenkircher*

Greg Bordenkircher (BOR020)
 AL Bar No. 8320S17S
greg@68ventures.com


ROSE LAW FIRM
a Professional Association
120 East Fourth Street
Little Rock, Arkansas 72201
(501) 375-9131
(501) 375-1309 – Fax

By: */s/ Ty R. Bordenkircher*

Ty R. Bordenkircher (BOR021)
AL Bar No. 1363H43E
tbordenkircher@roselawfirm.com

27