## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **68V BTR HOLDINGS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 22-0430-WS-B** |
| | ) | |
| **CITY OF FAIRHOPE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on the defendants' motion to dismiss.  (Doc. 9).  The plaintiff has filed a response and the defendants a reply, (Docs. 17, 18), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiff is the owner of two parcels of property.  The defendants are the City of Fairhope ("the City") and the City of Fairhope Planning Commission ("the Commission").  The plaintiff's properties lie outside the corporate limits of the City but within its planning jurisdiction.  The plaintiff sought approval from the Commission for development of its properties for multi-occupancy housing, but the Commission denied the plaintiff's applications.

The complaint asserts the following claims:

| | |
|---|---|
| Count I: | "Invalidation of Defendants' Arbitrary and Capricious Application Denials" |
| Count II: | Denial of Due Process |
| Count  III: | Denial of Equal Protection |
| Count IV: | Equitable Estoppel |

Count V:      Misrepresentation

(Doc. 1 at 15-26).  The defendants seek dismissal of all claims.

## ALLEGATIONS OF THE COMPLAINT

According to the complaint, the plaintiff identified two parcels of land for development ("the Skyline property" and "the Gable property," collectively, "the Properties").  In August 2021, before purchasing the Properties, the plaintiff's representatives met with City staff to discuss development of the Properties as multi-occupancy complexes.  The City's representatives told the plaintiff's representatives that if the projects "checked all the boxes," the projects would be approved.  In reliance on this statement, the plaintiff purchased the Properties in late 2021 for approximately $1.7 million.  In further reliance on the statement, the plaintiff engaged third parties to provide plans and studies.  Two of the third parties conducted a community meeting, after which the projects for the Properties' development ("the Projects") became a topic of dissent among community residents, due primarily to the perception that the price point for units would be too low to exclude lower-income tenants.  (Doc. 1 at 6-7).

In December 2021, the City enacted an ordinance establishing a moratorium on the acceptance and consideration of multiple occupancy projects outside the City's corporate limits but within its planning jurisdiction.  The Projects were not subject to the moratorium and, at a February 7, 2022 meeting, one Commission member expressed anger over this situation.  Another member suggested the Commission could "just deny" the plaintiff's applications and fabricate reasons for the denial.  The City's attorney advised the Commission that a denial of a pending application would force the applicant to re-apply under more restrictive, post-moratorium criteria.  (Doc. 1 at 8-9).

The Commission became aware of residents' dissent regarding the Projects.  The Commission began creating new and evolving requirements and obligations and demanding new, unclear items applicable only to the Projects.  These demands were unreasonable, couched in the City's nebulous interpretation of its land development code, and the Commission made remarks regarding the scale and character of the Projects as

2

being inconsistent with surrounding areas – which comments reflected an improper attempt to enforce zoning ordinances on unzoned property. Nevertheless, the plaintiff did everything asked of it, including expanding the amount of greenspace and materially revising the engineering and design of the Projects. (Doc. 1 at 9-11).

On February 10, 2022, representatives of the plaintiff met with the City's mayor to discuss the Skyline project and issues raised by the Commission. The mayor assured the plaintiff that the developments would be approved if the plaintiff checked all the boxes. Based on feedback from this meeting, the plaintiff reduced the number of units at both Properties. (Doc. 1 at 9-10).

In the spring of 2022, Commission staff issued a recommendation that the Skyline Project be approved. The staff report noted that land uses with similar densities exist nearby, including some with City zoning, and it concluded that staff could not recommend denial based solely on location. The staff report also contained a third-party professional drainage report, which determined the proposed detention pond was adequate for 100-year storm events. The Commission unanimously denied the Skyline application, citing concerns about drainage, traffic, congestion, and safety. The stated reasons directly contradicted the staff report. A Commission member later acknowledged on tape these were pretextual reasons and stated that the Commission simply did not want the specific complexes the plaintiff sought to build, that the Commission had no issue with other nearby apartment complexes because they were nicer and more expensive to rent, and that the plaintiff would not sue over the denial of the applications because its owner lives in Daphne and also owns a builder, so that "pushing the envelope too much would be really bad for his business." (Doc. 1 at 2-4, 11-12, 13-14).

In the spring of 2022, Commission staff issued a recommendation that the Gable Project be denied because it did not meet greenspace requirements of the City's subdivision regulations, because its scale and character were inconsistent with the surrounding area, and because there were drainage issues. The greenspace regulations do not apply to single-owner multi-occupancy projects, and regulating land use based on criteria such as the character of surrounding land constitutes unauthorized zoning action.

Nor does such a process involve clearly drawn standards that can be uniformly applied and that provide reasonable notice to applicants of the requirements with which they must comply.  The drainage concerns were unfounded because the third-party engineer concluded that the drainage design met the minimum development standards.  After dissident residents hired another engineer, who fabricated issues with the Projects' water-flow, the Commission relied on the concocted issues.  The Commission denied the Gable application based on fabricated pretexts.  As referenced above, a Commission member later acknowledged that the reasons given for the denial were pretextual.  (Doc. 1 at 12-14).

## DISCUSSION

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …."  Fed. R. Civ. P. 8(a)(2).  Rule 8 establishes a regime of "notice pleading."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002).  It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2).  The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" satisfy that rule.  *Twombly*, 550 U.S. at 555.  There must in addition be a pleading of facts.  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level

....”  *Id*.  That is, the complaint must allege “enough facts to state a claim for relief that is plausible on its face.”  *Id*. at 570.  “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.”  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  “The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully,” and “[w]here a complaint pleads facts that are merely consistent with a defendant’s liability, it stops short of the line between possibility and plausibility of entitlement to relief.”  *Id*. (internal quotes omitted).  A complaint lacking “sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face” will not “survive a motion to dismiss.”  *Id*.  But so long as the plausibility standard is met, the complaint “may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.”  *Twombly*, 550 U.S. at 556 (internal quotes omitted).

