# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **68V BTR HOLDINGS, LLC,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Civil Action No.: 1:22-CV-00430** |
| | * | |
| **CITY OF FAIRHOPE; CITY OF** | * | |
| **FAIRHOPE PLANNING COMMISSION;** | * | **ORAL ARGUMENT REQUESTED** |
| **REBECCA BRYANT; HARRY KOHLER;** | * | |
| **HOLLIE MACKELLAR; ART DYAS;** | * | |
| **CLARICE HALL-BLACK; JOHN** | * | |
| **WORSHAM; JASON LANGLEY; and** | * | |
| **COREY MARTIN,** | * | |
| | * | |
| **Defendants.** | * | |

## DEFENDANTS' MOTION TO STRIKE AND EXCLUDE UNTIMELY EXPERT OPINIONS OF J. LESTER ALEXANDER, III, AND/OR IN THE ALTERNATIVE MOTION FOR COSTS AND ATTORNEYS' FEES

Pursuant to Rules 16, 26, and 37 of the *Federal Rules of Civil Procedure,* Defendants City of Fairhope, City of Fairhope Planning Commission, and individually named Planning Commissioners (together herein "Defendants") respectfully move to strike and exclude the untimely expert opinions and report of J. Lester Alexander, III ("Alexander"), produced as part of a "rebuttal expert witness disclosure" on November 15, 2023 (Ex. A, Plaintiff's Rebuttal Expert Witness Disclosure and Alexander Expert Report), and after Plaintiff's expert witness disclosure deadline of August 15, 2023. Defendants further move that the Court exclude and/or prohibit Plaintiff from using the Alexander report and any opinions or documents produced with the untimely expert disclosure and which Plaintiff failed to produce as required pursuant to Rules 26 and 34 of the *Federal Rules of Civil Procedure*. In the alternative, Defendants move the Court to exclude all new opinions raised by Alexander not previously stated by Hansen Babington (Plaintiff's 30(b)(6) witness) and not referencing the opinions of Defendants' expert. Additionally, if the Court does not exclude the untimely opinions, Defendants move the Court to award the reimbursement of attorneys' fees and expert fees and costs incurred by Defendants in connection with Plaintiff's abandoned damages calculations and the exorbitant amount of additional discovery costs that will be incurred and caused by Plaintiff's tactics.

## INTRODUCTION

Since the inception of this case, Defendants sought to discover the basis for Plaintiff's alleged damages and the evidentiary basis for the damages calculations related to Plaintiff's two undeveloped properties (Gables and Skyline). No site work had started, no infrastructure was installed, no construction initiated, and no construction, financing, purchase, or lease agreements or commitments were in place for the proposed developments which would take an estimated three years to develop, construct, and sell; yet Plaintiff alleged damages exceeding ten million dollars

in the Complaint. Despite the mandates of the *Federal Rules of Civil Procedure*, extensive discovery requests, thousands of pages of documents produced and multiple depositions, Plaintiff deliberately evaded discovery, withheld documents, and embarked on an evolving theory of damages that forced Defendants to play whack-a-mole for nearly six months just to determine the actual amount of damages claimed.

After the expert disclosure deadline passed without disclosure by Plaintiff, Defense counsel on four separate occasions requested confirmation that Plaintiff did not intend to rely on expert testimony to support its alleged damages. Plaintiff's counsel claimed that it would prove lost profits damages through "fact testimony" and stated unequivocally: "We intend to call fact witnesses concerning our damages. However, we reserve the right to call rebuttal expert witnesses."[1] On August 26, 2023, Plaintiff finally produced a damages calculation in the form of a "Damages Summary" claiming over $37 million dollars in damages based on four proformas: two proformas entitled "original" showing projected profits before the denial of the subdivision applications and two proformas entitled "today" (as of August 23, 2023) showing projected profits or losses following denial of the subdivision applications.[2] However, documents supporting the various assumptions in the proformas had not been produced and Defendants sought Court

---

[1] Defendants stated their position that testimony about projected profits is opinion testimony (via email and later during an in-person meet and confer meeting on August 28, 2023). Because Plaintiff had not made any disclosure under Rule 26 (a)(2)(C) and Local Rule 26 (b), Defense counsel also directly inquired about whether Plaintiff intended to use non-retained expert testimony or lay opinion testimony, and Plaintiff's counsel did not respond.

[2] Each proforma purported to capture the entire cost of the 100+ unit townhome projects from the ground up, including design, permitting, infrastructure, site work (horizontal construction), construction of buildings (vertical construction), and furnishings of the buildings with a projected completion in 2023 and a targeted sale date of 2025 at an estimated cost of $33 million for Skyline and $38 million for Gables. Each proforma has hundreds of rows and columns from an Excel spreadsheet, based on numerous assumptions, projected construction costs, assumed financing interest rates, and other details that were entirely dependent on a specific timeline set forth in the proformas.

intervention to address this and other discovery issues in a conference with Magistrate Judge Bivins held on September 8. At the conference, Plaintiff's counsel assured the Court and Defense counsel that all documents supporting the proformas had been produced and that Hansen Babington, the corporate representative designated by Plaintiff for all damages topics, could answer any remaining questions on damages. Plaintiff's counsel also reiterated at the hearing Plaintiff's position that Babington's testimony was fact testimony.

In reliance on that representation and previous representations that Plaintiff intended to rely on the testimony of Babington to prove the alleged damages, Defendants engaged in extensive work evaluating the calculations, the Damages Summary, the four proformas, and the documents purporting to support the figures in the proformas and prepared for the 30(b)(6) deposition of Babington. During the 30(b)(6) deposition and the weeks thereafter, it became clear that many documents underlying the assumptions and calculations contained in the proformas, as well as different versions of the proformas themselves, had not been produced. In fact, documents received in response to subpoenas to non-parties contradicted many of the assumptions in the proformas. This discovery resulted in numerous requests by Defendants for supplementation, another discovery conference with the Court, and ultimately culminated in a motion to compel.[3]

Defendants' counsel spent hundreds of hours evaluating Plaintiff's original damages calculations and the four proformas upon which the calculations were based and preparing for and deposing Babington at a cost of tens of thousands of dollars in litigation costs and legal fees. Defendants also incurred costs exceeding $53,000 in expert fees for Stacy Cummings, a forensic accounting expert, who waded through the documents purporting to support the damages

---

[3] Plaintiff did not timely respond to the motion to compel and instead produced dozens of additional pages of documents (yet still failed to address some of the deficiencies identified in the motion to compel).

calculations and the dozens of pages and countless figures contained in the proformas, and who prepared an expert report dissecting Plaintiff's damages calculations.

