## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| 68V BTR HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 22-0430-WS-B |
| | ) | |
| CITY OF FAIRHOPE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on the motion of the entity defendants ("the defendants") for summary judgment, (Doc. 134),[1] and on the plaintiff's motion for partial summary judgment. (Doc. 125). The parties have filed briefs and other materials in support of their respective positions, (Docs. 126-28, 131, 134, 137-38, 141-42, 148),[2] and the motions are ripe for resolution. After careful consideration, the Court concludes that the plaintiff's motion is due to be denied in part, that the defendants' motion is due to be granted in part, and that the remainder of this action is due to be dismissed pursuant to 28 U.S.C. § 1367(c)(1) and (3).

## BACKGROUND

Familiarity with the pleadings, and with other motions and orders, is assumed. According to the second amended complaint, (Doc. 95), the plaintiff is the owner of two parcels of property ("Skyline" and "Gables," collectively, "the Properties"). The entity

---

[1] The individual defendants' embedded motion for summary judgment has been resolved by separate order.

[2] The defendants properly object to the plaintiff's amended reply brief, (Docs. 143, 144-1), as untimely and unauthorized. (Doc. 147). The amended reply is thus **stricken**. This ruling has no impact on the resolution of the parties' motions.

defendants are the City of Fairhope ("the City") and the City of Fairhope Planning Commission ("the Commission").  The individual defendants ("the Commissioners") are members of the Commission.  The Properties lie outside the corporate limits of the City but within its planning jurisdiction.  The plaintiff sought approval from the Commission for development of the Properties for multi-occupancy housing ("the Projects"), but the Commission, by vote of the Commissioners, denied the plaintiff's applications.

The second amended complaint presents three claims against the City and the Commission.  Count I seeks "invalidation of defendants' arbitrary and capricious application denials."  Count II asserts a "denial of due process," and Count III claims negligence in various respects.  Counts I and III rest entirely on state law,[3] while Count II invokes both state and federal constitutional provisions.  (Doc. 95 at 23-31).  Counts IV and V are directed solely against the Commissioners.[4]

The entity defendants seek summary judgment as to Counts I, II, and III.  The plaintiff seeks summary judgment as to Counts I and II only.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able

---

[3] The Court previously granted the defendants' motion to dismiss any federal aspect of Count I.  (Doc. 19 at 9, 27).

[4] The style of Count V asserts a civil conspiracy "by Commission Members and the Commission," but the *ad damnum* clause seeks judgment only "against the Commission Members."  (Doc. 95 at 35, 37).

to meet that burden." *Id*.  "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116.  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the [non-movant's] version of the facts (to the extent supported by the

record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014).   Moreover, "a passing reference to an issue in a brief [i]s insufficient to properly raise that issue."  *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005).  The Court accordingly limits its review to those arguments the parties have expressly and adequately advanced.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to *particular parts* of materials in the record," and "[t]he Court need consider only the cited materials …."  Fed. R. Civ. P. 56(c)(1)(A), (c)(3) (emphasis added).  By local rule, "[t]he movant must file a brief that includes … all facts relied upon, each supported by a *specific, pinpoint citation* to the record …."  Civil Local Rule 56(a)(1) (emphasis added), and the Court need not consider factual assertions unsupported by such pinpoint citations.  *Jones v. Unity Behavioral Health, LLC*, 2021 WL 5495578 at *1, *4 (11th Cir. 2021).  As this Court has noted, "[t]he Court will not scour an entire deposition transcript to seek out evidentiary support for defendant's statement."  *Ivy Marine Consulting, LLC v. Monarch Energy Partners, Inc.*, 2019 WL 1173356 at *4 (S.D. Ala. 2019); *accord Foster v. Bridgestone Americas Tire Operations, LLC*, 2013 WL 1363962 at *5 n.12 (S.D. Ala. 2013).

## I. Substantive Due Process.[5]

As numbered by the second amended complaint, Count II advances five theories in support of a substantive due process claim. "[F]irst," that the plaintiff's protected property rights were infringed upon by the enactment of Ala. Code §§ 11-52-2 and -30 "and/or other state statutes" applicable to the defendants' dealings with subdivision and multi-occupancy development approval.[6]  These statutes vest the defendants with "unchecked power to make arbitrary, capricious, and irrational decisions," because they do not "provide appropriate limitations" on the exercise of land use regulatory power or "provide any manageable criteria or reasoned standards" to guide decision-making. (Doc. 95 at 25-26).