   “[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.”  *Twombly*, 550 U.S. at 570.  As this Court has held, “the plaintiffs need not support those [pleaded] facts with secondary facts, tertiary facts, ad infinitum in order to satisfy Rule 8(a)(2).”  *Howard v. Bayrock Mortgage Corp*., 2010 WL 4628120 at *3 (S.D. Ala. 2010).  This proposition flows naturally from the principle that the plaintiff “need not prove his case on the pleadings – his Amended Complaint must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim, that” (in this instance) the defendants violated the plaintiff’s asserted rights under the Constitution and state law.  *Speaker v. United States Department of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010).

   A complaint that fails to plead enough facts to meet the plausibility standard is subject to dismissal under Rule 12(b)(6).  But the complaint is so exposed only if the defendant moves for dismissal under that rule, invokes the plausibility standard, *and* makes a satisfactory showing that, in certain, specified respects, for certain, specified reasons, the complaint falls short of that standard.  “Vague, generalized assertions that a

claim is somehow implausible, without a clear, supported explanation of just what is implausible and why, places no burden on the Court to supply the deficiency or on the plaintiff to respond." *FNB Bank v. Park National Corp.*, 2013 WL 1748796 at \*2 (S.D. Ala. 2013). Just as "the *Twombly* standard is not a trap for the unwary pleader who fails to utter talismanic incantations," *Caytrans BBC, LLC v. Equipment Rental and Contractors Corp.*, 2009 WL 857554 at \*1 (S.D. Ala. 2009), neither is "*Twombly*" a talisman or thaumaturgical word, the invocation of which excuses a defendant from demonstrating why, in the context of a specific complaint, an allegation or cause of action lacks plausibility.

If "a claim has been stated adequately [under Rule 8(a)(2)], it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. That is, "dismissal is appropriate where it is clear that the plaintiff can prove no set of facts in support of the claims in the complaint." *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (internal quotes omitted). "For this reason, a court may dismiss a complaint pursuant to Rule 12(b)(6) on a dispositive issue of law." *Id.* In making this assessment, "we accept the factual allegations in the complaint as true and construe them in the light most favorable to [the plaintiff]." *Young v. Grand Canyon University, Inc.*, 57 F.4th 861, 867 (11th Cir. 2023).

In addition to the complaint itself, "[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss …." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). In that event, "if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Id.* Moreover, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is … central to the plaintiff's claim and … the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v.*

Case 1:22-cv-00430-WS-B   Document 19   Filed 02/14/23   Page 7 of 27   PageID #: 420

*Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014).  The Court employs the same principle on motion to dismiss.  *E.g., Jurich v. Compass Marine, Inc*., 906 F. Supp. 2d 1225, 1228 (S.D. Ala. 2012).  Moreover, "a passing reference to an issue in a brief [is] insufficient to properly raise that issue." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005).  Accordingly, the Court will consider only those arguments the parties have expressly advanced.

Finally, and as the Court has observed innumerable times, "[u]nless the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it, the Court will not grant relief based on arguments first raised in reply." *Parker v. Exterior Restorations, Inc*., 2023 WL 375359 at *1 (S.D. Ala. 2023).[1]

## I. Arbitrary and Capricious Denial.

Count I alleges that the defendants "had an administrative duty and legal requirement" to approve the Projects "because Plaintiff met all requirements" for such approval.  The denials of the applications were arbitrary and capricious, unreasonable, not in accordance with law, and an abuse of power and discretion for the following reasons:  (1) the Commission relied on factors it was not supposed to consider and offered explanations running counter to the evidence and so implausible that they cannot be ascribed to a difference in view or to agency expertise; (2) the defendants failed to supply a reasoned analysis for denial and failed to offer sufficient reasons for treating similar situations differently; (3) the Commission lacked a legitimate public interest reason for denying the applications; (4) the defendants' actions violate the Alabama Administrative Procedure Act, state law, and City subdivision regulations; (5) the Commission acted beyond its statutory authority in imposing subdivision regulations on a project where there is a single landowner and no division of land; (6) the City impermissibly regulated beyond its corporate and municipal limits; (7) the defendants

---

[1] A quick online search reveals that the Court has expressed this principle in almost 200 decisions.

7

were not acting within their police power; (8) the Commission used its power for goals not designated by its enabling statute; (9) the Commission violated its own subdivision regulations; (10) the City did not treat the plaintiff equally with others seeking a ruling for plat approval and failed to strictly follow its ordinances and regulations; (11) the defendants lacked any rational basis for denying the applications; (12) the defendants violated the City's subdivision regulations without lawful authority to regulate multi-occupancy projects as subdivisions; and (13) the defendants impermissibly attempted to use zoning criteria they did not have power to use.  As relief, the plaintiff requests that the Court invalidate the Commission's denials, approve the Projects, and enjoin enforcement of the moratorium with regard to the Projects.  (Doc. 1 at 15-17).

The defendants argue that "invalidation of defendants' arbitrary and capricious application denials" is not a stand-alone claim and that the only federal claims available to challenge a state or local land use decision are constitutional claims for denial of due process and equal protection (which claims the plaintiff has brought under Counts II and III) and for takings and just compensation (which claims the plaintiff has not brought). (Doc. 9 at 20; Doc. 18 at 9-10).  "Subject to those four limitations, the Constitution does not prevent a local government from restricting, controlling, or limiting the development of land to promote what it perceives to be the general welfare interests of the community as a whole."  *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1374 (11th Cir. 1993).

The plaintiff does not attempt to salvage Count I as a federal constitutional claim. Instead, the plaintiff argues that the Supreme Court recognized a non-constitutional federal cause of action for arbitrary and capricious agency action in *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983) ("*MVMA*").  (Doc. 17 at 4-5).  *MVMA*, however, addressed the action of a federal agency, which action was subject to review under the Administrative Procedures Act ("APA"), which statute requires courts to "'hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ….'"  463 U.S. at 34, 41 (quoting 5 U.S.C. § 706(2)(A)).  An "agency," for purposes of such

review, "means each authority of the Government of the United States."  5 U.S.C. § 701(b)(1).  Nothing in *MVMA* or the APA remotely suggests the existence of a non-constitutional federal cause of action based on allegedly arbitrary and capricious or otherwise flawed state or local agency action.  The two other federal cases on which the plaintiff relies, (Doc. 17 at 5), likewise involved review of federal agency action under the APA and thus are equally unsupportive of any federal non-constitutional claim.