At 10:04 p.m. the night before Cummings' expert deposition (three months after Plaintiff's deadline to disclose an expert to support its case in chief and on the deadline for disclosure of rebuttal experts), Plaintiff disclosed Alexander and his expert witness report which: (1) advances a new damages model with completely different damages calculations; (2) comes to an entirely new damages figure more than twenty million dollars less than the original damages claimed by Plaintiff; (3) relies on hundreds of pages of new documents provided to him by Plaintiff that had not been previously produced, much of which was responsive to discovery requests served by Defendants more than six months prior; (4) abandons Babington's reliance on a project in Escambia County that Plaintiff's previous calculations used to base its cost estimates contained in the proformas, relying instead on a different project in Fairhope with underlying data that had not previously been produced, and (5) offers a prejudgment interest calculation that was not disclosed in Plaintiff's initial disclosures or with reasonable supplementation under Rule 26(e). In a feeble attempt to frame his report as rebuttal, Alexander claims that he corrects Cummings' methodological errors and damages determinations. But Cummings did not make any damages determinations; she simply evaluated Plaintiff's original calculations and the methodology Plaintiff utilized and demonstrated why the model was flawed and that the calculations were unsupported and unreliable. To be clear, Plaintiff's untimely expert does not rebut the expert opinions of Cummings, but rather Alexander created an entirely new damages calculation, separate and apart and fundamentally different from Plaintiff's original damages calculations, while using undisclosed data and new documents to correct Plaintiff's fatal failure to support its previous model, as Cummings points out in her report, thus supporting not rebutting her expert report.

There is no justification for Plaintiff's late disclosure of a case in chief expert opinions under the false pretense of rebuttal. Plaintiff has abused the discovery process and/or ignored and violated the *Federal Rules of Civil Procedure* and the Court's Scheduling Order. Failure to exclude this untimely report and expert opinions would condone Plaintiff's improper litigation tactics and would be extremely prejudicial to Defendants, necessarily resulting in expensive, time-consuming re-litigation of ground already covered at an even greater expense. Defendants will incur tens of thousands of dollars in additional costs and legal fees (on top of the approximately $100,000 already incurred by Defendants) by starting over from scratch, evaluating the new expert report, new damages calculations, and the thousands of pages of new documents just produced by Plaintiff and/or purportedly relied upon by Alexander. This will require multiple additional depositions and other discovery previously unnecessary. The exorbitant cost for this additional discovery in this complex case is excessive, unjustifiably burdensome, will likely disrupt (again) this Court's Scheduling Order and prejudice Defendants. Pursuant to Rules 16(f), 37(b)(2)(A)(ii)-(iii), and 37(c)(1) of the *Federal Rules of Civil Procedure*, Plaintiff's improper rebuttal expert opinions and new calculations and evidence should be excluded, or alternatively, Plaintiff should be required to pay reasonable expenses and costs necessitated by Plaintiff's circumvention of the rules.

**A.    Factual Background.**

Defendants have persistently attempted to discover information about Plaintiff's alleged damages and the documents supporting them throughout this case, and Plaintiff has repeatedly failed to provide this information, failed to comply with the *Federal Rules of Civil Procedure*, or belatedly provided the information through late supplementation after repeated requests, conferences with counsel, and/or after Defendants' have had to raise these issues with the Court. From the very beginning, Defendants attempted to obtain basic disclosures required by Rule 26(a)(1)(A)(iii), and

Plaintiff would not identify and/or quantify alleged damages claiming it was too early in the stage of the litigation. (Ex. B, Plaintiff's Initial Disclosures; Ex. C, April 19, 2023, letter; Ex. D, May 12, 2023, T. Bordenkircher email). Plaintiff's initial disclosures listed ten different generic categories of damages such as, "compensatory damages," "damages resulting from 68V BTR being unable to develop its properties," and "lost profits from being unable to sell the Properties post multi-occupancy development" without any computations required by Rule 26. (Ex. B). On May 12, 2023, Plaintiff served First Amended and Supplemental Initial Disclosures but still did so without producing or identifying any documents related to damages and without damages computations required by Rule 26. (Ex. E, First Amended and Supplemental Initial Disclosures). The supplemented disclosures identified only the land purchase costs (which was already alleged in the Complaint) which totaled less than two (2) million dollars but still failed to account for more than eight (8) million dollars in alleged damages or provide evidentiary support for such amounts. (Ex. E). To date, Plaintiff has not provided computations for the various categories of damages it claims as mandated by Rule 26. On April 25, 2023, Defendants served their First Set of Interrogatories and Requests for Production (*see* Doc. 28), and on June 8, 2023, Plaintiff responded lodging objections and/or by relying on generic responses and the inadequate initial disclosures, meanwhile producing no documents related to damages except for a few invoices related to Gables, one of the two projects. (Ex. F, Plaintiff's June 8 discovery responses).

On July 19, 2023, Defendants reached out to Plaintiff about the deficiencies in the discovery responses, and counsel for the parties had a telephone conference on July 21, 2023, during which counsel for Plaintiff agreed to supplement production. (Ex. G, July 19, 2023, letter; Ex. H, August 16, 2023, letter). Because no supplementation occurred almost a month later, Defendants wrote to Plaintiff on August 16, 2023, again requesting documents related to the

damages claim and requesting a conference on August 18, 2023. (Ex. H). Counsel responded that Plaintiff was "actively searching for additional documents to produce, including documents pertaining to financial loss" and that Plaintiff would "produce documents as we are able to pursuant to the company's work schedules, availability, and ability to locate documents." (Ex. I, August 16, 2023, T. Bordenkircher email). However, supplementation had been promised before, and these documents should have been produced with initial disclosures or in response to Defendants' discovery requests. Thus, Defendants again requested that the parties meet and confer about the outstanding discovery issues, and a telephone conference was held on August 18, 2023. (Ex. J, August 17, 2023, L. Cooper/T. Bordenkircher emails). During that conference, Defense counsel noted that Plaintiff had not disclosed an expert witness by the deadline[4] and very directly asked whether Plaintiff intended to rely on expert witness testimony to support its damages claim (especially since Plaintiff, a newly formed real estate entity, was claiming over 10 million dollars in lost profits). Counsel for Plaintiff stated that Plaintiff did not intend to disclose or call an expert witness. Counsel for Defendants also addressed the fact that Defendants' September 16 deadline to disclose an expert witness was fast approaching, but Defendants lacked documents related to the claimed damages or any meaningful information to understand the basis for the alleged damages. Counsel once again agreed that Plaintiff would supplement its document production.

On August 21, 2023, Defendants wrote Plaintiff via email about the delayed document production and requested confirmation that Plaintiff will not disclose or call any expert witness in this case as stated in the August 18, 2023, telephone conference. (Ex. K, August 21, 2023, C. Williams email). Plaintiff's counsel did not respond to this request other than to state: "We will

---

[4] Under Court's Rule 16(b) Scheduling Order, Plaintiff was required to disclose any expert witness that it intended to use to support its case in chief by August 15, 2023. (Doc. 27, PageID.483).

respond to the rest of your email when we can." (Ex. L, August 21, 2023, T. Bordenkircher email).

Again, Defendants' expert disclosure deadline was just three weeks away, and Defense counsel

were attempting to determine if it was necessary to engage an expert witness and if so what

information to provide that expert considering no damages documents or calculations had been

produced by Plaintiff. Defense counsel again on August 23 requested that Plaintiff's counsel

confirm that Plaintiff did not intend to disclose or use expert opinion testimony and noting

Defendants' position that opinion testimony regarding valuations or lost profits required expert

testimony based on specialized knowledge (retained or non-retained) and requiring a report or the

disclosure requirements of Rule 26(a)(2)(C) and Civil L.R. 26(b). (Ex. M, August 23, 2023, L.