"Second," Count II challenges certain of the City's subdivision regulations ("the Regulations") as impermissibly vague, because they "fail to provide clearly drawn standards which can be uniformly applied and which give reasonable notice to applicants of requirements with which they must comply."  In particular, the Regulations require, "at a minimum," compliance with certain listed requirements and require compliance with thirteen listed goals.  (Doc. 95 at 26-27).

"Third," Count II alleges that certain Regulations "vest the Commission with improper and excessive authority to make decisions regarding property rights," are "arbitrary, capricious, and unreasonable and not fairly debatable," and are "not of general application and fail to set forth sufficient standards to give applicants notice of what is required of them."  (Doc. 95 at 27).

Fourth, Count II alleges that the defendants acted arbitrarily, capriciously, and irrationally in denying the plaintiff's applications and in their pre-denial conduct.  These

---

[5] Count II does not by its terms exclude a procedural due process claim, but the plaintiff has foresworn any such claim.  "68V BTR's due process claim is a substantive due process claim only."  (Doc. 17 at 7).

[6] Count II mentions Section 2 of Act 2021-297, but that provision is now incorporated within Section 11-2-30.  The plaintiff's discovery responses confirm that, despite the "and/or other state statutes" language, only Sections 11-52-2 and -30 are at issue.  (Doc. 131-56 at 11-12).

actions include:  creating new requirements for the plaintiff to meet; denying the plaintiff's applications for no legitimate reason; deciding to deny the applications before conducting a hearing on them; disregarding the surrounding facts and settled controlling principles; targeting the plaintiff to prevent it from developing a multi-occupancy subdivision; using the plaintiff's pipeline of other existing and future projects as a weapon; failing to provide clear and definite standards for development; changing the criteria for approval; misleading the plaintiff as to the criteria for approval; not seriously considering the Projects on their merits; denying the plaintiff's applications for pretextual reasons; failing to give specific reasons for the denials; failing to show how the applications did not meet the Regulations' requirements; providing vague reasons for disapproving the applications; and failing to provide the plaintiff a reasonable opportunity for a hearing.  (Doc. 95 at 26-29).

Finally, Count II alleges that the defendants failed to provide the plaintiff due process by denying the applications even though the plaintiff met all requirements for approval.  (Doc. 95 at 28).

Count II alleges that the plaintiff's due process rights were violated under both federal and state law.  (Doc. 95 at 25, 29).  The Court focuses on the federal claim.

"[S]ubstantive due process has two strands – one that protects against deprivation of fundamental rights and one that protects against arbitrary legislation."  *Hillcrest Property, LLP v. Pasco County*, 915 F.3d 1292, 1297 (11th Cir. 2019).  "[F]undamental rights in the constitutional sense do not include state-created rights," and "land use rights, as property rights generally, are state-created rights."  *Id*. at 1297-98 (internal quotes omitted).  The plaintiff concedes that the "fundamental rights" strand of substantive due process "cannot form the basis" of its claim.  (Doc. 17 at 8).

### A.  Executive Action.

"Where an individual's state-created rights are infringed by legislative act, the substantive component of the Due Process Clause generally protects him from arbitrary and irrational action by the government."  *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir.

2003) (internal quotes omitted).  The flip side of this principle is that "non-legislative, or executive, deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrarily and irrationally." *Id.* (internal quotes omitted).  "A land-use decision is classic executive, rather than legislative, action …." *Hillcrest Property*, 915 F.3d at 1293; *id.* at 1302 (application of a land-use ordinance to a property owner is executive); *accord Lewis*, 409 F.3d at 1272 ("[A] county commissioner's decision to deny the application of three landowners to re-zone their property … is executive.").  The plaintiff's fourth due process challenge, which is based on the allegedly arbitrary and irrational denial of the plaintiff's applications, alleges only an executive deprivation of land-use rights, which cannot support a federal substantive due process claim.

### B.  Legislative Action.

The plaintiff's first due process challenge is directed at a legislative act and so is potentially amenable to a substantive due process attack.  However, "[w]hen a law does not infringe on a fundamental right or discriminate on account of a suspect classification, but instead is a general economic regulation, we review it only for a rational basis." *Georgia Electronic Life Safety & System Association, Inc. v. City of Sandy Springs*, 965 F.3d 1270, 1275 (11th Cir. 2020).  "This standard is highly deferential and we hold legislative acts unconstitutional under a rational basis standard in only the most exceptional of circumstances." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1281 (11th Cir. 2014) (internal quotes omitted).