As to state claims within Count I, the defendants address only writ of mandamus, which avenue they say is both procedurally and substantively barred.  (Doc. 9 at 20-21).  The plaintiff cites *Chandler v. City of Vestavia Hills Planning and Zoning Commission*, 959 So. 2d 1124, 1129 (Ala. Civ. App. 2006), which appears to support the proposition that local planning commission action is subject to arbitrary and capricious review under state law.  (Doc. 17 at 5).  The defendants ignore *Chandler* in their reply, instead raising an untimely challenge to the complaint's reliance on the Alabama Administrative Procedures Act.  (Doc. 18 at 11).  The defendants in their reply further acknowledge that Count I may incorporate a state constitutional due process claim.  (*Id.*).

In summary, the defendants are entitled to dismissal of Count I to the extent it attempts to set forth a federal cause of action but are not entitled to dismissal to the extent it attempts to set forth one or more state causes of action.


## II. Substantive Due Process.[2]

Count II alleges a violation of the plaintiff's constitutional due process rights.  The plaintiff claims constitutionally protected property rights in the Properties, including the right to develop them, that were infringed by state action.  (Doc. 1 at 17).

The complaint alleges first that the plaintiff's protected property rights were infringed upon by legislative acts.  These include the enactment of Ala. Code §§ 11-52-2 and -30 "and/or other state statutes" applicable to the defendants' dealings with

---

[2] Count II does not by its terms exclude a procedural due process claim, but the plaintiff acknowledges that it brings only a substantive due process claim.  (Doc. 17 at 7).

subdivision and multi-occupancy development approval.[3]   These statutes vest the defendants with unfettered power to make arbitrary, capricious, and irrational decisions, because they do not provide appropriate limitations on the exercise of land use regulatory power or provide manageable criteria or reasoned standards.  This causes the statutes themselves to be arbitrary, capricious, and unreasonable.  (Doc. 1 at 18-19).

The complaint further challenges the City's subdivision regulations for multiple-occupancy projects ("the Regulations") as an arbitrary, capricious, and unreasonable legislative act.  The Regulations require compliance with certain listed requirements "at a minimum" and then require compliance with goals listed elsewhere in the Regulations.  The Regulations are thus impermissibly vague because they fail to provide clearly drawn standards that can be uniformly applied and which give reasonable notice to applicants of the requirements for approval.  The complaint also alleges that Article IV, Section H of the Regulations, "and other applicable provisions," vest the Commission with improper and excessive authority to make decisions regarding property rights.  (Doc. 1 at 18-19).

The complaint next alleges that the defendants acted arbitrarily, capriciously, and irrationally in denying the plaintiff's applications and in their pre-denial conduct.  These actions include:  creating new requirements for the plaintiff to meet; denying the plaintiff's applications for no legitimate reason; deciding to deny the applications before conducting a hearing on them; disregarding the surrounding facts and settled controlling principles; targeting the plaintiff to prevent it from developing a multi-occupancy subdivision; using the plaintiff's pipeline of other existing and future projects as a weapon; failing to provide clear and definite standards for development; changing the criteria for approval; misleading the plaintiff as to the criteria for approval; not seriously considering the Projects on their merits; denying the plaintiff's applications for pretextual reasons; failing to give specific reasons for the denials; failing to show how the applications did not meet the Regulations' requirements; providing vague reasons for

---

[3] The complaint mentions Section 2 of Act 2021-297, but that provision is now incorporated within Section 11-2-30.

disapproving the applications; and failing to provide the plaintiff a reasonable opportunity for a hearing.  (Doc. 1 at 18-21).

Finally, the complaint alleges that the defendants failed to provide the plaintiff due process by denying the applications even though the plaintiff met all requirements for approval.  (Doc. 1 at 20).

The complaint alleges that the plaintiff's due process rights were violated under both federal and state law.  (Doc. 1 at 17, 21).  The Court considers these founts of law separately, beginning with the federal.

### A.  Federal Substantive Due Process.

"[S]ubstantive due process has two strands – one that protects against deprivation of fundamental rights and one that protects against arbitrary legislation."  *Hillcrest Property, LLP v. Pasco County*, 915 F.3d 1292, 1297 (11th Cir. 2019).  "[F]undamental rights in the constitutional sense do not include state-created rights," and "land use rights, as property rights generally, are state-created rights."  *Id*. at 1297-98 (internal quotes omitted).  The plaintiff concedes that the "fundamental rights" strand of substantive due process "cannot form the basis" of its claim.  (Doc. 17 at 8).

"Where an individual's state-created rights are infringed by legislative act, the substantive component of the Due Process Clause generally protects him from arbitrary and irrational action by the government."  *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2003) (internal quotes omitted).  The flip side of this principle is that "non-legislative, or executive, deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrarily and irrationally."  *Id*. (internal quotes omitted).

### 1.  Executive acts.

"Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch …."  *Lewis*, 409 F.3d at 1273 (internal

quotes omitted).  A county commissioner's "decision to deny the [plaintiffs'] application to re-zone their property does not generally apply to larger segments of … society" but instead "was an administrative decision by [the defendant] to enforce the current property designation to the economic detriment of the [plaintiffs,]" which "is a textbook 'executive act.'"  *Id*. (internal quotes omitted); *accord DeKalb Stone, Inc. v. County of DeKalb*, 106 F.3d 956, 959 (11th Cir. 1997) ("[E]nforcement of existing zoning regulations is an executive, not legislative, act.").