Cooper/T. Bordenkircher emails). Counsel acknowledged for the first time in writing that Plaintiff

did not intend to disclose an expert witness stating as follows: "We intend to call fact witnesses

concerning our damages. However, we reserve the right to call rebuttal expert witnesses…. Hope

this answers your question." (*Id*). Attempting to clarify Plaintiff's theory of damages which should

have been transparent at this point under Rule 26(a)(1), Defense counsel responded:

> I'm afraid that doesn't answer my question. Does 68V BTR Holdings intend to
> offer opinion testimony from any witness about damages?" It is one thing for a fact
> witness to testify 68V incurred and paid an invoice in the amount of $X to an
> engineer. But it is quite another thing for a fact witness, for example, to testify that
> in his or her lay opinion the property would have been worth $X amount had the
> MOP applications been approved. The latter requires expert testimony and
> disclosure of the opinions in our view.

(Ex. N, August 24, 2023, L. Cooper email). Plaintiff's counsel did not respond. Two days later on

August 26, 2023, Plaintiff supplemented its document production (with over 4500 new documents)

producing for the first time a damages calculation claiming $37,717,719 in damages (Ex. O,

Damages Summary) and four internal proformas in the form of Excel spreadsheets for the

proposed developments including: (1) a proforma entitled "Original" for Gables (Ex. P); (2) a

proforma entitled "Today" for Gables (Ex. Q); (3) a proforma entitled "Original" for Skyline (Ex. R); and (4) a proforma entitled "Today" for Skyline (Ex. S).

On August 28, 2023, the parties had an in-person conference regarding numerous discovery issues including the fact that the newly produced proformas referenced documents that had not been produced and Plaintiff's recent production revealed for the first time that Plaintiff's parent company, 68 Ventures, LLC ("68 Ventures"), entered into a Joint Venture Agreement on October 8, 2021 with the TPA Group and that the Joint Venture and/or TPA was a potential investor in the proposed Gables and Skyline projects.[5] During this meeting, counsel for Defendants restated their position that future lost profits or projections testimony is expert opinion testimony, and accordingly Defendants would object to any untimely attempt to use expert witness opinion testimony. Counsel for Plaintiff also restated that Plaintiff would prove its damages through testimony of Hansen Babington (a 30(b)(6) fact witness). The parties did not reach agreement about this or any other discovery issue at the in-person meeting.

Defendants requested a discovery conference with the Court, and the conference was held on September 8, 2023. (Doc. 60). Considering Plaintiff's pattern of withholding documents and tardy, piecemeal production of information regarding damages, Counsel for Defendants expressed concern that Defendants did not have all relevant documents related to Plaintiff's damages claim prior to the scheduled upcoming 30(b)(6) deposition of Babington. The Court suggested that Defendants' counsel send an email to Plaintiff's counsel requesting any outstanding damages documents and that if Plaintiff failed to produce responsive documents Defendants could later seek relief from harm suffered as the result of any failed or late production. Defendants sent an email

---

[5] Defendants' Interrogatory No. 17 served four months prior specifically requested that Plaintiff identify all investors and any source of capital for the proposed projects. (*See* Ex. F).

requesting confirmation that all documents that Plaintiff intended to rely upon to support the damages claim had been produced.[6] (Ex. T, September 12, 2023, L. Cooper email). No supplemental production was made.

On September 29, 2023, Defendants deposed Hansen Babington the 30(b)(6) witness designated by Plaintiff to testify regarding all damages topics for seven hours extensively covering the proformas and the Damages Summary.[7] Babington testified that his testimony was based on specialized knowledge and conceded he had not prepared an expert report, and that Plaintiff was claiming over 37 million dollars in lost profits based on a damages model that added the projected profits Plaintiff contends it would have made if the applications had been approved by the Planning Commission to a hypothetical loss Plaintiff contends it would suffer if the proposed projects were developed under current market conditions. (Ex. U, Babington Depo. at 25-28, 106-07, 145-47, 151, 322). Babington testified that the Damages Summary model was not lost valuation or a business valuation. (*Id*. at 153, 321).

On October 16, 2023, the Defendants disclosed the expert report of Stacy Cummings. (Ex. V, Expert Report of Stacy Cummings). Cummings "analyze[d] Plaintiff's damage calculation offered [by Plaintiff on August 26] in support of the allegations in this matter" and she offered her expert opinions regarding the same. (*Id*. at 3). On November 15, 2023, at 10:04 p.m., the night before the deposition of Cummings, Plaintiff disclosed the Alexander expert report, along with

---

[6] At the discovery conference on September 8, Defendants also requested that its expert disclosure deadline be extended in light of Plaintiff's late production of the damages calculations on August 26, and the Court entered an order extending Defendants' expert disclosure deadline to October 16, 2023. (Doc. 62).

[7] The vast majority of the deposition of Babington covered the original damages claim Plaintiff advocated.

twenty-one (21) appendices[8] comprised of approximately sixty-nine (69) pages. (Ex. A). In conjunction Plaintiff produced an additional 630 documents relied upon by Alexander that were never reviewed or used by Stacy Cummings (and that Plaintiff failed to produce with initial or supplemental disclosures or its discovery responses and that Plaintiff failed to produce prior to the 30(b)(6) deposition of Babington) including:

- 68 Ventures Company Overview H1 2022
- Image of chart showing Units/Capitalization for 10 different 68 Venture developments. (Alexander report, Fn. 5)
- 68V Market Opportunity documents (Alexander report, Fn. 6- "68V_Market Opportunity_H1_ 2022" and Appendix 6.1)
- Lot Development Capitalizations documents (Alexander report, Fn7- "Lot Development Capitalizations-WL-2023.11.14")
- Master Debt Schedule June 30, 2022
- Master Debt Schedule June 30, 2023 (Alexander report, Fn. 8- Master Debt Schedule- 30 June 2023)
- Subcontractors for 68V BTR Holdings (Alexander report, Fn. 8, Fn. 9, and Fn.10).
- Fairhope, AL region Sale Comparable Summary Statistics- CoStar (Alexander report, Fn 29 CoStar Sales Comp. 11.14.23, Appendices 10.1 and 10.2).
- Overland Villas Final Pay Application Certification for Payment (Alexander report, Appendix 7, AIA Progress Billing #15-Overland 3.31.23.pdf)
- AIA Progress Billing #13 Craft Farms
- AIA Progress Billing #1- Wyld Palms
- AIA Progress Billing #3- Mack Bayou
- AIA Progress Billing #8- Parkstone
- AIA Progress Billing #8- Port Washington
- Construction Loan Agreement- Cottages at Craft Farms
- Construction Term and Loan Agreement- Mack Bayou Townhomes
- Foley Townhomes Southpoint- Construction Loan Agreement
- Baldwin County Proposed Zoning District with amendments to District 8 and 37

Alexander's report is an untimely, affirmative expert report not proper rebuttal. Alexander's opinions relate to damages, on which Plaintiff ultimately bears the burden of proof at

---

[8] One of the appendices includes a list of 1117 items that Alexander states that he utilized in creating his report. (Ex. A at Appendix 13).

trial, but Plaintiff offered no expert testimony under the deadlines set in forth in the Scheduling Order. Based on the facts above Plaintiff blatantly attempts to sandbag and offer affirmative expert opinion testimony on issues on which it bears the burden of proof in its case in chief: (a) months after the deadline, (b) based on evidence it already had and failed to disclose; (c) with evidence/opinion testimony that directly contradicts its original calculations and the testimony of Hansen Babington; and (d) which attempts to correct, not rebut, the criticisms set forth in Defendants' expert witness report. *See Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15, 2011) ("A party with the burden of proof on an issue should not be allowed to secretly prepare an army of 'rebuttal' experts to attack the opposition reports like Odysseus and the Greeks springing forth from their wooden hideout in Troy.").