The first question under rational basis review is "whether the government has the power or authority to regulate the particular area in question, and whether the proposed regulation has a legitimate governmental purpose." *Georgia Electronic*, 965 F.3d at 1275 (internal quotes omitted).  If so, "[w]e then ask if there is any conceivable basis for the legislature to believe that the means they have selected will tend to accomplish the desired end, and if the method chosen to accomplish the stated goal bears a rational relation to the ultimate objective." *Id.* (emphasis and internal quotes omitted).  "Any

challenge to the [law] must negate every conceivable basis that might support it, even if that basis has no foundation in the record." *Id*. at 1276 (internal quotes omitted). "A law need not be sensible to pass rational basis review; rather, it may be based on rational speculation unsupported by evidence or empirical data," and "even if it seems unwise … or if the rationale for it seems tenuous." *Cook v. Bennett*, 792 F.3d 1294, 1300 (11th Cir. 2015) (internal quotes omitted).

Section 11-52-2 merely authorizes a municipality to create a planning commission. Section 11-52-30 addresses the jurisdiction of a municipal planning commission with respect to the regulation of subdivisions beyond the corporate limits.

It cannot be seriously argued (and the plaintiff does not argue) that a municipality has no legitimate interest in having a planning commission. *See, e.g., Edelweiss Development Corp. v. County of Susquehanna*, 738 F. Supp. 879, 887 (M.D. Pa. 1988) (county and county planning commission "certainly have a legitimate interest in regulating land development"); *Guiliano v. Town of Edgartown*, 531 F. Supp. 1076, 1081-82 (D. Mass. 1982) (city had a "legitimate public purpose" in "monitoring' subdivision planning and growth and thereby ensure the adequate provision of municipal services and orderly development"); *Wills v. City of Memphis*, 2016 WL 1651878 at *7 (W.D. Tenn. 2016) (city and county had a "legitimate state interest of zoning and regulating neighborhood development").

It is equally clear (and again the plaintiff does not disagree) that a municipality has a legitimate interest in regulating the development of land in proximity to its borders. *See, e.g., Blackwell v. City of St. Charles*, 726 F. Supp. 256, 259 (E.D. Mo. 1989) (city had a "legitimate governmental interest … in promoting orderly development within its immediate planning area"); *Citizens for Annexation Reform v. Idaho*, 2004 WL 7338740 at *2 (D. Ida. 2004) (cities that annexed adjoining area "ha[d] a legitimate interest in promoting orderly development"). Indeed, the Supreme Court has ruled that Alabama's police jurisdiction laws, which extend the force of certain municipal regulations beyond the city's corporate boundaries, are supported by municipalities' legitimate interest in "some measure of control over activities carried on just beyond their 'city limit' signs."

*Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 73 (1978).[7]  Although not directly at issue, the Supreme Court identified Section 11-52-30 as a similar extension of municipal authority into unincorporated areas, *id*. at 62 n.3, one equally supported by a legitimate government interest.

The question becomes whether the Alabama Legislature, in authorizing the creation of municipal planning commissions and in granting them extra-territorial authority, had any conceivable basis to believe that doing so would, in some way and however imperfectly, further the legitimate government interest in regulating the development of land outside a city's corporate limits.  The question practically answers itself:  creating a planning commission with authority to regulate subdivision development beyond corporate boundaries obviously aids in regulating subdivision development beyond corporate boundaries.  The plaintiff, which offers not a word in defense of its claim under this theory, by its silence concedes the point.

### C.  Vagueness.

The plaintiff's second due process attack expressly challenges certain of the Regulations as unconstitutionally vague.  As construed by the defendants, (Doc. 134 at 45, 51-52), Count II also raises an implicit void-for-vagueness challenge to Sections 11-52-2 and -30.[8]  The parties assume without discussion that a vagueness challenge is a

---

[7] *Holt Civic Club* involved an equal protection challenge, but the same "rational basis" analysis applies to both equal protection and substantive due process claims.  *Leib v. Hillsborough County Public Transportation Commission*, 558 F.3d 1301, 1308 (11th Cir. 2009).

[8] Count II alleges that these statutes furnish the defendants "unfettered and unchecked power to make arbitrary, capricious, and irrational decisions," because they do not provide "appropriate limitations …, manageable criteria or reasoned standards" to guide municipal action.  (Doc. 95 at 26).  *See Burns v. Town of Palm Beach*, 999 F.3d 1317, 1349 (11th Cir. 2021) ("A vague law can violate the due process clause if it … authorizes or even encourages arbitrary and discriminatory enforcement.").

substantive due process challenge (to which the plaintiff has expressly limited Count II). While the Court has its doubts,[9] for present purposes it indulges the parties' assumption.