The defendants argue that, in light of *Lewis* and *DeKalb Stone*, the plaintiff cannot pursue a substantive due process claim "based on" the Commission's denial of the plaintiff's applications.  (Doc. 9 at 11).  Viewed in isolation, these cases would seem to bar a stand-alone claim for deprivation of substantive due process based only on the Commission's denials.  However, and as discussed *infra* in Part II.A.3, the complaint asserts a substantive due process claim based on the defendants' failure to approve the applications despite the plaintiff's compliance with all applicable requirements for such approval, and the defendants have failed to secure dismissal of that claim.

Moreover, and as discussed *infra* in Part II.A.2, the plaintiff also claims a deprivation of substantive due process based on legislative acts *resulting in* the Commission's denials.  (Doc. 17 at 12, 14).  *Lewis* and *DeKalb Stone* do not involve such a situation, and the defendants have not addressed the interplay, for substantive due process purposes, between an unconstitutional legislative act and an executive denial made pursuant to the unconstitutional legislation.  The defendants therefore have not shown that the Commission's denials of the plaintiff's applications may not be used in support of a substantive due process claim asserting unconstitutional legislative acts.

## 2.  Legislative acts.

The plaintiff claims that certain aspects of the Regulations, and certain Alabama statutes, themselves violated the plaintiff's substantive due process rights.  This constitutes a facial challenge to the statutes and Regulations.  *Compare Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014) (a facial challenge to legislation is a

challenge to a legislative act) *with Hillcrest Property*, 915 F.3d at 1302 (an as-applied challenge is a challenge to an executive act).  Because the arguments and allegations are different, the Court considers the statutes and the Regulations separately.

### a.  Statutes.

The defendants declare that the complaint "on its face fails to allege a plausible basis to invalidate" the statutes.  (Doc. 9 at 12).  The complaint alleges that the statutes are "arbitrary, capricious, and unreasonable and not fairly debatable" because they fail to provide manageable criteria, reasoned standards, and appropriate limitations on government action.  (Doc. 1 at 18, 19).  Substantive due process generally protects a plaintiff from "arbitrary and irrational" legislative action, *Kentner*, 750 F.3d at 1279-80, and the complaint appears both to use the appropriate language and to identify reasons the statutes should be deemed arbitrary and irrational.  The defendants do not address this language, much less explain how it fails to meet any applicable pleading requirements.  The Court therefore cannot accept their *ipse dixit* of a pleading deficiency.

As the plaintiff acknowledges, (Doc. 17 at 8), "[s]ubstantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard."  *Kentner*, 750 F.3d at 1280.  "To survive this minimal scrutiny, the challenged provision need only be rationally related to a legitimate government purpose."  *Worthy v. City of Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019) (internal quotes omitted).  The defendants argue that, as a matter of law, the statutes at issue are rationally related to a legitimate governmental purpose.  (Doc. 9 at 14).  That is not an implausible suggestion, but it suffers from fatal defects.  First, the defendants have not identified or addressed all the statutes, and all the particular provisions of those statutes, placed at issue by the complaint's "and/or other state statutes" language.[4]  Second, the only

---

[4] Nor do the defendants argue that this language can or should be ignored in evaluating the complaint.

authority on which the defendants rely[5] does not purport to bless as constitutional every individual component of the entire statutory scheme. The defendants insist the plaintiff "cannot negate every conceivable basis which might support" the challenged statutes, (*id*.), but they have presented no law requiring the plaintiff to do so on motion to dismiss.

Finally, the defendants propose that the Court dismiss Count II, to the extent it is based on the unconstitutionality of a state statute, on the grounds that the plaintiff has not served the state attorney general as required by Ala. Code § 6-6-227. (Doc. 9 at 12 n.9). The defendants cite no authority for the proposition that non-compliance with this provision deprives a federal court (as opposed to a state court) of jurisdiction, and sister courts have ruled that Section 6-6-227 is a procedural rule not applicable in federal court. *Brown v. Board of School Commissioners*, 542 F. Supp. 1078, 1081 n.4 (S.D. Ala. 1982); *Jacobs v. Bright*, 2008 WL 2262331 at *3 n.2 (M.D. Ala. 2008). In any event, the plaintiff states that it has complied with Section 6-6-227, (Doc. 17 at 9), and the defendants in reply do not take issue with that assertion.

In their reply brief, the defendants raise an additional argument: that, because the statutes were not the legislative act of the defendants themselves, the defendants "cannot violate [the plaintiff's] substantive due process rights based on the Alabama legislature's legislative acts." (Doc. 18 at 1 n.1). Because the defendants offer no reason for their failure to assert this available argument in their principal brief, it will not be considered.

### b. Regulations.[6]

As with the statutes addressed above, the defendants posit that the complaint "on its face fails to allege a plausible basis to invalidate" the Regulations. (Doc. 9 at 12). As with the statutes, the complaint alleges that the Regulations are "arbitrary, capricious, and unreasonable and not fairly debatable," (Doc. 1 at 19), language that appears to implicate

---

[5] *City of Mobile v. Waldon*, 429 So. 2d 945 (Ala. 1983).

[6] The defendants acknowledge that adoption of the Regulations was a legislative act for purposes of substantive due process analysis. (Doc. 18 at 1).

the governing "arbitrary and irrational" standard.  As with the statutes, the complaint identifies reasons the Regulations should be deemed arbitrary and irrational, *viz*., impermissible vagueness due to their failure to provide clearly drawn standards that can be uniformly applied and that give reasonable notice to applicants of the requirements with which they must comply.  (*Id*. at 18-19).  And as with the statutes, the defendants do not articulate how these allegations fail to meet any applicable pleading requirements.

The defendants next argue that the introductory paragraph of the City's subdivision regulations (of which the Regulations are a part) articulates a legitimate government purpose behind the regulations ("to promote the health, safety, morals and general welfare of present and future residents") and that there is a rational basis for the defendants to have believed the Regulations would advance this purpose.  (Doc. 9 at 15). Assuming without deciding that the defendants' argument is correct,[7] it is insufficient, because the complaint challenges the Regulations as unconstitutionally vague, and the defendants do not suggest that rational basis review obviates review for vagueness.