## B.    Legal Standards.

*Federal Rule of Civil Procedure* 26 governs the parties' expert disclosure obligations. Under Rule 26(a)(2), parties are required to disclose the identity of its expert witnesses along with written reports "at the times and in the sequence that the court orders." *Fed.R.Civ.P.* 26(a)(2)(D). The opposing party may then serve a rebuttal expert disclosure "if the evidence is *intended solely to contradict or rebut evidence on the same subject matter* identified by another party under Rule 26(a)(2)(B) or (C)." *Fed.R.Civ.P.* 26(a)(2)(D)(ii) (emphasis added).

What the rebuttal expert cannot do under any circumstances is advance new arguments, theories, or evidence under the guise of rebuttal. *See Blake v. Securitas Sec. Ser., Inc.,* 292 F.R.D. 15, 17-18 (D.D.C. 2013). "A report is not truly a rebuttal if it solely expands the party's case in chief, introduces new legal theories, or presents the same opinions previously provided." *Reese v. CSX Transportation, Inc.*, CV 118-215, 2020 WL 5740253, at *13 (S.D. Ga. Sept. 24, 2020). "A party [cannot] disguise support for his or her case in chief as rebuttal evidence and may not glom

onto language in an opposing party's expert report … to revive his or her opportunity to provide an expert report." *Strong v. City of Naples*, No. 2:22-CV-318-KCD, 2023 WL 5748425, at *1 (M.D. Fla. Aug. 7, 2023) (quoting *GLF Constr. Corp. v. Fedcon Joint Venture*, No. 8:17-CV-1932-T-36AAS, 2019 WL 13168545, at *6 (M.D. Fla. Oct. 16, 2019)); *see also Timber Pines Plaza, LLC v. Kinsale Ins. Co.,* 192 F.Supp. 3d 1287, 1291 (M.D. Fla. 2016) (Party cannot "offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief.").

An expert witness report that "presents entirely new damages calculations" is not proper rebuttal. *D'Andrea Bros. LLC v. United States*, No. 08-286C, 2012 WL 644010, at *4 (Fed. Cl. Feb. 10, 2012). Rebuttal expert opinions cannot be used to correct "any oversights in the plaintiff's case in chief." *In re Sandridge Energy, Inc. Sec. Litig.*, Case No. CIV-12-1341-G 2019 WL 2476742, at *2, 2-3 (W.D. Okla. June 13, 2019) (excluding "new opinions" on damages in rebuttal report and finding prejudice resulting from amendment to Scheduling Order that "would unduly increase the cost of this litigation and delay its ultimate resolution"); *see also In re TFT-LCD (Flat Panel) Antitrust Lit.*, MDL NO. 3:07-md-01827-SI 2012 WL 12919150, at *2-3 (N.D. Cal. July 13, 2012) (striking rebuttal expert opinions based on "substantial change in methodology" and "additional calculations" that constituted "a substantial deviation from, and for all intents and purposes an abandonment of, his original opinions" and recognizing the prejudice of the opinion's late disclosure in light of "impending deadlines").

Rebuttal testimony by an expert witness is permitted "only when it directly addresses an assertion raised by an opponent's experts." *Wreal, LLC v. Amazon.com, Inc*., CASE NO. 14-21385-CIV, 2016 WL 8793317, at *3 (S.D. Fla. Jan. 7, 2016) (quoting *In re Trasylol Prods. Liab. Litig.*, No. 09-01928, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010)). "Where a party attempts to designate as a 'rebuttal' expert someone whose proposed testimony is beyond the scope of

appropriate rebuttal, that witness may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a) and the Court's governing scheduling order." *Blake,* 292 F.R.D. at 18. "If a party attempts to advance new arguments through a 'rebuttal' expert, then 'the overwhelming weight of authority is that preclusion is required and mandatory absent some unusual or extenuating circumstances.'" *Wreal*, 2016 WL 8793317, at *3 (quoting *Blake,* 292 F.R.D. at 19).[9]

*Federal Rule of Civil Procedure* 16(f) provides that "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney…fails to obey a scheduling…order." *Fed.R.Civ.P.* 16(f). A district court has power under that Rule and its inherent authority "to impose sanctions [for] conduct violative of scheduling orders and wasteful of the time of the Court and opposing counsel." *Dallas v. Goldberg*, NO. 95 Civ. 9076 LTS RLE, 2003 WL 22872325, at *1 (S.D.N.Y. Dec. 5, 2003) (internal citations omitted). Rule 37(b)(2)(A)(ii) and (iii) also provides that if a party "fails to obey an order to provide or permit discovery," the court may prohibit the introduction of matters into evidence and strike pleadings in whole or part. Further, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *Fed.R.Civ.P.* 37(c)(1). Instead of or in addition to exclusion of evidence, the court may also order payment of reasonable expenses or any other sanctions listed in Rule 37 (b)(2)(A)(i)-(vi). *Id*.

---

[9] The Eleventh Circuit has not squarely decided whether Rule 37(c)(1) mandates exclusion of evidence that was not disclosed in violation of Rule 26 absent a showing of harmlessness and substantial justification. *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 602–04 (11th Cir. 2019). However, based on the facts presented here, exclusion is the only fair remedy.

**C.    Alexander is not a proper rebuttal expert, and his opinions should be stricken as untimely.**

Alexander is not a proper rebuttal expert witness, and his report is an untimely affirmative expert report submitted under the guise of a rebuttal report. Plaintiff has disclosed a newly identified expert witness who advances a new damages model altogether, changes methodology, changes the amount of damages claimed by 20 million dollars, changes assumptions, and relies on new data/documents that were not produced. Plaintiff wants a "do over" to meet its burden of proof to establish damages when Plaintiff offered no affirmative expert testimony (retained or non-retained) by the deadline under the Court's Scheduling Order to do so. *See, e.g., Terpin v. AT&T Mobility, LLC*, Case No. 18-CV-06975-ODW-KS, 2023 WL 3431906, at *8 (C.D. Cal. Mar. 20, 2023); *Ford Motor Co. v. Versata Software, Inc.*, Case No. 15-cv-10628-MFL-EAS (consolidated with Case No. 15-11624), 2018 WL 5306637, at *5 (E.D. Mich. Feb. 8, 2018) (when expert opinions are "directed to matters on which the party bears the burden of proof…then Rule 26 fairly calls for disclosure of the witness (and the report) at the deadline of opening reports.").