"A civil statute is unconstitutionally vague only if it is so indefinite as really to be no rule or standard at all." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1349 (11th Cir. 2021) (internal quotes omitted); *accord Leib v. Hillsborough County Public Transportation Commission*, 558 F.3d 1301, 1310 (11th Cir. 2009). "If a law implicates no constitutionally protected conduct, a court should uphold a facial vagueness challenge if the enactment is impermissibly vague in all of its applications." *League of Women Voters Inc. v. Florida Secretary of State*, 66 F.4th 905, 946 (11th Cir. 2023) (en banc) (internal quotes omitted); *accord National Mining Association v. United Steel Workers*, 985 F.3d 1309, 1326 (11th Cir. 2021) ("[I]n th[e] regulatory context the void for vagueness doctrine applies … only if the challenged phrase is impermissibly vague in all of its applications.").[10] Sections 11-52-2 and -30 and the challenged Regulations are civil and regulatory rather than criminal, and the plaintiff identifies no constitutionally protected conduct that they implicate.

### 1. Statutes.

Section 11-52-2 is a plain vanilla statute that simply authorizes a municipality "to create by ordinance a planning commission with the powers and duties herein set forth." Unsurprisingly, the plaintiff in its briefing fails to identify a single instance of vagueness

---

[9] The Eleventh Circuit has treated substantive due process and void-for-vagueness as separate claims. *Leib*, 558 F.3d 1301 at 1307-08. Justice Thomas has noted that "our vagueness doctrine is distinct from substantive due process." *Johnson v. United States*, 576 U.S. 591, 613 (2015) (Thomas, J., concurring in the judgment). Justice Gorsuch has declared that "[v]agueness doctrine represents a procedural, not a substantive, demand." *Sessions v. Dimaya*, 584 U.S. 148, 191 (2018) (Gorsuch, J., concurring in part and concurring in the judgment).

[10] The Supreme Court has softened this standard in the criminal context. *See Johnson*, 576 U.S. at 602-03 (rejecting "any suggestion that the existence of some obviously [proscribed conduct] establishes [a statute's] constitutionality"). Because *League of Women Voters* and *National Mining Association* both post-date *Johnson*, the Court must conclude that the "all applications" standard survives in the non-criminal context.

in this straightforward provision.  To the uncertain extent the plaintiff intends to suggest that the statute is vague because it does not spell out a planning commission's "powers and duties," it need not do so, because they are addressed in other sections of Chapter 52, which provisions the plaintiff has not challenged.

Section 11-52-30 is longer but similarly straightforward, with its primary subject matter being the extension of a planning commission's jurisdiction beyond the municipality's corporate limits.  Again, the plaintiff in its briefing fails to identify any vagueness within this statute, and it is precluded by its own pleading and interrogatory responses from asserting vagueness in any other section of Chapter 52.  Whatever uncertainty there may (or may not) be in determining from Section 11-52-30 the precise boundary of a planning commission's jurisdiction in a particular instance, the statute is far too precise to admit of a vagueness challenge.

The plaintiff's failure to identify any word, phrase, clause or other portion of Section 11-52-2 or -30 that it considers to be vague is sufficient grounds to reject any void-for-vagueness claim.  *See, e.g., Leib*, 558 F.3d at 1308 (the plaintiff's "failure to articulate the basis of his arbitrary and capricious due process claim is a sufficient ground for its dismissal").  In any event, nothing in those statutes remotely approaches the stringent standard applicable to such a claim.

## 2. Regulations.

Article IV.H of the Regulations addresses multiple occupancy projects.  The applicant is to "submit … a preliminary plat and plans … which must, at a minimum, comply with the following [eight listed] requirements."  (Doc. 9-1 at 35).  One of these listed requirements is that "[e]ach preliminary plat and plans shall otherwise conform to the terms of Article I, Section A hereof."  (*Id*. at 36).  Article I of the Regulations is entitled, "General Provisions," and Section A is entitled, "Purpose."  (*Id*. at 6).  Section A states that "[t]he purpose of these regulations is to promote the health, safety, morals and general welfare" and that "[t]hese regulations shall be implemented to achieve the following goals and purposes," after which thirteen numbered goals and purposes are

listed.  (*Id*.).  Count II alleges that the "at a minimum" language and the "incorporation" of "the thirteen goals" renders the Regulations "impermissibly vague."  (Doc. 95 at 26).  The Court considers these allegations in turn.