The Regulations provide that the applicant shall submit a preliminary plat and plans "which must, at a minimum," comply with several listed requirements, one of which is that the plat and plans "shall otherwise conform to the terms of Article I, Section A hereof."  (Doc. 9-1 at 35-36).  Article I, Section A is a general provision applicable to the subdivision regulations in their entirety.  It provides that the regulations "shall be implemented to achieve the following goals and purposes," which are then listed.  (*Id*. at 6).

The complaint, (Doc. 1 at 18-19), asserts two vagueness challenges based on these provisions.  The first addresses the "at a minimum" language, which potentially opens the door to the imposition of additional, unidentified, unpredictable, idiosyncratic demands. The second addresses the Article I, Section A requirements, which are themselves

---

[7] The defendants in their reply brief advance additional arguments regarding rational basis review, (Doc. 18 at 3-5), but these come too late to be considered.

couched in brief and nebulous language such as "[p]romoting good civic design and arrangement." (Doc. 9-1 at 6).

The defendants posit that, under *Twombly*, the complaint's failure to specifically identify which of the thirteen requirements of Article I, Section A are alleged to be vague is "fatal to the claim." (Doc. 9 at 16). They offer no argument or authority supporting such an exacting pleading burden, and the Court will not endeavor to supply the deficiency.

The defendants next present arguments why they believe the Regulations are not unconstitutionally vague. The Court need not address these arguments in detail, because they rest on a false premise regarding the complaint's allegations. As noted, the complaint sets forth two vagueness challenges. The defendants, however, misread the complaint as alleging only that Article I, Section A is vague, with the "at a minimum" language relevant only as the gateway through which that provision becomes part of the Regulations. (Doc. 9 at 16; Doc. 18 at 7-8).[8] On the contrary, and as noted above, the "at a minimum" clause is alleged as a separate fount of vagueness. The defendants have not addressed this allegation, and without doing so they cannot establish the accuracy of their argument that the Regulations are not impermissibly vague.

In their reply brief, the defendants raise a new argument: that the complaint does not allege that the *enactment* of the Regulations (a legislative act) violated the plaintiff's due process rights but only that the *application* of the Regulations (an executive act that will not support a substantive due process claim) did so. (Doc. 18 at 1-3). Once again, the defendants have offered no excuse for omitting such an argument from their principal brief, and once again their tardy argument therefore comes too late to support relief.[9]

---

[8] This even though the defendants recognize that no gateway is needed, since the Regulations expressly require plats and plans to "conform to the terms of Article I, Section A hereof." (Doc. 9 at 16 & n.12; Doc. 9-1 at 36).

[9] In any event, the argument is palpably wrong. The complaint alleges that the plaintiff's property and land use rights were "infringed by legislative act," and it identifies the legislative acts as including "the Fairhope Subdivision Regulations for multiple occupancy projects" and

### 3. Administrative duty.

The complaint alleges that the defendants failed to provide the plaintiff due process "by denying the applications even though [the plaintiff] met all requirements for approval." (Doc. 1 at 20). The plaintiff argues that the complaint thereby implicates an Eleventh Circuit ruling that recognizes a substantive due process claim when "a municipal commission has an administrative duty to approve a landowner's proposed plat for land development but refuses to do so," with the duty to approve arising when the landowner complies with all applicable subdivision regulations. (Doc. 17 at 8, 16-17). For this proposition, the plaintiff relies on *Southern Cooperative Development Fund v. Driggers*, 696 F.2d 1347 (11th Cir. 1983).

The defendants did not address this claim in their principal brief, but the Court deems the omission excusable, since the claim was not separately identified, since it was confined to an unassuming 21-word sentence buried within the five pages of Count II, and since the defendants could have reasonably relied on the Eleventh Circuit's statement in *Hillcrest Property* that substantive due process "has two strands," not three. 915 F.3d at 1297.

The defendants' one-paragraph response to the plaintiff's argument raises two assertions. (Doc. 18 at 6-7). First, they quote *Hillcrest Property*'s "two strands" language. Because the Eleventh Circuit did not acknowledge *Driggers* when it made this statement, the Court does not find its arithmetic compelling. This is especially so in light of the *Kentner* Court's statement that "[t]here is … *at least* one exception [*i.e.*, the 'legislative acts' exception] to this Circuit's general rule that there are no substantive due

---

again as Article IV, Section H (home of the Regulations). (Doc. 1 at 18-19). That the complaint also alleges that the defendant's conduct pursuant to the Regulations was arbitrary, capricious, and irrational does not, as the defendants appear to believe, (Doc. 18 at 3), somehow negate the allegation that the Regulations themselves visited a constitutional violation.

process claims for non-fundamental rights," 750 F.3d at 1279, language that would seem to admit of possible additional bases for substantive due process claims.[10]

Second, the defendants argue that *Driggers* was not decided under federal constitutional law. This argument requires more discussion. The defendants in *Driggers* were the board of county commissioners and the individual commissioners. The plaintiff landowners sued after the defendants refused to approve a preliminary subdivision plat. The district court entered summary judgment in favor of the plaintiffs on claims the defendants abridged the plaintiffs' due process rights under state and federal law. 696 F.2d at 1348. The plaintiffs argued that, since they complied with the applicable subdivision regulations, the defendants had no discretion to disapprove their plat for reasons not contained in those regulations. *Id*. at 1351. The Eleventh Circuit declared that "[w]hat we are called upon to decide is whether the Commission's actions were authorized as a matter of Florida law, and if so whether their actions were in violation of the Due Process clause of the Fourteenth Amendment." *Id*. After reviewing various aspects of Florida law, the Court concluded as follows:

> There was no genuine dispute of material fact regarding plaintiffs' compliance with the requirements of the Subdivision Regulations. Under these circumstances the defendants had an administrative duty to approve the plaintiffs' proposed plat and their refusal to do so was a violation of the plaintiffs' guarantee of due process. See *Washington ex rel. Seattle Trust Title Co. v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928), *Hornsby v. Allen*, 326 F.2d 605 (5 Cir. 1964). The entry of summary judgment for the plaintiffs was proper.
>       AFFIRMED.