Alexander's report relies on evidence and concepts not found in the expert report and opinions of Stacy Cummings, which critiqued the exact model and calculations Plaintiff proposed and Alexander now abandons. Plaintiff failed to disclose Alexander or any other expert witness by the deadline and repeatedly represented that it would prove tens of millions of dollars in projected profits damages *without expert testimony*. In an ambush litigation tactic (or to see how Defendants' expert would challenge Plaintiff's damages claim), Plaintiff made the strategic choice not to disclose an expert by the deadline and instead produced a "rebuttal" expert report advancing an entirely new damages case on the eve of the deposition of Defendants' expert witness. The substance of Alexander's report reveals this is an improper back-door, untimely attempt to offer affirmative expert testimony and completely change Plaintiff's damages calculations when fatal

weaknesses were exposed in the deposition testimony of Babington and by the expert report of Stacy Cummings. This sort of gamesmanship is precisely what the *Federal Rules of Civil Procedure* intend to prevent. *See Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253 (BSJ) (HBP) 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) (striking a rebuttal report containing new test results where plaintiff's expert "could…have conducted those tests before his initial report was drafted, and plaintiffs' gamesmanship in this regard is precisely what the Rules were intended to prevent."). "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise,…compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (internal citation omitted), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006).

### 1.    Alexander's report does not rebut Cummings' report.

Alexander's report is not being offered "solely to contradict or rebut" the Cummings' report; rather, Alexander's opinions support Cummings' opinions about the unreliability of Babington's calculations and are offered as evidence to resurrect Plaintiff's deficient case in chief evidence. Cummings confined her review to the original damages model and calculations prepared by Babington and stated that flaws in his methodology and the absence of evidence and data supporting the numerous assumptions in the proformas and Damages Summary rendered the 37 million dollar damages claim speculative and unreliable in her expert opinion. (Ex. W, Cummings Depo. at 51-52, 57-59, 93, 95, 98-99; Ex. V). Alexander's report states that he was asked to "correct any errors found in the damage determinations made by Ms. Cummings," but Cummings did not make any damage determinations. (Ex. A; Ex. W, Cummings Depo. at 51-52, 59; Ex. V). Cummings' scope of work was to "review Plaintiff's damage calculation" offered in support of the allegations in this matter and to provide expert opinions regarding that damage calculation.

(Ex. W, Cummings Depo. at 34). She was not asked to, nor did she, offer any opinion that calculated alleged damages. (Ex. W, Cummings Depo. at 51-53, 58-60, 99).

Alexander further claims that Cummings conflates diminution in value and lost profits methodologies, but Cummings did not advocate a methodology (Ex. A, Alexander report; Ex. W, Cummings Depo. at 94-95, Ex. V, Cummings report); she reviewed the methodology and calculations prepared by Babington and put forth by Plaintiff which is fundamentally different from the methodology and calculations in Alexander's untimely report.[10] Alexander also claims that Cummings failed to apply the "new business rule" factors which look to "management's past record of profitability in similar businesses in similar geographic areas; management's past record of profitability in the same business; and management's access to capital; and the feasibility of 68V's business plan." (Ex. A, Alexander report at 4-5). Cummings opined that Plaintiff's original calculation did not establish damages within a reasonable degree of certainty *because Plaintiff failed to produce such evidence*. (Ex. V, Cummings report at 5-7, 11, 25, 32).[11] Cummings' report squarely addresses Plaintiff's failure of proof in this regard and Plaintiff now attempts to use

---

[10] Alexander mischaracterizes Babington's original damage calculations and entirely ignores his testimony that Plaintiff is claiming 37 million dollars in lost profits and disavowing a business valuation. (Ex. U, Babington Depo. at 106-07, 153, 321).

[11]"The Plaintiff has not provided sufficient evidence, such as actual performance on similar developments prior to and following the alleged loss period, actual costs incurred on projects, internal financial statements, and other factual support for the assumptions used in order to verify the claimed damages are achievable and reasonable." (Ex. V, Cummings Report at 7). "The Plaintiff has failed to specifically identify the source of the capital requirement or provide proof or evidence of the availability of funding or any commitment to fund from any source." (*Id.* at 6). "The Plaintiff has not provided sufficient relevant data, including contracts, commitments from financing institutions or other concrete terms, among others, to verify the fundamental assumptions used it its damage calculation or to support the achievability of the projected profits." (*Id.* at 5). "Mr. Babington also testified about various other projects in process during the loss period, but Plaintiff has not produced any evidence of the structure of the equity, financing terms, cost data, terms of exit, timelines, and success of these projects to determine if the assumptions and data used in the Plaintiff's damage model for Skyline and Gables are reasonable." (*Id.* at 11).

Alexander's untimely report in an effort to fix its failure to submit a properly prepared and supported damage claim in direct violation of Rules 16 and 26. *See Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (rebuttal opinions cannot be used to correct a party's oversights in its case in chief). Rather than rebut, Alexander supports or affirms Cummings' opinions with his reference to the new business rule. If Alexander's report rebuts any opinions, it rebuts Babington's case in chief opinions as shown below. Notably, Alexander's report is nine pages in length but spends less than two pages purportedly "rebutting" Cummings' opinions without citing or referencing a single page in Cummings' report. (Ex. A).

> **a.** **Alexander advances a brand-new damages theory with new methodology and calculations and based on new documents that contradicts Babington's opinions.**

After brief, feigned criticism of Cummings, Alexander offers a new theory of damages that conflicts with Babington's model along with a new calculation that differs from Babington's calculation by 20 million dollars. *Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, Civil Action No. CV-12-S-332-NWI 2014 WL 12605648, at *2 (N.D. Ala. September 3, 2014) (striking improper rebuttal expert report largely comprised of independent conclusions and opinions). Alexander fundamentally changes Babington's damages model in the following ways:

**Business Valuation Damages:** Alexander shifts from Babington's projection of cash flows model and considers each property as a separate business using a business valuation method to calculate the "Enterprise Value" as of the date he estimates the projects would have started.[12] He uses a business valuation methodology on each property to calculate "Enterprise Value" which is a different method than simply projecting expected cash flows.

---

[12] This is contrary to Babington's testimony tendered by Plaintiff to provide sworn testimony on damages. (Ex. U, Babington Depo. at 321).

**Each Property As a Separate Business**: Alexander breaks down the two separate properties at issue into individual distinct businesses rather than properties jointly owned by the single Plaintiff entity. Babington's calculation considers the expected cash flows from each piece of property as its own profit center in a claim for 68V BTR Holding, LLC's alleged damages.

**Changes Damages Calculation Dates**: Alexander changes the point at which damages are calculated. Babington's calculation starts with the first dollar invested through anticipated sale of the properties. Alexander determines value as of July 1, 2022 and August 1, 2022, and only considers cash flows after the purchase of the land.

**Discounted Cash Flows**: Alexander discounts future cash flows in his "Enterprise Valuation," which was not done by Babington in the original calculations and was one of the flaws in methodology noted by Cummings.