The plaintiff apparently assumes that the "at a minimum" phrase "opens the door to the imposition of additional, unidentified, unpredictable, idiosyncratic demands." (Doc. 19 at 15).[11]  On its first encounter with Article IV.H.2, viewed in isolation and without assistance from the parties, the Court allowed that this was a "potentia[l]" implication of the phrase's employment.  (*Id*.).  However, the Court can no longer read the provision in this fashion.

Article I.C, a general provision that applies globally, states that a landowner wishing to subdivide must submit a plat "which shall conform to the minimum requirements set forth in these regulations."  (Doc. 9-1 at 6).  Article IV.H.2 then sets forth, in its eight sub-paragraphs, the "requirements" applicable to multiple occupancy projects.  (*Id*. at 35).  The "at a minimum" language does not reserve to the Commission the right to demand more; instead, it simply identifies the eight listed requirements as the "minimum requirements" referenced in Article I.C, while preserving to the applicant the ability to present material exceeding those requirements should it so choose.  *See Somes v. United Airlines, Inc*., 33 F. Supp. 2d 78, 87 (D. Mass. 1989) ("Minimum requirements, by definition, permit and authorize the party to whom they apply to exceed the minimum.").  Even were the plaintiff's contrary reading also reasonable, the Court would reject it under the principle of constitutional avoidance.[12]

---

[11] Were this a correct reading, it might trigger the "notice" concern of the vagueness doctrine.  "The vagueness doctrine reflects two connected but discrete concerns:  notice and arbitrary enforcement.  …. Notice means that a law does not give the person of ordinary intelligence a reasonable opportunity to know what is prohibited [or required], so that he may act accordingly."  *United States v. Matchett*, 837 F.3d 1118, 1122 (11th Cir. 2016) (internal quotes omitted).

[12] "[W]hen deciding between two plausible statutory constructions, courts should adopt the construction that avoids constitutional problems."  *Frazier ex rel. Frazier v. Winn*, 535 F.3d 1279, 1282 (11th Cir. 2008).

The plaintiff fails to identify any respect in which Article IV.H.2's incorporation of the thirteen goals of Article I.A generates an unconstitutional vagueness, and it is not the Court's responsibility to develop theories and arguments on its behalf.   Moreover, the Eleventh Circuit has rejected the contention that subdivision regulations requiring a planning commission to consider "the objectives and purpose of the master plan" are void for vagueness under the governing "all applications" standard.  *Seventh Street, LLC v. Baldwin County Planning and Zoning Commission*, 172 Fed. Appx. 918, 920, 922-23 (11th Cir. 2006).

The plaintiff devotes not a single word of its 200-plus pages of briefing to the vagueness claims it actually pleaded.  Instead, the plaintiff, without apology or explanation, pivots to a trio of vagueness challenges it has failed to plead.  (Doc. 126 at 80-88; Doc. 141 at 28-37).[13]  The defendants understandably object.  (Doc. 134 at 45 & n.30).  "In this circuit, a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment."  *Miccosukee Tribe of Indians v. United States*, 716 F.3d 535, 559 (11th Cir. 2013).  Because the plaintiff never amended its complaint to inject these additional vagueness challenges, they are not a part of this lawsuit.

_____

[13] The second amended complaint explicitly alleges that the "Subdivision Regulations" are impermissibly vague "since" they employ the "at a minimum" language and incorporate the thirteen goals.  (Doc. 95 at 26).  The pleading then repeats that these are the provisions that fail to give applicants reasonable notice of what is required.  (*Id*. at 26-27).  These allegations unequivocally limit the plaintiff's vagueness challenge to these two provisions.  While the next paragraph of the second amended complaint continues that the "Subdivision Regulations are impermissibly vague," (*id*. at 27), it is plain from its context that this statement does not expand the charge of vagueness to the entire 121-page document but rather employs "Subdivision Regulations" as a shorthand for the two challenged elements identified in the preceding paragraph.  (This is no different than a complaint identifying two contractual provisions violated by the defendant and then asserting a claim for breach of contract; alleging generally that the defendant breached "the contract" does not place in issue as a basis for relief any contractual provision beyond the two identified in the pleading.)

One of the plaintiff's three improper vagueness challenges is to the "health, safety, morals and general welfare" language of Article I.A.  This language does not appear in the "thirteen goals" of that section and so is not placed in issue by the second amended complaint.