*Id*. at 1356.

It would seem from this summary that the *Driggers* Court ruled that the defendants' refusal to approve a plat that complied with the applicable regulations violated the plaintiffs' due process rights under the Constitution: (1) the Court identified the issue as whether the defendants violated the Fourteenth Amendment's Due Process

---

[10] *Lewis* and *DeKalb Stone* likewise failed to acknowledge *Driggers*.

Clause; (2) the Court ruled that the defendants violated the plaintiffs' due process rights; (3) in doing so, the Court cited two federal cases, both of which address federal due process; and (4) the underlying order, which granted the plaintiffs summary judgment on a federal due process claim, was affirmed *in toto*.  The Eleventh Circuit itself has confirmed that *Driggers* "held that it was a violation of due process for a county commission to deny the subdivision plan application of a landowner who had complied with all the requirements of the county's subdivision regulations."  *Hynes v. Pasco County*, 801 F.2d 1269, 1270 (11th Cir. 1986).

For their contrary position, the defendants rely on *Alvarez v. School Board*, 2021 WL 2935366 (11th Cir. 2021), which stated that the *Driggers* Court "decided only that the commission's actions violated Florida law and thus did not proceed to the Fourteenth Amendment analysis."  The *Alvarez* plaintiff's claim was based on 'legislative acts' jurisprudence, *id.* at *2, and the panel found *Driggers* unhelpful because it did not involve legislative action and "never mention[ed] rational basis review or engage[d] in any Fourteenth Amendment analysis."  *Id.* at *3.  Regardless of its analysis, *Driggers* clearly ruled that the defendants violated the plaintiffs' federal due process rights by refusing to approve a plat that met all applicable requirements.  To the doubtful extent that *Alvarez* may be read as denying that *Driggers* made such a ruling, the Court considers it unpersuasive in light of *Hynes* and the Court's own reading of *Driggers*.[11]

### B.  State Substantive Due Process.

The defendants advance no arguments peculiar to Alabama law.  Instead, they assert only that, "[b]ecause Plaintiff's federal substantive due process claim fails, the due process claim based on the Alabama Constitution likewise fails."  (Doc. 9 at 11 n.8).  This assertion is supported only by an unexplained citation to an unpublished Eleventh

---

[11] "Unpublished decisions are not binding authority and they are persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue."  *Collado v. J. & G. Transport, Inc.*, 820 F.3d 1256, 1259 n.3 (11th Cir. 2016) (internal quotes omitted).

Circuit opinion involving Georgia law, which is too slender a reed to carry the weight the defendants assign it.  In any event, because the plaintiff's federal substantive due process claim survives, under the defendants' argument the parallel state substantive due process claim survives as well.

### III.  Equal Protection.

Count III alleges that the defendants violated the plaintiff's Fifth and Fourteenth Amendment right to equal protection of the law.[12]  Relying on the statement of a Commission member that the City "would not have an issue" with approving other similarly situated apartment complexes, the complaint alleges that the plaintiff was treated differently than similarly situated persons.  The defendants' actions in applying the Regulations and state law were taken for the purpose of discriminating against the plaintiff and for no legitimate or rational governmental purpose.  The defendants violated the Equal Protection Clause based on a malicious and/or bad faith intent to injure the plaintiff.  The defendants conspired to arbitrarily and capriciously deny the plaintiff's applications specifically, and they took their actions with full knowledge that those actions violated the plaintiff's equal protection rights, such that they are not entitled to absolute or qualified immunity.  (Doc. 1 at 22-23).

The parties agree that the plaintiff is pursuing a "class-of-one" equal protection claim.  (Doc. 9 at 18; Doc. 17 at 18).  Such a claim requires the plaintiff to "alleg[e] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  "A 'class of one' plaintiff might fail to state a claim by omitting key factual details in alleging that it is 'similarly situated' to another." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007).  For starters, allegations that "nameless, faceless 'other' permit applicants were given better treatment … do not state an equal protection claim." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359,

---

[12] Count III asserts no equal protection claim under state law.

1367-68 (11th Cir. 1998).[13]  Pursuant to *Griffin Industries*, "to satisfy the 'similarly situated' element, a plaintiff must allege more than nameless, faceless 'others.'"  *Tropical Soup Corp. v. City of Key West*, 2021 WL 3878250 at *2 (11th Cir. 2021).  In addition, "we have emphasized that [class-of-one] plaintiffs are not permitted simply to 'rely on broad generalities in identifying a comparator.'"  *Leib v. Hillsborough County Public Transportation Commission*, 558 F.3d 1301, 1307 (11th Cir. 2009) (quoting *Griffin Industries*, 496 F.3d at 1204).  The defendants argue the complaint does not satisfy these requirements.

The plaintiff objects that *Olech* did not impose the pleading requirements outlined in these Eleventh Circuit cases.  (Doc. 17 at 19).  Neither, however, did the Supreme Court rule them out, and the plaintiff mounts no detectable argument that *Griffin Industries*, *GJR Investments*, and *Leib* are legal nullities.  It is also worth noting that *Olech* was decided several years before *Twombly* and *Iqbal* tightened pleading standards under Rule 8(a).[14]

Count III alleges blandly that the plaintiff "was treated different from similarly situated persons."  (Doc. 1 at 22, 23).  As the plaintiff notes, (Doc. 17 at 20), Count III refers to the recorded statement of the Commission member, (Doc. 1 at 22), who says that "[t]here's other complexes that we have that are bigger and we haven't had an issues [sic] and it's because the apartment complexes are nicer and the rent is too much so you're not getting …."  (Doc. 1-3 at 2).  This statement, however, leaves the comparators nameless and faceless.  It also fails to advance beyond "broad generalities" in comparing them to

---

[13] *GJR Investments* involved a traditional equal protection claim, but "[w]e see no reason that a plaintiff in a 'class of one' case should be subjected to a more lenient 'similarly situated' requirement than we have imposed in other contexts."  *Griffin Industries*, 496 F.3d at 1204-05.