**Mitigation**: Alexander offers new opinions about the value of the land based on an alternative use of the land and calculates a mitigation figure which was not addressed in the original damages model, another flaw noted by Cummings.

**Prejudgment Interest**: Alexander offers new opinions on the calculation of prejudgment interest which was not addressed at all by Babington or Cummings.

This chart shows the vast differences in Babington's original model and damages calculation and Alexander's new model and calculation.

| Babington's Original Calculation | Alexander's New Calculation |
|---|---|
| $37,711,719 in damages [lost profits] as of 8/23/23 | $15,390,000 in damages [diminution in value ] as of 7/1/22 and 8/1/22 |
| Projects estimated cash flows from each property assuming developed as intended before the alleged event and after to calculate lost profits. | Uses business valuation methodology to determine the fair market value of the business before and after the business was allegedly destroyed. |

| Babington's Original Calculation | Alexander's New Calculation |
|---|---|
| Uses expected cash flow methodology to calculate Plaintiff's damages claim. | Uses business valuation methodology on each property as if it were itself a business to calculate "enterprise value." |
| Damages calculation considers expected cash flows from day one with the first dollar invested through the last dollar received from the expected sale of properties in 2025. | Damages calculation determines enterprise value as of 7/1/22 for Skyline and as of 8/1/22 for Gables and only considers cash flows after that point. |
| Cash flows are not discounted. | Cash flows are discounted to net present value using a weighted average cost of capital as the discount rate under a mid-year convention. |
| Does not consider estimated taxes. | Reduces cash flow for estimated taxes. |
| Lacked sufficient data for assumptions and failed to establish damages with reasonable certainty: no financial records of 68 Ventures (Plaintiff's parent), no data supporting achievability of project profitability or feasibility, timelines, expected capital structure, source and availability of financing, exit terms, or other details of similar project(s). | Relies on new assumptions, new data and new documents to claim damages are reasonably certain based on capitalization, timelines, financing commitments, subcontractors, etc. of 68 Ventures' other projects and 68 Ventures' line of credit. |
| Development costs based on budget for Navy Crossing dated 8/5/22 which is after the original proforma was created and is a project that has never been built. | Development costs based on cost per unit for Overland Villas project as built and relies on new documents and new data not produced by Plaintiff |
| No mitigation.<br>[other than Mr. Babington's testimony that this lawsuit is mitigation][13] | Deducts $1,070,000 in mitigation based on agricultural use of properties. |
| No prejudgment interest. | Includes $2,370,000 in prejudgment interest from July and August 2022 through August 2024. |

Although not exhaustive, this list shows how far beyond the definition of rebuttal the Alexander report is: these are new numbers and new theories of recovery based on new data that

---

[13] (Ex. U, Babington Depo. at 287).

Plaintiff failed to previously produce. Plaintiff is attempting to advance new theories and methodologies to correct deficiencies and flaws in Babington's original damages calculations and model and to modify its case in chief evidence after Defendants' expert witness identified the flaws and insufficiencies in her expert report.

> **b.    Alexander's opinions based on new methodology and new evidence that Plaintiff failed to produce in its case in chief and in violation of discovery rules should be excluded.**

Not only does Alexander substantially change Babington's damages model and calculations, but in offering opinions regarding the new business rule, he relies on extensive new data and documents not previously identified or produced by Plaintiff in violation of Rules 26 and 34 of the *Federal Rules of Civil Procedure*, none of which was relied upon by Babington or Cummings. Defendants' expert witness confined her review to the original damages model and calculations prepared by Babington and described in the four proformas. (Ex. W, Cummings Depo. at 93, 95). Yet Alexander's diminution in value opinion relies on new documents that relate to and attempt to provide untimely support for Plaintiff's case in chief on damages. Plaintiff failed to produce these documents after the September 8 discovery hearing during which Plaintiff's counsel stated that all documents supporting Plaintiff's damages had been produced. Moreover, Plaintiff failed to produce these documents before Babington's deposition, even after Defense counsel requested supplementation or confirmation that all damages evidence that Plaintiff intended to use was produced prior to the Plaintiff's 30(b)(6) deposition as directed by the Court. Plaintiff has no justification for not producing this new evidence earlier in its initial damages calculations, *i.e.*, case in chief.

For example, Alexander relies on the Overland Villas Final Pay Application Certification for Payment for a project that 68 Ventures built and completed to support estimated vertical costs.

(Alexander report, Appendix 7, AIA Progress Billing #15-Overland 3.31.23.pdf). Plaintiff produced this document for the first time with Alexander's report, and his opinions directly conflict with the original damages calculation of Babington which relied on the August 5, 2023 budget for Navy Crossing, a project that has never been built. (Ex. U, Babington Depo. at 263-265). In fact, other than Navy Crossing, Babington testified that no other project was relied upon for the figures in the original damages calculations based on the four proformas. (*Id*. at 303-304). Alexander also relies on numerous documents regarding the capitalization and financing of other projects by 68 Ventures apparently created the day before his report, documents and data that Plaintiff failed to produce. (Ex. X, Image of chart showing Units/Capitalization/ chart for 8 different developments; Ex. A, Fn.5, Fn.7- "Lot Development Capitalizations-WL-2023.11.14"). He also relies on a Master Debt Schedule for 68 Ventures, and lists of subcontractors for 68 Ventures and MH Vertical, a related party, to support his opinion that 68 Ventures had access to adequate capital to fund the projects and the business plan was feasible, yet these documents were never produced by Plaintiff prior to this "rebuttal report." (Ex. A, Fn. 8- Master Debt Schedule- 30 June 2023, Subcontractor lists, Fn. 9, Fn. 10).[14]

This late report and new evidence is clearly offered to support Plaintiff's prima facie case which courts have barred as improper rebuttal expert testimony. *See Timber Pines Plaza, LLC*, 192 F.Supp. 3d at 1291 (excluding expert report described as "an attempt to obtain a do-over of … initial report."); *Bell v. Progressive Select Insurance Co.*, Case No. 8:22-cv-1054-KKM-TGW, 2023 WL 5940306, at *3 (M.D. Fla. September 13, 2023) (Rebuttal expert cannot "raise evidence

---

[14] Alexander's new opinions are based on the financial capacity of 68 Ventures, meanwhile Plaintiff has not produced and is opposing Defendants' request for 68 Ventures' financial records. *See* Defendants' Motion to Compel (Doc. 88, PageID.1671-1674); Plaintiff's Response to Defendants' Motion to Compel (Doc. 101, PageID.2357-2359).

that goes to the plaintiff's prima facie case and logically belongs in his case in chief, [especially] when a plaintiff knows the defendant intends on contesting that issue."); *see Sec. & Exch. Comm'n v. McGinnis*, Case No. 5:14-CV-6, 2019 WL 13172404, at \*14-15 (D. Vt. Feb. 1, 2019) (striking new "rebuttal" opinions based on information that was available to the party and noting that because defendant's expert limited his analysis to documents analyzed by plaintiff's initial report, any rebuttal offered should have been confined to that same data). Here, as indicated by counsel's email of August 23, 2023, it appears Plaintiff made a deliberate decision to let the expert disclosure deadline pass, knowing that expert opinions on damages were essential to Plaintiff's case in chief, only to disclose them later after the Defendants' expert disclosure. In other words, the Plaintiff made an improper attempt to "reverse the order of proof," requiring Defendants to put in their evidence first. *Bell*, 2023 WL 5940306, at \*3.