**D.  Catch-All.**

The plaintiff's third due process challenge is an amalgam of its specific challenges based on legislative act, executive act, and vagueness.  (Doc. 95 at 27).  It fails for reasons already set forth.  To the uncertain extent these allegations question the existence of a rational basis for the two challenged Regulations,[14] it fails as well.  The defendants plainly had authority to regulate subdivisions within the City's planning jurisdiction, since Section 11-52-30 bestowed it.  As noted in Part III.A, such regulation serves a legitimate governmental purpose, and both establishing minimum requirements for approval of multiple occupancy projects, and identifying goals of the regulatory regime with which to comply, obviously bear a rational relation to that purpose.[15]  Once again, the plaintiffs offers no argument to the contrary.

**E.  Administrative Duty.**

Count II alleges that the defendants failed to provide the plaintiff due process "by denying the applications even though [the plaintiff] met all requirements for approval." (Doc. 95 at 20).  The plaintiff describes this challenge as based on violation of an "administrative duty," made actionable by *Southern Cooperative Development Fund v. Driggers*, 696 F.2d 1347 (11th Cir. 1983).  (Doc. 125 at 2).

In *Driggers*, the plaintiffs filed an application for subdivision approval, which the defendants rejected.  696 F.2d at 1348-50.  The plaintiffs sued, asserting that the defendants violated their state and federal due process rights.  *Id*. at 1348.  On the plaintiffs' motion for summary judgment, which the trial court granted, *id*. at 1350, the defendants did not controvert that the plaintiffs' plat complied with the governing subdivision regulations.  *Id*. at 1349.  The defendants nevertheless argued that:  (1) the regulations gave them discretion to deny applications meeting all regulatory

---

[14] The defendants assume such a challenge.  (Doc. 134 at 53-55).

[15] Most of the thirteen goals are drawn essentially verbatim from Section 11-52-31(a), as to which the plaintiff raises no challenge of any kind.

requirements; (2) a more restrictive development code, adopted a year after denial of the application and during the pendency of the litigation, governed; and (3) two state statutes authorized rejection of the application for reasons absent from the regulations. *Id*. at 1351. The panel, after extended discussion, rejected all these contentions. *Id*. at 1351-56. The Court then swiftly concluded:

> There was no genuine dispute of material fact regarding plaintiffs' compliance with the requirements of the Subdivision Regulations. Under these circumstances the defendants had an administrative duty to approve the plaintiffs' proposed plat and their refusal to do so was a violation of the plaintiffs' guarantee of due process. See *Washington ex rel. Seattle Trust Title Co.v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928), *Hornsby v. Allen*, 326 F.2d 605 (5 Cir. 1964). The entry of summary judgment for the plaintiffs was proper.
> AFFIRMED.

*Id*. at 1356.

The defendants first argue that *Driggers* involves only procedural due process, not substantive due process (to which the plaintiff has expressly limited Count II). (Doc. 138 at 82). While the question is not free of doubt, most cases have described *Driggers* as addressing substantive due process.[16] The Court assumes for argument that they are correct.

The defendants next argue that *Driggers* applies only when it is "undisputed" that the application satisfies the governing regulations and when the defendants relied on non-existent authority beyond the regulations to deny the application. Because the defendants dispute whether the plaintiff's applications satisfied the Regulations, and because they do

---

[16] These include at least the following: *Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988); *Littlefield v. City of Afton*, 785 F.2d 596, 606 (8th Cir. 1986); *Elsmere Park Club Limited Partnership v. Town of Elsmere*, 771 F. Supp. 646, 655 (D. Del. 1991); *Epstein v. Township of Whitehall*, 693 F. Supp. 309, 313 (E.D. Pa. 1988); *Marks v. City Council of the City of Chesapeake*, 723 F. Supp. 1155, 1160-61 (E.D. Va. 1988); *Parker v. Leon County*, 1992 WL 209626 at *6-7 (N.D. Ga. 1992); *DeMutis v. Borough of Phoenixville*, 1990 WL 96100 at *5 (E.D. Pa. 1990). The only case known to have described *Driggers* as involving only procedural due process is *Scoggins v. Moore*, 579 F. Supp. 1320, 1326 (N.D. Ga. 1984).

not admit to having considered anything outside the Regulations, they conclude that *Driggers* cannot apply. (Doc. 134 at 41-44).