[14] "Although a statement that a plaintiff is 'treated differently from others similarly situated' may at one time have sufficed to state a class-of-one claim, … after *Twombly* and *Iqbal*, a complaint resting on such a conclusory allegation will not survive a motion to dismiss."  *Sheikh v. City of Deltona*, 2014 WL 1345396 at *8 (M.D. Fla. 2014) (citing cases from the Second, Sixth and Tenth Circuits); *see also Kessler v. City of Key West*, 2022 WL 590892 at *4 (11th Cir. 2022) (while a class-of-one plaintiff may not have needed to identify a comparator in his complaint previously, such pleading is required "under the current plausibility standard").

the plaintiff, indicating only that they also involved apartment complexes.  *See Griffin Industries*, 496 F.3d at 1204 (to show that two apartment projects were similarly situated, they must be "*prima facie* identical in all relevant respects," including "essentially the same size, [with] an equivalent impact on the community, and requir[ing] the same zoning variances") (emphasis and internal quotes omitted) (describing *Campbell v. Rainbow City*, 434 F.3d 1306 (11th Cir. 2006)).  The complaint is thus no more adequate than was that in *Leib*, which alleged only that the defendant's rules "unreasonably required the Plaintiff to submit to controls not imposed on other similarly situated businesses or properties" and thus was "properly dismissed" for this "complete lack of factual detail regarding the 'similarly situated' requirement."  558 F.3d at 1307.

## IV.  Equitable Estoppel.

Count IV alleges that the defendants represented to the plaintiff that it would be able to build the multi-occupancy complexes and that its applications would be approved because there was no problem with the Properties or the applications.  At a time the defendants knew both that the plaintiff met all requirements for approval and that the Commission intended to deny the applications anyway, the defendants demanded that the plaintiff make changes to the Properties, obtain reports, develop plans, and meet other purported requirements.  The defendants told the plaintiff its applications would be approved if the plaintiff met all conditions, demands, and purported requirements, knowing full well they would not approve the applications regardless.  The defendants imposed these demands and requirements with the intention the plaintiff would act on them.  The plaintiff relied on the defendants' statements by purchasing the Properties and investing time and money to prepare them for development.  The defendants denied the applications so that the plaintiff would have to resubmit them under the confines of the moratorium.  The plaintiff demands an order that the development plats be approved, along with compensatory damages exceeding $10 million.  (Doc. 1 at 24-26).

"The doctrine of estoppel under our decisions is protective only and is to be invoked as a shield and not as a weapon of offense.  It is not effective to create a cause of

action ….." *Pennsylvania Mutual Life Insurance Co. v. Mallory*, 50 So. 2d 740, 744 (Ala. 1951); *accord Pendley v. Pendley*, 581 So. 2d 470, 473 (Ala. 1991) ("[E]stoppel cannot be used to create a primary right or a cause of action …."); *B.F. Goodrich Co. v. Parker*, 209 So. 2d 647, 651 (Ala. 1967) ("Estoppel is not effective to create a cause of action. … Nor can primary rights be created by estoppel or waiver."); *Reynolds v. Four Seasons Condominium Association, Inc.*, 462 So. 2d 738, 740 (Ala. Civ. App. 1984) ("Estoppel is a defensive weapon, to be raised as a shield and not as a sword."). These principles apply specifically to equitable estoppel. *Old Town II, LLC v. Oppidan Holdings, LLC*, 2021 WL 2586813 at *29 (N.D. Ala. 2021). The defendants rely on *Mallory* and *Old Town* as dispositive, (Doc. 9 at 28 n.21), and the plaintiff offers no response. (Doc. 17 at 20-22). The Court concludes that *Mallory* and its progeny negate the plaintiff's purported cause of action.

## V. Misrepresentation.

Count V alleges that the defendants misrepresented to the plaintiff that its applications would be approved and not denied and by demanding that the plaintiff perform certain tasks and meet objectives in order to obtain approval. The defendants knew the misrepresentations were false or were at least reckless in making them. (Doc. 1 at 26).

The defendants first argue that the City is immune from liability under Count V pursuant to state statute. (Doc. 9 at 22). "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality …." Ala. Code § 11-47-190. Immunity under this provision extends to reckless misrepresentations. *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993); *Miller v. City of Birmingham*, 235 So. 3d 220, 237 (Ala. 2017) (plurality opinion). Count V alleges that the City acted intentionally or, "at the

very least, … recklessly." (Doc. 1 at 26). The City is therefore immune from liability under Count V.[15]

It is unclear whether the defendants invoke municipal immunity with respect to the Commission. The text of their argument asserts only that "Fairhope is immune,"[16] while the style of the argument states that "Defendants are immune." (Doc. 9 at 22). To the uncertain extent the defendants may argue *sub silentio* that the Commission is protected by municipal immunity, they have failed to show that this is so. *See generally Hilliard v. City of Huntsville Electric Utility Board*, 599 So. 2d 1108, 1110 n.2 (Ala. 1992) (setting forth a test for determining if an entity comes within Section 11-47-190 but declining to employ it).

The complaint[17] alleges two encounters between representatives of the plaintiff and representatives of the City and/or the Commission. On August 18, 2021, prior to the purchase of the Properties, representatives of the plaintiff met with unidentified "City of Fairhope staff" for a "preliminary meeting to discuss development of multi-occupancy complexes" on the Properties. "Fairhope's representatives told [the plaintiff's] representatives that, because the Properties were un-zoned in the county, if the projects 'checked all the boxes,' then the projects would be approved." (Doc. 1 at 6). On February 10, 2022, while the plaintiff's applications were pending, representatives of the plaintiff met with the City's mayor "to discuss the Skyline project and issues raised by Commission staff concerning greenspace and 'lot and blocks.'" The mayor "assured [the

---

[15] The plaintiff attempts to avoid this conclusion by resort to state-agent immunity, which is wholly different from municipal immunity. (Doc. 17 at 22-23). Because the City is not a state agent and is not invoking state-agent immunity, the plaintiff's argument misses the mark.