Taking these principles into account, along with Rule 26(a)(2)(D)(ii)'s requirement that rebuttal testimony be "solely" intended to contradict, Alexander's opinion is not a proper rebuttal opinion and should have been disclosed months ago as an affirmative expert opinion in accordance with the Scheduling Order. If Plaintiff needed Alexander to offer his own independent view of the case, those opinions should have been disclosed on or before August 15, 2023. (Doc. 27). *See Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 26 (11th Cir. 2012) (affirming exclusion of opinions that "could and should have been formulated much earlier within the time set for discovery" and stating plaintiff did not need defendant's report to do so).

"Courts have both the authority and the responsibility for ensuring that cases proceed in a timely manner." *Villafana v. Auto-Owners Ins.*, Civil Action No. 06-00684-WS-B, 2007 WL 1814937, at \*2 (S.D. Ala. May 16, 2007) (citing *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002)). The importance of observing deadlines contained in scheduling orders is

recognized in Rule 16(b). *Fed R. Civ P.* 16(b) (schedule shall not be modified, except upon a showing of good cause and by leave of court.). Plaintiff has failed to comply with both the Scheduling Order and disclosure requirements under the *Federal Rule of Civil Procedure*. *Fed.R.Civ.P.* 26(a)(2)(D). While "District courts have broad discretion to exclude untimely disclosed expert-witness testimony," *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1315 (11th Cir. 2014) (citation omitted), "compliance with the requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (citation omitted). "[T]he expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise." *Id.* A litigant does not "ha[ve] carte blanche permission to perform when he desires." *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004).

Alexander's report and the evidence upon which he relies is not rebuttal but affirmative evidence that Plaintiff failed to put forth disregarding the *Federal Rules of Civil Procedure* and this Court's orders. Instead of rebutting Cummings' report, Alexander is attempting to rehabilitate Plaintiff's damages case (by attempting to correct flaws outlined in Cummings' report) with new methodology and new supporting data that Babington did not rely upon and was not produced prior to his deposition. Defendants move to strike the report and all documents produced on November 15, 2023 as untimely, and any testimony or opinions based on those documents as improper rebuttal.

**D.    Exclusion of Alexander's opinions is the appropriate sanction.**

Rule 37(c)(1) states that if a party fails to provide the information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Fed.R.Civ.P.* 37(c)(1); *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008) ("Under

Rule 37(c)(1), a district court clearly has authority to exclude an expert's testimony where a party has failed to comply with Rule 26(a) *unless the failure is substantially justified or is harmless*.") (emphasis in original); "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (per curiam) (quotation omitted). "The determination of whether a party's failure to timely disclose an expert is 'substantially justified' or 'harmless' lies in the broad discretion of the Court, after consideration of: 1) the unfair prejudice or surprise of the opposing party; 2) the party's ability to cure the surprise; 3) the likelihood and extent of disruption to the trial; 4) the importance of the evidence; and 5) the offering party's explanation for its failure to timely disclose." *Glass-Wyble v. Geico Ins. Co.*, CIVIL ACTION 1:19-00429-KD-N, 2020 WL 5166034, at *3 (S.D. Ala. Aug. 31, 2020). "In addition to or instead of [exclusion], the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure [to disclose]; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions." *Fed.R.Civ.P.* 37(c).

There is no justification for Plaintiff's complete reversal of its damages case and disclosure of Alexander's expert opinions at this late stage. Counsel for Plaintiff stated over and over that Plaintiff intended to prove damages through fact witnesses. Defendants went to great lengths to confirm that Plaintiff did not intend to rely on expert testimony in its case in chief even after the deadline passed and to ensure that Plaintiff produced all relevant documents Plaintiff intended to use to support damages prior to the deposition of the 30(b)(6) witness and prior to Defendants' expert disclosure deadline. Counsel had several conferences about that issue and two conferences with the Court, and Defendants were forced to file a motion to compel regarding Plaintiff's failure to produce documents related to its first damages theory. Defendants' initial discovery requested

25

all documents relevant to the damages claim and specifically requested identification of any source of financial contribution or capital for Gables and Skyline; Alexander now offers opinions regarding 68 Ventures' ability to capitalize the proposed projects. Defendants' initial discovery also requested that Plaintiff state the market value of the properties and identify any documents which show the value of the properties; Alexander now offers an opinion concerning the fair market value of the properties "before and after the business was destroyed," relying on documents that were not produced as required under Rule 34. *See Harbin v. Roundpoint Mortg. Co.*, 2:15-CV-01069-SLB, 2020 WL 7129933, at *6-8 (N.D. Ala. Dec. 4, 2020) (plaintiff's failure to disclose expert was neither justified nor harmless; defendant thought witness would testify as a fact witness for most of case; plaintiff was not transparent about information; defendant would suffer surprise and prejudice and potential to cure through deposition outweighed by evidentiary issues and potential costly discovery caused by late disclosure).

Nor is Plaintiff's failure to timely disclose Alexander's opinions on damages harmless. *See Nelson v. Ipalco Enterprises*, No. IPO2477CHK, 2005 WL 1924332, at *8 (S.D. Ind. August 11, 2005) ("Also, such disregard of the schedule and the orderly development of the case cannot be deemed harmless because it gave the plaintiffs the opportunity to wait for defendants to show their expert cards and because indulgence of plaintiffs' tactics would contribute to further delay, expense and complication in an already long, expensive, and complicated lawsuit."). Defendants timely disclosed their own expert witness, produced the required report and tendered the expert witness for deposition on November 16, 2023. If this late disclosure is allowed, Defendants would now need to, at extraordinary and additional expense: (1) prepare for and depose Alexander to test his opinions; (2) depose other witnesses regarding Alexander's new opinions including retaking Babington's deposition; (3) potentially depose other witnesses related to the newly disclosed

26

information about 68 Ventures' other projects; and (4) obtain rebuttal expert witnesses or rebuttal opinions, including a surrebuttal from Cummings and potentially a new expert altogether to rebut Alexander's mitigation and valuation opinions. This untimely disclosure puts this case (pending since October 2022) in reverse and would necessitate more costly discovery and disrupt the discovery timeline, and the Court has already extended the Scheduling Order and the trial date. *Glass-Wyble*, 2020 WL 5166034, at *3-4 (expert disclosure untimely; requiring strict adherence to scheduling order and noting the importance of orderly discovery and that surprise is not favored); *Fuller v. Winn-Dixie Montgomery, LLC*, CIVIL ACTION 16-00363-KD-M 2017 WL 3098104, at *3 (S.D. Ala. July 19, 2017) (excluding expert because allowing late disclosure would "wholly disrupt the timeline in this case as well as the trial setting" and would prompt a new schedule due to the need to depose the expert and conduct further discovery.).