The defendants' only support for this cramped reading of *Driggers* is its use of "[u]nder these circumstances" in its concluding paragraph. (Doc. 134 at 41). The only "circumstance" the Court identified was that there was no dispute regarding the plaintiff's compliance with the regulations. 696 F.2d at 1356. A factual dispute about such compliance would of course have been sufficient to defeat the *Driggers* plaintiffs' motion for summary judgment, but nothing in that decision remotely suggests that a defendant may receive summary judgment simply by offering contested evidence that the plaintiff did not satisfy the governing regulations.

The defendants' strongest argument is that, even if *Driggers* would support the plaintiff's position if it were still good law, it is not. *Driggers* is a panel opinion from 1983. In 1994, the Eleventh Circuit, sitting *en banc*, decided *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (*en banc*). The full Court announced:

> In short, areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution. … As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural – not substantive – due process are observed.

*Id*. at 1556 (internal quotes omitted).

*McKinney* involved the termination of a public employee. *Id*. at 1554-55. Accordingly, the Court "h[e]ld that, in non-legislative cases, only procedural due process claims are available to pretextually terminated employees." *Id*. at 1560. "Thus, we conclude that our prior decisions, which granted pretextually terminated employees section 1983 causes of action premised on substantive due process violations, are contrary to Supreme Court jurisprudence; to the extent they are contrary to the holding of this opinion, they are overruled." *Id*.

"[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court

sitting *en banc*." *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) (internal quotes omitted). The plaintiff is correct that *McKinney* did not expressly overrule *Driggers* (which case it did not acknowledge). The question is whether *McKinney* undermined *Driggers* to the point of abrogation.

"Even a later Supreme Court decision does not provide a basis for failing to follow prior precedent unless the Supreme Court decision is clearly on point. …. And even then, the Supreme Court decision must actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *Sabal Trail Transmission, LLC v. 18.72 Acres of Land*, 59 F.4th 1158, 1164 (11th Cir. 2023) (internal quotes omitted). According to the plaintiff, "a property owner's right to use his property [at issue here] and a person's right to employment [at issue in *McKinney*] are very different rights," making *McKinney* "not clearly on point" and "not clearly inconsistent" with *Driggers*. (Doc. 141 at 22).

It may be conceded that there are differences between land use rights and employment rights (although the plaintiff identifies none), but they are exactly the same in the only way that matters for substantive due process purposes: both are rights "created only by state law." *McKinney*, 20 F.3d at 1556. The facts of *McKinney* may have been limited to employment, but its holding is that any state-created right, absent a legislative act challenge, is "not subject to substantive due process protection under the Due Process Clause." *Id*.

The Eleventh Circuit has been emphatic that, ever since *McKinney*, an executive denial of a land use request as a matter of law cannot support a substantive due process claim:

> The question before us is whether a litigant in this Circuit has a substantive-due-process claim under the Due Process Clause of the Fourteenth Amendment when the alleged conduct is the unlawful application of a land-use ordinance. The answer to that question is a resounding "no" – an answer that this Court delivered in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), 24 years ago and has reaffirmed ever since. We held in *McKinney* that executive action never gives rise to a substantive-due-process claim unless it infringes on a fundamental right. A land-use

decision is classic executive, rather than legislative, action ....

*Hillcrest Property,* 915 F.3d at 1293; *accord Greenbriar Village, L.L.C. v. Mountain Brook*, 345 F.3d 1258, 1263 (11th Cir. 2003).

In sum, *Driggers* is incompatible with *McKinney*.  *Driggers* therefore has been abrogated and cannot support the plaintiff's substantive due process claim.[17]

## II. Supplemental Jurisdiction.

In general, "[i]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  The Court's original jurisdiction is based exclusively on federal question jurisdiction under 28 U.S.C. § 1331.  As discussed in Part I, the final federal claim asserted in this lawsuit is due to be dismissed with prejudice.

"The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Because it is dismissing the final claim over which it has original jurisdiction, the Court has discretion to dismiss the remaining state claims under Section 1367(c).

Section 1367 became law in 1990.  Before then, such questions were addressed under the judicially developed doctrine of pendent jurisdiction, and Section 1367

---

[17]  As an "alternative" to *Driggers*, the plaintiff suggests that it can pursue a federal substantive due process claim on the theory that the defendants deprived it of a property interest "'for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis.'"  (Doc. 126 at 80 (quoting *Spence v. Zimmerman*, 873 F.3d 256, 258 (11th Cir. 1989))).  There is no alternative:  as discussed in text, *McKinney* eliminates any substantive due process claim for executive deprivations of state-created rights, including land use rights.  *McKinney* itself expressly overruled cases employing the *Spence* standard in the employment context.  20 F.3d at 1558-59, 1560; *see also Greenbriar Village*, 345 F.3d at 1263 ("According to *McKinney*, non-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrar[il]y and irrationally.").