[16] The defendants use "Fairhope" to denote the City as opposed to the Commission. (Doc. 9 at 1).

[17] Unlike Counts I through IV, Count V does not purport to reallege and incorporate by reference preceding allegations of the complaint. (Doc. 1 at 26). The defendants nevertheless accept without protest that prior allegations are fair game in assessing the legal adequacy of the misrepresentation claim. (Doc. 9 at 23).

plaintiff] that the development plats would be approved if [the plaintiff] checked all the boxes." (*Id*. at 10).

The defendants mount a four-tiered attack on the misrepresentation claim as based on these representations:  (1) they are statements of opinion, not fact; (2) if they are statements of fact, they are accurate; (3) if they are statements of fact, they relate to future events, and the complaint does not allege the additional elements necessary to state a claim of promissory fraud; and (4) the fraud is not stated with the particularity required by Rule 9(b).  (Doc. 22 at 24-27).

"It is axiomatic that mere statements of opinion are not material facts upon which actions for legal fraud can be maintained." *Jones v. McGuffin*, 454 So. 2d 509, 512 (Ala. 1984).  However, "the ultimate determination of the true nature of a given representation depends upon all the circumstances of the particular case." *Id*.  The defendants argue that the quoted statements, if made by anyone other than a member of the Commission, are necessarily statements of opinion regarding what that body would do.  (Doc. 9 at 25).  The defendants deny that the City's mayor is a member of the Commission, (*id*.), but they offer no confirmation of that proposition.  Instead, they cite to a state statute, (*id*. at 3), which, far from ruling out the mayor, indicates that "[t]he mayor, or his or her designee," is by law to be a member of the Commission.  Ala. Code § 11-52-3(1).  And they admit they cannot show that the unidentified speaker or speakers at the August 18 meeting were not members of the Commission.  (Doc. 9 at 25).  Their only other argument is that the quoted statements are nonactionable "legal opinions or interpretations." (*Id*. at 25 n.19).  The defendants do not explain or support this proposition, and the Court will not search for authority or rationale on their behalf.

As to accuracy, the defendants would construe the quoted statements as saying only that "a project must demonstrate compliance with the Subdivision Regulations to obtain Planning Commission approval." (Doc. 9 at 25).  This is simply not a correct description of the quoted statements, which present compliance with the Regulations as a sufficient condition for approval.  The defendants, in contrast, would recast them as presenting compliance as a merely necessary condition for approval.  The distinction

matters, because the complaint alleges that the applications complied with the Regulations and yet were denied.  (Doc. 1 at 20).  Because the defendants' accuracy argument is itself inaccurate, it must be rejected.

A claim that the defendant falsely represented that money would be returned if the sale did not close is one for promissory fraud.  *Harrison v. Gibson*, 534 So. 2d 257, 259 (Ala. 1988).  Likewise, then, a claim that the defendants falsely represented that the plaintiff's applications would be approved if all the boxes were checked also is one for promissory fraud.[18]  The complaint therefore must allege the two additional elements essential to such a claim:  (1) that, at the time of the representation, the defendants had the intention not to perform; and (2) that the defendants had an intent to deceive.  *Id*. at 259.  The defendants deny that either element is alleged.  (Doc. 9 at 24).  The Court finds an allegation of the first additional element within Count IV.  (Doc. 1 at 25).  However, the Court finds no allegation that the defendants had an intent to deceive, and the plaintiff makes no effort to identify one.

"[T]o survive a motion to dismiss [under Rule 9(b)], [the plaintiff] was required to plead (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff; and (4) what the defendants gained by the alleged fraud."  *Cisneros v. Petland, Inc*., 972 F.3d 1204, 1216 (11th Cir. 2020) (internal quotes omitted).  The defendants argue that, with respect to the August 2021 representation, the

---

[18] The plaintiff notes that Count V alleges the defendants knew at the time of the misrepresentations that they were false, and it argues that this allegation converts statements about the future into statements of existing fact.  (Doc. 17 at 22).  No law is, or could be, cited to support this proposition.

The plaintiff also notes that Counts IV and V both allege representations that the applications "would be approved," without (contrary to the complaint's factual background) any "if" conditions attached.  (Doc. 1 at 24, 25, 26; Doc. 17 at 24-25).  Such language would still constitute promissory fraud.  *Graham Foods, Inc. v. First Alabama Bank*, 567 So. 2d 859, 861 (Ala. 1990).

complaint fails to address the second, third, and fourth items and that, with respect to the February 2022 representation, it fails to address the third and fourth elements.  (Doc. 9 at 26-27).  The plaintiff, which merely block quotes Counts IV and V without commentary, (Doc. 17 at 24-25), offers no effective response.  The Court agrees that the complaint fails to satisfy the second and fourth items with respect to the August 2021 representation.  The Court also agrees with the defendants' assessment that the complaint impermissibly conflates the defendants.  *See Brooks v. Blue Cross and Blue Shield, Inc*., 116 F.3d 1364, 1381 (11th Cir. 1997) (plaintiffs violated Rule 9(b) when they "simply lumped together all of the Defendants in their allegations of fraud") (internal quotes omitted).[19]

## CONCLUSION

For the reasons set forth above:  the motion to dismiss Count I is **granted** with respect to the federal claim and **denied** with respect to any state claims; the motion to dismiss Count II is **denied**; and the motion to dismiss Counts III, IV, and V is **granted**. Counts III, IV, and V, and any federal claim within Count I, are **dismissed**.

DONE and ORDERED this 14th day of February, 2023.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[19] To the uncertain extent the complaint attempts to allege misrepresentations in addition to those on August 18 and February 10 – whether consisting of a verbal "would be approved" statement or a non-verbal implication from "demanding that Plaintiff perform certain tasks and meet objectives to obtain approval from the Commission," (Doc. 1 at 26) – any such allegations are captured by the Court's promissory fraud and Rule 9(b) analyses.