In short, Plaintiff used the staggered expert deadlines in the Scheduling Order to ambush Defendants with expert opinions by an expert the Plaintiff retained some unknown weeks or months prior,[15] all by styling Alexander as a "rebuttal expert," and without exclusion Defendants would be severely prejudiced. Defendants have met their obligations to disclose their expert witness, and the Defendants would be substantially prejudiced if forced to contend with the delinquent "rebuttal" expert opinions. *Mitchell v. City of Mobile, Ala.*, No. CV 15-0360-CG-C, 2017 WL 3262130, at *2 (S.D. Ala. July 28, 2017), *aff'd sub nom. Mitchell v. City of Mobile*, 744 F. App'x 687 (11th Cir. 2018) (disallowing disclosure of expert two months after deadline because parties expended a great deal of time and effort and if allowed would require more discovery with likely significant additional expense due to Plaintiff's counsel's actions); *Argo Sys. FZE v. Liberty*

---

[15] Plaintiff has not produced any engagement agreement or invoices from Alexander or stated the date Alexander was retained or first contacted by Plaintiff's counsel.

*Ins. PTE, Ltd.*, No. CIV. A. 04-00321CG-B, 2005 WL 1355060, at *5 (S.D. Ala. June 7, 2005) (finding that the allowance of use of an untimely expert report "would, in effect, render such deadlines set in Rule 16 Scheduling Orders meaningless" resulting in prejudice because plaintiff would need to depose the new expert and potentially retain a rebuttal expert) (quoting *While v. Volvo Trucks of N.A., Inc.*, 211 F.R.D. 668, 669 (M.D. Ala. 2002)). Plaintiff can offer no reasonable excuse to justify the delinquent disclosure on an issue as critical as damages as part of its case in chief. Accordingly, any expert opinions and the report of J. Lester Alexander, III is due to be stricken and excluded.

**E.    Alternative relief requested if exclusion is not granted.**

If the Court determines that any of Alexander's report is truly rebuttal of Cummings' report, Defendants move the Court in the alternative to exclude all new opinions raised by Alexander which contradict or conflict with Babington's testimony and which do not directly reference Cummings' opinions. The Court should, at a minimum, strike numbered paragraphs 6-15 in Alexander's report, as the opinions and calculations stated in these paragraphs and the related appendices are new opinions and calculations which conflict with and that were not calculated by Babington or contained in the original damages calculations reviewed by Cummings. (Ex. A). Further, the Court should prohibit Plaintiff from relying on documents produced on November 15, 2023 with Plaintiff's delinquent rebuttal opinions, Bates labeled 68V 007794-68V 008425, in support of any damages calculation and any other document not produced to date related to Plaintiff's alleged damages claim.

In the alternative, and if the Court does not exclude Alexander's opinions, Defendants move that the Court award the reimbursement of attorneys' fees and expert fees and costs incurred by Defendants in connection with Plaintiff's abandoned damages calculations including: (a) the

expert witness fees of Defendants' expert, Stacy Cummings, related to the evaluation of Plaintiff's original calculations, proformas, supporting documentation and preparation of her expert report (costs which currently exceed $53,000 even prior to her deposition on November 16); (b) costs and fees associated with Cummings and Defense counsel's preparation for the expert deposition of Cummings, (c) attorney's fees incurred and related to the analysis of Plaintiff's original damages calculations and proformas that Plaintiff now attempts to discard in favor of new opinions and calculations; and (d) the attorney's fees incurred and related to the deposition of Hansen Babington. In the event that the Court declines to exclude Alexander's untimely report and opinions and new documents upon which he relies, Defendants further move for (e) leave to submit a supplemental expert report of Stacy Cummings to address Alexander's report within forty-five (45) days of the Court's ruling, and costs, attorney's fees and expert fees associated with the preparation of a supplemental report; (f) leave to take the deposition of Alexander within thirty (30) days of the Court's ruling on this motion and costs and attorney's fees associated with the deposition; (g) leave to disclose a new rebuttal expert within sixty (60) days to rebut Alexander's opinions regarding mitigation and agricultural value of the properties, and the costs, attorney's fees, and expert fees associated with engagement of the new expert caused by Plaintiff's untimely disclosure; (h) attorney's fees and costs associated with retaking the 30(b)(6) deposition of the corporate representative(s) designated to testify about new damages claim and additional 30(b)(6) topics necessitated by the Alexander report and newly produced documents including, but not limited to, 68 Ventures' past and subsequent record of profitability and access to capital and

contractors; (i) and relief in the Scheduling Order for additional time to conduct additional discovery needed based on the new damages theory and documents.[16]

### F.    Conclusion.

Bearing the burden of proof on damages, Plaintiff chose not to disclose an expert witness when its affirmative expert disclosures were due on August 15, 2023. Plaintiff made a strategic, deliberate decision to attempt to support its damages claim with the "fact testimony" of Hansen Babington, not expert testimony. After Plaintiff put forth its damages model and Babington testified extensively about the model and damages figures and after Defendants' expert witness discredited Babington's methodology and calculations as unsupported and unreliable, Plaintiff came up with an entirely new model and at the last possible minute produced an expert report along with hundreds of new documents that neither Babington nor Defendants' expert relied on and that were due with initial disclosures, were requested repeatedly throughout discovery, and unquestionably were due prior the September 29 deposition of Babington, designated under Rule 30(b)(6) to testify regarding Plaintiff's damages. Alexander's expert opinions contradict Babington's opinions and go to Plaintiff's case in chief – entitlement to damages – and are not proper rebuttal. There is no substantial justification for Plaintiff's failure to disclose Alexander in its case and chief or for the late production of documents. For all of these reasons, the Defendants respectfully move the Court to strike the untimely expert opinions and report of J. Lester Alexander, III. Defendants also respectfully move for costs and fees as set forth herein and for any other relief the Court deems just.

---

[16] If costs and fees are awarded as relief, Defendants will submit evidence of those costs and fees with the Court's permission or direction.

Respectfully submitted,

/s/ Christopher S. Williams
LISA DARNLEY COOPER
CHRISTOPHER S. WILLIAMS
EMILY B. VAN HANEGHAN
*Counsel for Defendants*

HAND ARENDALL HARRISON SALE LLC
P.O. Box 1499
Fairhope, AL 36533
(251) 990-0079
cwilliams@handfirm.com

HAND ARENDALL HARRISON SALE LLC
P.O. Box 123
Mobile, Alabama 36601
(251) 432-5511
lcooper@handfirm.com
evanhaneghan@handfirm.com

## CERTIFICATE OF SERVICE

I do hereby certify that, on November 28, 2023, I filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Greg A. Bordenkircher
68 Ventures, LLC
68V BTR Holdings, LLC
707 Belrose Ave.
Daphne, AL 36526
greg@68ventures.com
*General Counsel*

Ty R. Bordenkircher
ROSE LAW FIRM
a Professional Association
120 East Fourth Street
Little Rock, Arkansas 72201
tbordenkircher@roselawfirm.com
*Counsel for 68V BTR Holdings, LLC*

/s/ Christopher S. Williams

31