"codifies these principles." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997). In particular, the discretion imparted by Section 1367(c)(3) is to be exercised "in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id*. (internal quotes omitted); *accord Cook ex rel. Estate of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1123 (11th Cir. 2005).

"We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Insurance Co*., 370 F.3d 1086, 1089 (11th Cir. 2004). This preference exists because, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The preference for declining supplemental jurisdiction is particularly strong when the federal claims "have dropped out of the lawsuit in its early stages." *Cohill*, 484 U.S. at 350. However, the preference also applies when the federal claims are removed, as here, on motion for summary judgment. *See, e.g., Harris-Billups ex rel. Harris v. Anderson*, 61 F.4th 1298, 1305-06 (11th Cir. 2023); *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021); *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005); *Murphy v. Florida Keys Electric Cooperative Association*, 329 F.3d 1311, 1320 (11th Cir. 2003); *Graham v. State Farm Mutual Insurance Co*., 193 F.3d 1274, 1282 (11th Cir. 1999).

Impacts on judicial economy are measured in order to "support the conservation of judicial energy and avoid multiplicity in litigation" or "substantial duplication of effort." *Parker v. Scrap Metal Processors, Inc*., 468 F.3d 733, 746 (11th Cir. 2006). "Evaluating considerations of judicial efficiency and duplication of judicial effort is not just a matter of toting up months or motions or the page counts of judicial orders." *Ameritox, Ltd. v. Millenium Laboratories, Inc*., 803 F.3d 518, 539 (11th Cir. 2015) (internal quotes

omitted).  Based on these authorities and the principles underlying them, the length of time a case rested in federal court before dismissal is irrelevant, as is the amount of discovery conducted there.  This is so because neither metric reflects an investment of judicial resources – much less an accumulation of case-specific judicial expertise – that would require duplication in state court.

Were the plaintiff to refile its action in state court,[18] the defendants presumably would persuade that court to limit the plaintiff's claims to those non-dismissed claims expressed in the second amended complaint; to preclude further discovery; and to resolve dispositive motions based on the exhaustive briefing the parties have presented in this forum.  Most of the parties' 400+ pages of such briefing is addressed to the remaining state claims and has not been scrutinized by the Court, so the Court has no comparative advantage in evaluating those claims.[19]

The parties and the Properties are all present in Baldwin County, where any state action would have to be filed.  Litigation in that forum therefore cannot be meaningfully less convenient than litigation here in Mobile County.

 "Needless decisions of state law should be avoided as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Comity especially favors a state forum when "the state claim is novel or particularly complex such that an accurate definitive interpretation of state law is necessary."  *L.A. Draper & Son v. Wheelabrator-Frye, Inc*., 735 F.2d 414, 431 (11th Cir. 1984); *accord* 28 U.S.C. § 1367(c)(1).  The remaining state claims raise at least one important, unresolved issue of state law that should be resolved by the state judiciary.  The defendants raise the critical threshold issue of whether Alabama law permits the plaintiff to pursue its state claims via a federal action for declaratory judgment and damages, as it has chosen, or only by means

---

[18] Section 1367(d) tolls the state statute of limitations for 30 days after dismissal.

[19] Nor has the Court reviewed the parties' pending expert motions, (Docs. 130, 133), which are irrelevant to their motions for summary judgment.

of a state mandamus petition, which (the defendants say) it has irretrievably foregone. (Doc. 138 at 46-47). The parties' briefing reveals no clear answer (or even solid clues to an answer), and it would be reckless of the Court both to hazard a guess on this gateway issue and, depending on its guess, to proceed (perhaps without legal authority) to the merits of the parties' hydra-headed substantive and evidentiary arguments regarding the state claims.

In short, the Court concludes that its discretion under Section 1367(c) should be exercised against retention of the plaintiff's undismissed state claims.

## CONCLUSION

For reasons set forth above, the plaintiff's motion for summary judgment on its federal substantive due process claim is **denied**, and the defendants' motion for summary judgment on the federal substantive due process claim is **granted**. That claim is **dismissed with prejudice**. Judgment shall be entered accordingly by separate order.

The remainder of this action, consisting of Counts I and III and the state substantive due process aspect of Count II, is **dismissed without prejudice** pursuant to Section 1367(c)(1) and (3).

DONE and ORDERED this 18th day of June, 2024.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE