IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| 68V BTR HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 22-0430-WS-B |
| | ) |
| CITY OF FAIRHOPE, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion for entitlement to attorney's fees and related nontaxable expenses.  (Doc. 154).  The plaintiff has filed a response and the defendants a reply, (Docs. 160, 163), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.


## BACKGROUND

Familiarity with the pleadings, and with other motions, orders, and activity in the file, is assumed.  The plaintiff is the owner of two parcels of property ("the Properties") that it sought to develop.  The entity defendants are the City of Fairhope ("the City") and the City of Fairhope Planning Commission ("the Commission").  The individual defendants ("the Commissioners") are members of the Commission.  The plaintiff sought approval from the Commission for development of the Properties as multi-occupancy housing ("the Projects"), but the Commission, by vote of the Commissioners, denied the plaintiff's applications.

The original complaint, (Doc. 1), named only the City and the Commission as defendants.  The complaint asserted five claims:  (1) "invalidation of defendants' arbitrary and capricious application denials" (hereinafter, "Count I"); (2) denial of due

process (hereinafter, "Count II"); (3) denial of equal protection; (4) equitable estoppel; and (5) misrepresentation.  (*Id*. at 15-26).  The defendants moved to dismiss the complaint *in toto*.  (Doc. 9).  After full briefing, the Court granted the motion as to the equal protection, equitable estoppel, and misrepresentation claims.  The Court also granted the motion as to the federal claim embedded within Count I.  The Court denied the motion as to Count II and as to any state claim embedded within Count I.  (Doc. 19 at 27).

The plaintiff subsequently sought leave to file a first amended complaint.  (Doc. 31).  After full briefing, the Court granted leave.  (Doc. 37).  The amended complaint, (Doc. 38), retained Counts I and II, while adding a new claim of negligence against the City and the Commission.  (*Id*. at 19-28).  Another count was directed against the Commissioners but contained language suggesting a misrepresentation claim might be asserted against the entity defendants.  (*Id*. at 28-30).  The entity defendants moved to dismiss almost all of the claims against them.  (Doc. 46).  After full briefing, the Court denied the motion except with respect to the possible misrepresentation claim, which claim the plaintiff had disavowed.  (Doc. 69 at 2 n.1, 18).

The amended complaint also added the Commissioners as defendants and asserted claims against them for tortious interference with vested rights, tortious interference with business expectancies, and civil conspiracy.  (Doc. 38 at 28-32).  The Commissioners moved to dismiss all claims against them.  (Doc. 47).  After full briefing, the Court granted the motion with respect to the claim for tortious interference with business expectancies and as to six of the eight Commissioners with respect to the civil conspiracy claim, and it otherwise denied the motion.  (Doc. 70 at 21).

The plaintiff later sought leave to file a second amended complaint.  (Doc. 77).  After full briefing, the Court granted leave.  (Doc. 91 at 8).  The second amended complaint, (Doc. 95), did not change the causes of action asserted or add new ones.  The defendants moved for summary judgment on all five counts.  (Doc. 134).  After full briefing, the Court granted the motion with respect to the federal aspect of Count II, the claim for tortious interference with vested rights, and the claim for civil conspiracy.

2

(Doc. 150 at 21; Doc. 149 at 20).  These rulings disposed of all claims against the Commissioners, and the Court entered final judgment in their favor pursuant to Rule 54(b).  (Doc. 151).  The Court's dismissal of the federal aspect of Count II eliminated the last remaining basis for federal jurisdiction, and the Court entered final judgment as to this claim, as well as previously dismissed claims against the entity defendants, pursuant to Rule 54(b).  (Doc. 152).  The Court also dismissed the plaintiff's remaining claims against the entity defendants (the state aspect of Count I, the state aspect of Count II, and the negligence claim) without prejudice pursuant to 28 U.S.C. § 1367(c)(1) and (3).  (Doc. 150 at 21).  The plaintiff timely refiled these dismissed claims in state court pursuant to Section 1367(d).  (Doc. 158-1 at 345-50).

The defendants seek almost $270,000 in attorney's fees.  (Doc. 154 at 17; Doc. 158 at 16).[1]  They identify four bases for such an award:  (a) 42 U.S.C. § 1988; (b) 28 U.S.C. § 1927; (c) the Court's inherent power; and (d) Rule 37.  (Doc. 154 at 1).  The plaintiff denies that the defendants are entitled to any fee recovery at all; in the alternative, it asserts that any amount awarded should be a small fraction of that requested.  (Doc. 160 at 1-2, 20).

## I.  Section 1988.

"In any action or proceeding to enforce [various federal laws], the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs …."  42 US.C. § 1988(b).

### A.  Prevailing Party.

The defendants obtained dismissal on the merits of every federal claim brought by the plaintiff.  These include:  (1) the federal aspect of Count I, (Doc. 19 at 8-9, 27); (2) the equal protection claim, (*id*. at 20-22, 27); the federal aspect of Count II, (Doc. 150 at

---

[1] This figure represents less than half the $620,665 in legal fees billed by defense counsel through the end of June 2024.  (Doc. 158-1 at 4).

21); and the federal aspect of the civil conspiracy claim.  (Doc. 149 at 7).  The plaintiff posits that the defendants "should not be considered prevailing parties when the federal action is considered with plaintiff's pending state court action," (Doc. 160 at 6, 9-10), but this proposition is contradicted by the very authority on which the plaintiff relies.

In *Head v. Medford*, 62 F.3d 351 (11th Cir. 1995), the trial court granted the defendant summary judgment on the plaintiff's federal claims but, declining to exercise supplemental jurisdiction over the state claims, dismissed them without prejudice pursuant to Section 1367(c).  *Id*. at 353.  The trial court without explanation denied both costs under Rule 54(d) and attorneys' fees under Section 1988.  *Id*. at 354.  The Eleventh Circuit ruled that, given the entry of judgment for the defendants on the federal claims, "[t]hat the district court declined to exercise its supplemental jurisdiction under 28 U.S.C. § 1367 and dismissed all of the plaintiff's remaining state law claims, does not impair the fact that, as far as the federal case was concerned, defendants prevailed."  *Id*. at 355.  The Court further ruled that the plaintiff's federal claim was frivolous and declared that the defendants "are entitled to attorneys' fees in accordance with 42 U.S.C. § 1988" absent special circumstances justifying denial of an award.  *Id*. at 356.  In light of *Head*, the defendants are prevailing parties for purposes of Section 1988.[2]

**B.  Frivolousness.**

"[A] defendant may recover attorney's fees [under Section 1988] only if the District Court finds that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1297 (11th Cir. 2021) (internal quotes omitted).[3]  "In

---

[2] The plaintiff relies heavily on cases ruling that a defendant is not a prevailing party for purposes of a fee award if the federal claims are dismissed for want of subject matter jurisdiction.  (Doc. 160 at 7-8 & 8 n.2).  Because the plaintiff's claims were rejected on their merits and not for lack of jurisdiction, these cases are irrelevant to the prevailing-party inquiry.

[3] The defendants note in passing that subjective bad faith is a separate basis for a fee award under Section 1988, (Doc. 154 at 8), but its actual argument is confined to frivolousness.

determining whether a suit is frivolous, a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Id*. at 1302 (internal quotes omitted). "Even if a plaintiff's allegations are ultimately legally insufficient to require a trial, that alone is not enough to render the plaintiff's cause of action groundless or without foundation." *Id*. (internal quotes omitted).

The Eleventh Circuit has identified four factors "relevant to the determination of frivolity," which "are general guidelines only, not hard and fast rules," and of which the fourth is "particularly important." *Beach Blitz*, 13 F.4th at 1302 (internal quotes omitted). They are:  (1) "whether the plaintiff established a prima facie case"; (2) "whether the defendant offered to settle"; (3) "whether the trial court dismissed the case prior to trial or had a full-blown trial on the merits"; and (4) whether "the claims are meritorious enough to receive careful attention and review." *Id*. (internal quotes omitted).

There was no federal claim as to which the plaintiff established a *prima facie* case, and all federal claims were dismissed prior to trial – two on motion to dismiss and the rest on motion for summary judgment.  And while the defendants offered a seven-figure settlement, the offer contemplated transfer of the Properties (which the plaintiff purchased for approximately $1.7 million) to one or more of the defendants, (Doc. 154 at 11; Doc. 160 at 18),[4] making the proposal appear more as a trade than a capitulation. Moreover, the proposal would have resolved all claims, not just the federal ones.

The Court turns to the fourth and "particularly important" consideration. Although the plaintiff enters this stage of the inquiry well behind, if its federal claims

---

(*Id*. at 6-11).  As the parties have been recently reminded, (Doc. 150 at 4), "a passing reference to an issue in a brief [i]s insufficient to properly raise that issue." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005).  The defendants' passing reference to bad faith is insufficient to raise any such issue under Section 1988.

[4] The plaintiff suggests the defendants at one point "indicated potential willingness to negotiate a settlement" at a higher amount.  (Doc. 160 at 18).  Because the defendants call this a "grav[e] mischaracteri[zation]," (Doc. 163 at 6), and because the plaintiff offers no evidence to support its assertion, the Court ignores it.

were "meritorious enough to receive careful attention and review," they "should not be considered groundless or without foundation for the purpose of an award of fees in favor of the defendants," not "even when the other guideposts poin[t] toward finding the claim frivolous." *Beach Blitz*, 13 F.4th at 1302.

As noted, the plaintiff raised four federal claims. "A defendant need not show that every claim in a complaint is frivolous to qualify for fees." *Fox v. Vice*, 563 U.S. 826, 835 (2011). While a defendant "is not entitled to any fees arising from these non-frivolous charges [*i.e.*, "claims"], … the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed." *Id.* at 834. The Court therefore considers the plaintiff's federal claims individually.

### 1. Count I.

The defendants fail to address whether the federal aspect of Count I was frivolous. (Doc. 154 at 6-11).[5] The Court declines to develop arguments on the defendants' behalf, especially as "the fee applicant bears the burden of establishing entitlement to an award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). For want of a showing of frivolousness, the defendants may not recover fees associated with their defense of this claim.

### 2. Due process.

Count II consisted of a substantive due process claim brought under four theories: executive action; legislative action; vagueness; and administrative duty. (Doc. 150 at 5-18). The defendants treat each of these theories as its own "claim" for purposes of applying *Fox*. (Doc. 154 at 9-11). Because the plaintiff voices no disagreement, the Court accepts for purposes of the instant motion that the defendants may recover fees associated with any theory determined to be frivolous even if other theories advanced in support of Count II were not frivolous.

---

[5] Indeed, they do not recognize Count I as containing any federal claim, (Doc. 163 at 3, 9), even though they addressed such a claim in their briefing on motion to dismiss. (Doc. 18 at 9-11).

### i. Executive action.

As set forth in previous orders, Eleventh Circuit law pellucidly precludes a federal substantive due process challenge to executive action and explicitly characterizes the application of land-use regulations to a particular parcel as executive action. (Doc. 19 at 11-12; Doc. 150 at 6-7). The plaintiff offered no defense of this theory on motion for summary judgment[6] and offers none now. It was squarely foreclosed by binding precedent presented by the defendants, which the plaintiff made no effort to challenge, revisit, distinguish, or otherwise address. Nothing about this theory warranted careful attention and review.

### ii. Legislative action.

Unlike executive action, legislative action can form the basis of a successful substantive due process challenge. Such a challenge is subject only to a rational basis review, and the plaintiff – which did not address the theory on motion for summary judgment – failed to meet this bar. (Doc. 150 at 7-9). However, the defendants struggled to articulate how the challenged statutes survived such review, and all but one of their cited cases were decided under state rather than federal law, (Doc. 134 at 50-51), necessitating supplemental analysis and authority by the Court. Under these circumstances, the Court concludes that the plaintiff's theory warranted careful attention and review.

---

[6] The defendants believe that a plaintiff's failure, on motion for summary judgment, to defend a claim (or a theory advanced in support of a claim) is dispositive of frivolousness. (Doc. 154 at 9). The Court does not read *Turner v. Sungard Business Systems, Inc*., 91 F.3d 1418 (11th Cir. 1996), on which the defendants rely, for so sweeping a proposition; in *Turner*, the plaintiff "acknowledged" that the reason he failed to oppose the defendant's motion for summary judgment was "precisely because [he] had no basis for doing so." *Id*. at 1423. The plaintiff here has made no such admission. Its failure to oppose dismissal of this theory is nevertheless consistent with, and suggestive of, frivolousness.

### iii. Vagueness.

The plaintiff challenged certain statutes and regulations as unconstitutionally vague. When put to the test, the plaintiff declined to defend these allegations on motion for summary judgment, and the Court ruled the provisions were not close to being unconstitutionally vague. (Doc. 150 at 9-13). However, because there was a degree of subtlety to the analysis, and because the defendants again relied mostly on non-binding caselaw for their argument, (Doc. 134 at 51-53, 55-59), the Court finds the plaintiff's theory warranted careful attention and review.

The foregoing applies to the vagueness challenge the plaintiff actually alleged in the second amended complaint. However, in its motion for summary judgment and in opposition to the defendants' motion for summary judgment, the plaintiff advanced additional vagueness challenges, for the first time targeting regulations addressing safety and health, drainage, and greenspace. (Doc. 126 at 80-88; Doc. 141 at 28-37). The Court summarily rejected these challenges based on the bedrock Eleventh Circuit rule that a complaint cannot be amended by argument on motion for summary judgment. (Doc. 150 at 13). Because these challenges patently were never part of the lawsuit, they did not warrant careful attention and review.

### iv. Administrative duty.

The plaintiff's final theory of a substantive due process violation rested on *Southern Cooperative Development Fund v. Driggers*, 696 F.2d 1347 (11th Cir. 1983). The Court ruled that, while the *Driggers* panel apparently held that the defendants violated the plaintiffs' substantive due process rights by refusing to approve the plaintiffs' proposed plat even though it complied with all applicable requirements (which compliance gave rise to an administrative duty of approval), that holding was abrogated by the full Eleventh Circuit in *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (*en banc*). (Doc. 150 at 14-18). The defendants argue that *McKinney* renders the plaintiff's "administrative duty" theory frivolous, (Doc. 154 at 11), but the Court cannot agree. First, the defendants did not argue that *McKinney* superseded *Driggers* until their third

dispositive motion attacking the *Driggers* theory,[7] indicating that the impact of *McKinney* was not obvious even to them.[8]  Second, because *McKinney* did not expressly overrule *Driggers*, significant analysis was required in order to determine whether *McKinney* undermined *Driggers* to the point of abrogation.  Third, it is "difficult to condemn [the plaintiff's] theory as frivolous, built as it was from language in our own opinions." *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1185 (11th Cir. 2005).  If that was true in *Cordoba*, where the language was "dicta," the theory "lacked support in logic and commonsense," and the Eleventh Circuit "ha[d] never specifically endorsed it," *id*. at 1186-87, then doubly true here, where *Driggers* was a holding, the theory was not nonsensical, and the Eleventh Circuit had never expressly overruled it.  The Court concludes that the plaintiff's theory warranted careful attention and review.

### 3.  Equal protection.

The original complaint sought to allege a class-of-one equal protection claim.  Binding authority explicitly required the plaintiff to name its comparators and to identify specific attributes rendering them similarly situated to the plaintiff, yet the complaint alleged only that the plaintiff was treated differently from unnamed, unidentified persons, and the only points of comparison it offered were differences, not similarities.  (Doc. 19 at 20-22).  As pleaded, this claim did not merit careful attention and review.

### 4.  Civil conspiracy.

The Court granted summary judgment on the federal civil conspiracy claim because its viability depended on a viable substantive federal claim.  (Doc. 149 at 7).  Because, as addressed above, not all of the plaintiff's substantive federal claims were frivolous, the federal civil conspiracy claim was not derivatively frivolous.

---

[7] No such argument appears in either of their two motions to dismiss the administrative duty theory.  (Doc. 19 at 17-19; Doc. 55 at 10-11).

[8] The defendants appear to concede as much.  (Doc. 154 at 11).

The defendants argue that the federal civil conspiracy claim was frivolous because the Court ruled (in addressing the parallel state civil conspiracy claim) that the plaintiff was unable to create a genuine issue of material fact concerning the existence of an agreement involving any Commissioner and any outsider, much less of an agreement involving a majority of the Commissioners. According to the defendants, the plaintiff pursued this claim "without any factual basis whatsoever" and "relied solely on rank speculation." (Doc. 154 at 7-8). The defendants overstate the case, as the plaintiff presented numerous pieces of evidence of contacts between various Commissioners and various outsiders and other Commissioners, but they also overlook an important legal principle.

"A plaintiff does not proceed frivolously when her case is based solely on speculation, as long as the speculation is reasonable." *Lawyer v. Hillcrest Hospice, Inc.*, 300 Fed. Appx. 768, 774 (11th Cir. 2008) (describing *Cordoba*). In *Cordoba*, the panel ruled that, "[u]nder these circumstances, although [the plaintiff] could ultimately do no more than speculate that [her second-tier supervisor] was aware of her condition, this speculation was not so unreasonable that it can be termed frivolous." 419 F.3d at 1181. The circumstances to which the *Cordoba* Court referred consisted of evidence that the plaintiff's immediate supervisor and several of her co-workers were "generally aware" of her condition. *Id.* This obviously was not evidence that the second-tier supervisor also was aware of the plaintiff's condition, but it was enough to render her speculation to that effect sufficiently reasonable to preclude an award of attorney's fees to the defendant. *Id.* at 1182 (reversing an award of fees to the defendant as an abuse of discretion). The plaintiff's material, which required extensive discussion by the Court, (Doc. 149 at 9-19), was in parts speculative, but not so unreasonably speculative as to support a finding of frivolousness. This claim warranted careful attention and review.

### 5. Summary.

The plaintiff's federal claims of a due process violation based on executive action and vagueness were frivolous under the governing standard, as was its equal protection

claim.  The plaintiff's other federal claims were not frivolous and will not support an award of attorney's fees.

### C. Special Circumstances.

"Ordinarily, a prevailing plaintiff 'is to be awarded attorney's fees in all but special circumstances.'"  *Head*, 62 F.3d at 355 (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1974)).  The Eleventh Circuit in *Head* extended this qualifier to prevailing defendants, remanding in part to allow the district court to evaluate if there were "special circumstances that justify making no award of fees."  *Id*. at 356.  The plaintiff identifies as such a special circumstance the fact that it has refiled in state court the three state claims as to which the Court declined to exercise supplemental jurisdiction.  Because those claims survive, the plaintiff says, the Court's adverse rulings constitute "but one point along a procedural continuum" that will not reach conclusion until the state claims are ultimately resolved in state court.  Thus, it concludes, "the state court will be in the best position to fairly assess costs after all the state law claims have been litigated."  For this proposition, the plaintiff relies on the application of *Head* by the district court in *Seeds v. Lucero*, 2002 WL 35649996 (D.N.M. 2002).  (Doc. 160 at 6-9).

The *Head* case involved both costs under Rule 54(d) and attorney's fees under Section 1988.  62 F.3d at 354.  While the panel acknowledged that there could be "special circumstances that justify an award of no costs or no fees," *id*. at 356, it did not identify what circumstances might be sufficiently special to furnish such a justification.  In the context of costs under Rule 54(d), the *Seeds* opinion concluded that, when federal claims are dismissed and the court declines to exercise supplemental jurisdiction and instead remands the remaining state claims, the unfinished nature of the litigation could be such a special circumstance.  2002 WL 35649996 at *2.  Importantly, *Seeds* did not involve, and did not address, special circumstances in the context of Section 1988.  It therefore offers no support for the plaintiff's position.

Nor has the plaintiff given the Court any reason to believe the Eleventh Circuit would recognize such a strange special circumstance in the Section 1988 context.  From a

policy standpoint, why would a federal court be expected to cede to a state court the weighing and vindication of the federal interests animating Section 1988?  From a practical standpoint, how could a state court reliably engage in such an exercise based on events occurring in federal court?  From a power standpoint, by what legal authority could a state court do so?  The plaintiff's failure to address these and all other thorny questions raised by its argument obviates its further consideration.  In short, the Court finds no special circumstance that could justify making no award of fees.

### D.  Scope of Award.

The defendants seek an award of their fees incurred defending all of the claims dismissed on the merits by the Court.  These include:  (a) the plaintiff's frivolous federal claims as identified above; (b) the plaintiff's non-frivolous federal claims as identified above; and (c) the plaintiff's state claims – which the defendants say are frivolous – for equitable estoppel, misrepresentation, and tortious interference with business expectancies.  (Doc. 154 at 6 n.4).  Although not included in this list, the defendants also apparently seek fees with respect to the state claims for tortious interference with vested rights and for civil conspiracy.  (*Id*. at 7-8).

### 1.  Non-frivolous federal claims.

Because the defendants failed to demonstrate that they were frivolous, unreasonable, or without foundation under the governing standard, attorney's fees are unavailable with respect to the plaintiff's federal claims:  (1) under Count I; (2) for a due process violation based on legislative action; (3) for a due process violation based on vagueness as pleaded in the complaint as amended; and (4) for a due process violation based on breach of an administrative duty to approve the Projects.

### 2.  State claims.

The defendants in their principal brief assume rather than demonstrate that Section 1988 authorizes recovery for frivolous state-law claims.  (Doc. 154 at 6 n.6, 7-8).  The

plaintiff understandably challenges this unsupported assumption.  (Doc. 160 at 2-3, 21, 27-28).  In their reply brief, the defendants for the first time attempt to supply such support.  (Doc. 163 at 10-11).  As they have been reminded,[9] such a tardy effort is too late.

It is also too little.  The defendants rely on six cases.  *Maher v. Gagne*, 448 U.S. 122 (1980), involved only a prevailing plaintiff and only federal claims.  *National Organization for Women v. Operation Rescue*, 37 F.3d 646 (D.C. Cir. 1994), involved state and federal claims but only a prevailing plaintiff, not a prevailing defendant.  *O'Boyle v. Thrasher*, 647 Fed. Appx. 994 (11th Cir. 2016), involved a prevailing defendant and frivolous claims both state and federal, but the parties did not dispute that a prevailing defendant may recover fees under Section 1988 for frivolous state claims; the panel therefore neither addressed nor resolved the issue.  Only *Munson v. Milwaukee Board of School Directors*, 969 F.2d 266 (7th Cir. 1992), supports the defendants' position,[10] but it rests on the untested premise that prevailing defendants should be treated as favorably as prevailing plaintiffs, *id*. at 272 – a debatable proposition, given that defendants are not treated as favorably as plaintiffs in determining whether they are prevailing parties to begin with, due to the "quite different equitable considerations at stake."  *Fox*, 563 U.S. at 833 (internal quotes omitted).  Perhaps a stronger case could be made in support of Section 1988 attorney's fees awards to prevailing defendants on frivolous state claims, but the defendants have not made it, and the Court will not endeavor to supply the deficiency.[11]

---

[9] (Doc. 19 at 7; Doc. 70 at 20).

[10] The defendants' final two authorities are two district court decisions relying on *Munson* without furnishing additional reasoning or other support.

[11] At least some of the dismissed state claims were not frivolous under the Section 1988 standard.  These would include at least the claims for civil conspiracy and tortious interference with vested rights.

### 3. Federal forum.

As the defendants note, (Doc. 154 at 12), *Fox* permits recovery of some attorney's fees expended on a non-frivolous claim if "the frivolous claim enables removal of the case to federal court, which in turn drives up litigation expenses."  563 U.S. at 837.  In that event, the prevailing standard "would permit awarding fees for work relevant to both claims in order to reflect the increased costs (if any) of the federal forum."  *Id*. at 837-38.  The defendants, however, do not assert, much less demonstrate or quantify, any higher cost to litigate this action in federal court than in state court.  Therefore, no award can be made on this basis.

### 4. Alleged misconduct.

As discussed in Part II, the defendants seek an award under Section 1927 based on what they call the plaintiff's "bad faith and abusive tactics."  (Doc. 154 at 13). Embedded within this section is a suggestion that the conduct addressed therein "should be further guideposts in the Court's effort to effect 'rough justice'" under Section 1988. (Doc. 154 at 15).  They believe this is justified by the *Fox* Court's encouragement to trial courts, as described *infra* in Part I.E, to "take into account their overall sense of a suit." 563 U.S. at 838.  Section 1988, however, limits recovery to attorney's fees attributable to frivolous federal claims; it does not permit recovery of additional attorney's fees based on litigation conduct.  Both the "rough justice" tree and the "overall sense of a suit" branch of that tree inform only the Court's assessment of the attorney's fees attributable to the frivolous federal claim; they do not create a supplemental category of recoverable fees.

### E. Amount of Fee Award.

"Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim."  *Fox*, 563 U.S. at 836.  Or, stated as a "but-for" test, "Section 1988 permits the defendant to receive only the portion of his fees

14

that he would not have paid but for the frivolous claim." *Id*.  This standard means that, "if the defendant would have incurred those fees anyway, to defend against non-frivolous claims, then a court has no basis for transferring the expense to the plaintiff." *Id*.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.  The hourly rates proposed here – $175 for partner time through March 2024 and $200 for partner time thereafter – is plainly reasonable.  The plaintiff does not disagree.

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 434.  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection," so courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838.

The plaintiff objects that the defendants' billing records lack sufficient particularity, that they are vague, that they mix together different activities regarding different claims, and that they do not itemize individual tasks.  (Doc. 160 at 13).  While there are of course some entries that are not surgically precise for the *post hoc* purpose of awarding fees as between claims, the Court finds the defendants' submission to be exemplary.  As *Fox* states, any residual uncertainty is to be addressed, not by awarding no fee, but by "using estimates in calculating and allocating" the lawyers' time.

### 1.  Equal protection.

The defendants obtained dismissal of this frivolous claim on their first try.  (Doc. 19 at 20-22, 27).  Their detailed, descriptive billing records reflect approximately five hours of lawyer time devoted specifically to researching this claim.  (Doc. 158-1 at 279-85).  The entries regarding the actual drafting and editing of their principal and reply briefs on motion to dismiss generally do not identify the issues being addressed, but it is

clear from the briefs' limited treatment of this claim[12] that the briefing time was similarly limited.  None of the effort devoted to this claim would have been expended on another claim had the equal protection claim not been asserted.   As an exercise of "rough justice," the Court will award fees based on a total of fifteen hours of attorney time at a $175 hourly rate, for a total of $2,625.

### 2.  Vagueness.

As noted in Part I.B.2.iii, the frivolous portion of this claim consists of the challenges to the regulations addressing safety and health, drainage, and greenspace. Because these provisions were first challenged as vague in the plaintiff's motion for summary judgment, (Doc. 125 at 2-3), only billing entries after the defendants' receipt of that document could reflect recoverable fees.  The defendants' detailed entries regarding the drafting of their briefs on the competing motions for summary judgment reflect fewer than twenty hours dedicated to vagueness issues (including the non-frivolous vagueness claims alleged in the pleadings), (Doc. 158-1 at 318-27), although the Court recognizes that additional time was presumably spent on this issue under general editing entries. None of the effort devoted to the plaintiff's tardy vagueness challenges would have been expended on another claim had these challenges not been made.  As an exercise of "rough justice," the Court will award fees based on a total of twenty-five hours of attorney time at a $200 hourly rate, for a total of $5,000.

### 3.  Executive acts.

The defendants addressed this portion of the plaintiff's due process claim on three occasions.  The Court denied the defendants' first motion to dismiss this claim on the grounds that the defendants had not adequately addressed certain allegations of the complaint.  (Doc. 19 at 11-12).  The Court denied the defendants' second motion to dismiss this claim (and others) on the grounds that the successive motion violated Rule

---

[12] The defendants devoted a total of 2½ pages, out of 42 total pages of briefing, to challenging the equal protection claim.  (Doc. 9 at 18-20; Doc. 18 at 8-9).

12(g)(2).  (Doc. 69 at 2-6).  The Court then granted the defendants' motion for summary judgment on this claim.  (Doc. 150 at 6-7, 21).

The defendants' billing records reflect little time devoted to this straightforward aspect of the plaintiff's due process claim on the first motion to dismiss.  (Doc. 158-1 at 279-85).  In addition, the Eleventh Circuit cases that preclude a substantive due process claim based on executive acts are the same ones that identify legislative acts and distinguish them from executive acts, meaning that much of the defendants' research would have occurred anyway, in order to contest the legislative-acts portion of the due process claim.  The defendants' billing records similarly reflect little time devoted to the executive-acts aspect of the due process claim on the second motion to dismiss, (*id*. at 286-95); in any event, "rough justice" counsels against any award for such time, because the motion itself was improperly brought.  The defendants' billing records again reflect little time devoted to this aspect of the case on motion for summary judgment.  (*Id*. at 318-27).  As an exercise of "rough justice," the Court will award fees based on a total of ten hours of attorney time at a $175 hourly rate, plus a total of ten hours of attorney time at a $200 hourly rate, for a total of $3,750.

### F.  Costs.

The defendants purport to seek "nontaxable expenses" in addition to attorney's fees.  (Doc. 154 at 1, 17).  However, the total amount of attorney's fees and expenses sought is $267,622.00, (*id*. at 17), which figure consists entirely of attorney's fees.  (Doc. 154-1 at 4, 6-7).  The defendants therefore have not effectively requested any award for expenses.  Moreover, the defendants have not attempted to show either that *Fox*'s "but for" standard does not apply to costs other than attorney's fees[13] or that the defendants would not have incurred the exact same expenses had the plaintiff not asserted its equal

---

[13] Section 1988(b) describes attorney's fees as "part of the costs," and *Fox* uses "costs" interchangeably with attorney's fees.  563 U.S. at 837-38.  Nor would there be any obvious sense in carefully restricting the attorney's fees recoverable by a defendant while simultaneously allowing wholesale recovery of other costs.

protection, executive acts, and tardy vagueness claims.  For these reasons, no award for costs other than attorney's fees will be made.

## II.  Section 1927.

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Section 1927 imposes three requirements for an award:  (1) an attorney must engage in "unreasonable and vexatious" conduct; (2) such conduct must "multipl[y] the proceedings"; and (3) sanctions are capped by "the costs occasioned by the objectionable conduct." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010).  "An attorney unreasonably and vexatiously multiplies the proceedings when he willfully abuses the judicial process by conduct tantamount to bad faith." *Silva v. Pro Transport, Inc.*, 898 F.3d 1335, 1340 (11th Cir. 2018) (internal quotes omitted).  Counsel's bad faith need not be subjective, but it must be at least objective. *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020).  "The statute imposes a high standard that requires the moving party to show that the other side engaged in behavior that grossly deviates from reasonable conduct." *Id*.  Section 1927 "is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Schwartz v. Millon Air, Inc*., 341 F.3d 1220, 1225 (11th Cir. 2003).  It does not "serve as a basis for sanctioning any and all attorney conduct courts want to discourage" or conduct that "has not been in the best and highest traditions of the legal profession." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

The defendants seek an award under Section 1927 for three categories of "unfair or abusive litigation tactics":  (1) using a private investigator to secretly record witnesses; (2) choosing a federal forum as retribution in order to inflict pain and excessive legal

expense; and (3) untimely disclosing an expert.  (Doc. 154 at 13).[14]  The Court addresses these in reverse order.

### A.  Untimely Expert Disclosure.

The defendants identify counsel's objectionable conduct as disclosing an expert witness after the deadline for doing so had passed, thereby lowering (not raising) by $20 million the damages claimed, altering the damages methodology, and relying on thousands of new documents, all after the defendants had expended substantial resources focused on the plaintiff's original damages model.  They identify the resulting multiplication of proceedings as their efforts to address and counter the new expert's opinions, as well as their pursuit of a motion to strike the expert's opinions as untimely. (Doc. 154 at 6 n.3, 13, 16; Doc. 163 at 12).

The defendants' vague sketch of the situation is far too incomplete to allow the inference that counsel's conduct as described "grossly deviated from reasonable conduct."  While the defendants refer generally to their motion to strike, that motion was routinely referred to the Magistrate Judge, and it remained pending before her when the defendants succeeded on their motion for summary judgment.  The Court therefore does not have the benefit of a ruling on the motion to strike.  To the uncertain extent the defendants expect the Court to peruse the motion and draw its own conclusions, they have offered no good reason why the Court should plunge unaided into over 70 pages of briefing, plus over 400 pages of exhibits and an oral argument transcript, to tease out possible indicia of objective bad faith on the defendants' behalf, and the Court declines to do so.[15]

---

[14] Section 1927 can serve as a basis for recovering attorney's fees resulting from the assertion of a frivolous claim.  *E.g., Silva*, 898 F.3d at 1340.  Although the defendants seek recovery for allegedly frivolous state claims under Section 1988, *see* Part I.D.2, *supra*, they do not seek such a recovery under Section 1927.

[15] The defendants' unadorned citation to Rule 37, (Doc. 154 at 1, 13), does not change this calculus.

**B. Federal Forum.**

The defendants assert that the plaintiff "fil[ed] this lawsuit in federal court in order to cause pain and as retribution and requiring the City to incur significant legal expenses." (Doc. 154 at 13). Their only effort to substantiate this allegation is to point to five emails from the plaintiff's CEO ("Cox"), in which, the defendants allege, Cox "admit[ted] … that this lawsuit was filed (at least in part) for an improper purpose, i.e., to cause pain and exact retribution. (*Id.*).

Prior to February 7, 2022, the City's planning department staff recommended denial of both the plaintiff's applications. (Doc. 149 at 9). The plaintiff's applications were denied by the Commission on April 4 and May 2, 2022, respectively. (*Id.*). In the interim, between February 3 and March 5, 2022, Cox responded to several emails from allies. In response to an unidentified proposal for addressing staff's concerns, Cox stated, "If we are going to fight them might as well change both of these to apartments." (Doc. 154-2 at 5). In a second response to the proposal, he stated, "Or maybe at least switch our plans around to something they deserve." (*Id.* at 4). Ten days later, Cox described the plaintiff's posture as, "we have done everything we are supposed to and then some so approve or get ready." (*Id.* at 6). Nine days later, he stated that, once some unidentified document is finalized, "make sure it gets distributed one way or another to any and all that are either in a position of influence or a position to feel pain in the event of a denial." (*Id.* at 2). Eleven days later, in response to a question about whether the plaintiff should consider both filing a declaratory judgment action before the Commission ruled on the applications (in order to challenge the process), and then, should the plaintiff lose in that action and have its applications denied, challenging the denial in court, Cox responded, "Good question and yes we should do it twice. Anything that causes more pain I'd be in favor of." (*Id.* at 3).

The defendants' argument fails on numerous grounds.  First, Section 1927 redresses only misconduct by counsel,[16] and they have offered nothing that ties plaintiff's counsel to Cox's emails or the sentiment they draw from them.  Second, and as the defendants concede, Cox's emails do not support an inference that the plaintiff sued the defendants only to inflict financial and other pain and not to reverse the Commission's denials and/or recover damages resulting from the denials.  The first three emails reflect only that the plaintiff did not intend to accept a denial without a challenge, and the fourth only identifies a group of recipients of an unidentified document.  While the final email does suggest a desire to cause (undefined) pain, this is expressed as an added benefit of litigation, not as its purpose.

Third, nothing in Cox's emails supports an inference that the plaintiff specifically chose a federal forum rather than a state forum for the purpose of inflicting pain, exacting retribution, and driving up expenses, for the simple reason that they are utterly silent as to the judicial forum contemplated.  Finally, even could the defendants show that counsel acted unreasonably and vexatiously in selecting a federal forum to pursue the plaintiff's claims, they have not attempted to show that this conduct "multiplie[d] the proceedings."  As discussed in Part I.C.3, the defendants have neither asserted nor demonstrated that

---

[16] The defendants quote *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991),  for the proposition that Section 1927 authorizes an award against "litigants, counsel, and law firms." (Doc. 154 at 15-16).  The *Avirgan* Court, however, said only that all three categories can be sanctioned for bad faith, not that they can be sanctioned under Section 1927; on the contrary, the source of authority for the award against the clients was "the bad-faith exception," not Section 1927.  932 F.2d at 1582.  As the lower court observed, this was precisely because the clients "cannot be liable under Fed.R.Civ.P. 11 or 28 U.S.C. § 1927 because they are not attorneys." *Avirgan v. Hull*, 125 F.R.D. 189, 190 (S.D. Fla. 1989).  The Eleventh Circuit has expressly declared that "awards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards."  *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001), *abrogated on other grounds, Bridge v. Phoenix Bond & Indemnity Co*., 553 U.S. 639 (2008).

It is true, as the defendants note, (Doc. 154 at 15), that another panel quoted *Avirgan* for the proposition that Section 1927 permits awards against litigants.  The Court in *Malautea v. Suzuki Motor Co*., 987 F.2d 1536 (11th Cir. 1993), misread *Avirgan* and is in any event *dicta*, since the appeal involved only sanctions against attorneys.  *Id*. at 1544.

they performed any work, or incurred any expense, in this court that they would not have performed or incurred had the same action been filed in state court.

### C. Secret Recordings.

The defendants seek an award of fees expended as a result of "engaging a private investigator ["Kelly"] to pose as a potential client or disinterested person to secretly record Commissioners and City employees (undisputedly represented by the city attorney) without their consent and under false pretenses in order to manufacture evidence for use in this case." (Doc. 154 at 13). The defendants have evidence that more individuals were targeted, (Doc. 154-3 at 2), but they have offered evidence of only one individual – a Commissioner ("MacKellar") – actually being recorded. (Doc. 131-30).[17] The Court therefore confines its scrutiny to MacKellar.[18]

The recordings occurred between June and October 2022, (Doc. 131-30 at 4-6), before this action was filed. It is therefore unclear whether Section 1927 could be properly invoked. The provision "applies … to misconduct by an attorney in the course of 'proceedings' in a 'case' before the court, not misconduct that occurs before the case appears on the federal court's docket." *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006); *see also Macort v. Prem, Inc*., 208 Fed. Appx. 781, 786 (11th Cir. 2006) ("[T]he language of § 1927 makes clear that it only applies to unnecessary filings after the lawsuit has begun."). Because the plaintiff has not opposed sanctions on this ground, the Court addresses the defendants' argument.

The defendants find four things objectionable about counsel's conduct: (1) recording MacKellar without her consent; (2) getting her to speak under false pretenses;

---

[17] MacKellar's declaration speaks primarily of her own experience but says in a single sentence that she has "learned" that two other individuals had similar experiences. (Doc. 131-30 at 7). The Court cannot accept this *ipse dixit* as based on personal knowledge rather than hearsay and therefore declines to consider it. The resolution of this motion does not depend on that decision.

[18] There is no question but that plaintiff's counsel acquired the investigator, and that he did so to "dig up the dirt." (Doc. 154-3 at 2).

(3) doing so in order to manufacture evidence; and (4) communicating with her while she was represented by counsel.  The defendants assume rather than demonstrate both that these circumstances existed and that they rise to the level of objective bad faith as contemplated by Section 1927.  On the thin record before it, the Court cannot agree.

The Court agrees that MacKellar was recorded without her consent.  (Doc. 131-30 at 6).  However, this occurred only when Kelley was a party to the conversation, (*id*.), and such conduct does not violate Alabama criminal law.  Ala. Code § 13A-11-30(1).  The defendants neither identify any potential civil liability for such conduct nor explain how it is improper in any other sense relevant to Section 1927.

The Court agrees that Kelley did not inform MacKellar that he was engaged by the plaintiff in connection with the Commission's denial of the plaintiff's applications but instead made up a cover story about who he was and why he wanted to speak with her.  (Doc. 131-30 at 6).  However, the defendants again fail to demonstrate that this tactic grossly deviates from reasonable conduct so as to potentially constitute objective bad faith, and the Court will not seek authority or rationale on their behalf.

It is clear that the plaintiff hoped by its stratagem to uncover evidence favorable to its case (such as an admission that the applications satisfied all requirements for approval or that one or more Commissioners voted against the Projects for illegitimate reasons).  The defendants, however, have presented nothing suggesting that the plaintiff attempted to "manufacture" evidence – a loaded term connoting the purposeful creation of false evidence.[19]

According to the defendants, the Commission has legal counsel, who attends most Commission meetings, and of whose existence the plaintiff was aware because he attended the meetings at which its applications were denied.  The defendants assume that counsel continued to represent Commissioner MacKellar with respect to the denials in the months afterwards, when the challenged communications occurred, and that plaintiff's counsel knew this.  (Doc. 154 at 14).  As the plaintiff notes, (Doc. 160 at 22-23), the

---

[19] *E.g., Davis v. City of Apopka*, 78 F.4th 1326, 1345 & n.5  (11th Cir. 2023).

defendants do not support these assertions with evidence and do not explain how the plaintiff's conduct grossly deviated from the reasonable.

In their reply brief, the defendants invoke Alabama Rule of Professional Conduct 4.2.  (Doc. 163 at 8).[20]  Once again, the defendants offer in their reply what should have been placed in their principal brief so that the plaintiff could respond.  Even had this provision been timely invoked, it does not compensate for the defendants' failure to show both that counsel in fact continued to represent MacKellar as to the plaintiff's applications after they were denied[21] and that plaintiff's counsel recognized this.[22]  Were these obstacles overcome, the defendants would still need to address the impact of this Court's observation that, "[i]n enacting § 1927, Congress was not creating a private remedy for attorney ethical breaches, much less a mechanism transforming federal judges into final arbiters of whether an attorney's conduct did or did not comply with ethical rules promulgated by state bar associations."  *Abrams v. Ciba Specialty Chemicals Corp*., 2009 WL 4667126 at *6 (S.D. Ala. 2009) (addressing Rule 1.4).[23]

## III.  Inherent Power.

The defendants seek recovery, under the Court's inherent power, for the same three practices on which their Section 1927 argument is based.  (Doc. 154 at 13).  "In the context of inherent powers, the party moving for sanctions must show *subjective* bad faith."  *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (emphasis in original).

---

[20] They cite four other rules as well, but without explaining how counsel might have violated them.  (Doc. 163 at 8).

[21] The scope of counsel's representation could have been shown by statute, ordinance, contract, affidavit, or otherwise.

[22] The defendants' assumptions may be reasonable, but they are not inevitable, and the Court will not award attorney's fees based on assumption.

[23] The Court does not rule that talking to a represented party could never support sanctions under Section 1927 or that conduct violating a state ethical rule is immune from such sanction.  The Court rules only that, on the limited argument and evidence presented, it cannot find that the conduct of plaintiff's counsel amounted to objective bad faith.

Subjective bad faith "mean[s] intentional and not just reckless behavior." *J.C. Penney Corp. v. Oxford Mall, LLC*, 100 F.4th 1340, 1346 (11th Cir. 2024). "This standard can be met either (1) with direct evidence of the attorney's subjective bad faith or (2) with evidence of conduct so egregious that it could only be committed in bad faith." *Hyde*, 962 F.3d at 1310 (internal quotes omitted). The defendants neither acknowledge nor apply this standard, and in the absence of cogent argument, the Court declines to find it satisfied.

The defendants assert that the "general tenor of this lawsuit" smacks of "frivolity, intimidation, and unreasonableness," listing four incidents in support of this proposition. (Doc. 154 at 13-14 & n.9). Because the defendants seek no recovery of fees in connection with these incidents, their unstated relevance is obscure. To the uncertain extent the defendants intend to suggest *sub silentio* that these incidents infuse the three challenged practices with subjective bad faith, the Court cannot agree.

The first incident is the plaintiff's alleged commencement of preparations for a potential lawsuit before the allegedly wrongful act – the denial of its applications – occurred. It is difficult to understand, and the defendants do not explain, how such a commonplace feature of business-related litigation could reflect poorly on a litigant.

The second incident is the plaintiff's issuance of a press release directing media to the complaint, leading to media reports of the complaint's contents. (Docs. 154-4, -5). The contents of the case file are of course public, and the defendants fail to explain what is improper about alerting the media to their existence.

The third incident is a "request for public records" made to the City by the son of plaintiff's counsel, who stated falsely that he was requesting site plans for one unrelated development, and the Commission's report for another, because he wanted to build a similar development. (Doc. 154-6). According to the defendants, the real reason for the request was to flout formal discovery limitations. The defendants offer no argument or authority for their assumed proposition that a party may not obtain public records from a

governmental defendant other than through formal discovery.[24]  Nor do they claim that the City may lawfully refuse a request for public records if the requester is in litigation with the City or if he provides a false reason for the request.

The fourth incident is an email from plaintiff's counsel to a non-party witness, demanding her production of documents pursuant to a subpoena within thirteen days of service, failing which he would file a motion to hold her in contempt.  (Doc. 154-8 at 2).  The tenor of the email is unnecessarily aggressive and not "in the best and highest traditions of the legal profession," but the defendants fail to demonstrate that it misstates the law or the facts or that it otherwise indicates subjective bad faith.

## IV.  Fees for Fees.

It is unclear how much the defendants seek as attorney's fees for pursuing the instant motion.  Their initial filing states the amount as $14,114 for time spent through the filing of the instant motion on July 2, 2024.  (Doc. 154-1 at 6-7).  A later filing states the amount as $11,086 through July 16, 2024, (Doc. 158-1 at 341-43), even though counsel billed an additional 21 hours after July 2.  No figure or express demand is given for fees incurred in reviewing the plaintiff's opposition brief and preparing a reply.  The defendants' requested recovery does include over $1,000 spent preparing the bill of costs. (*Id.*).

"Since the reasonableness of a fee is a function in part of the success achieved by the expenditure, lack of success in obtaining fees … is certainly material in deciding how large the reimbursement should be."  *Ustrak v. Fairman*, 851 F.2d 983, 990 (7th Cir. 1988).  In this case, the defendants sought an award for 1,414 hours of attorney and paralegal time (exclusive of time spent on the fee petition and bill of costs), (Doc. 154-1 at 5; Doc. 158-1 at 341-42), but they have justified an award for only 60 hours of attorney time, or barely 4% of the requested hours.  Viewed in dollars, the defendants sought an award of over $253,000 (exclusive of fees for pursuing fees and taxable costs), (Doc.

---

[24] On the contrary, they insist they made the same records available through discovery. (Doc. 163 at 7 n.6).

154-1 at 5-7), and have received an award of $11,375, or less than 5% of the requested recovery.

Moreover, and as explained in Part I.F, the defendants sought as costs under Section 1988 only costs that are not taxable under Rule 54(d)(1) and Section 1920, they capped their demand at a figure that excludes any amount for costs, and they failed to show that they incurred any cost solely because of a frivolous federal claim.  Under these circumstances, and without explanation from the defendants, the Court cannot conclude that they may recover under Section 1988 their fees incurred in preparing the bill of costs.

Neither side addresses fees for fees, and the Court will not belabor the point.  As an exercise of "rough justice," the Court will award fees for pursuit of the instant motion, the bill of costs, and the motion to retax costs, in the total amount of $3,000.

## CONCLUSION

For the reasons set forth above, the defendants' motion for attorney's fees and related nontaxable expenses is **granted in part**.  The defendants are **awarded** $14,375 pursuant to 42 U.S.C. § 1988.  To the extent the defendants seek a larger award under Section 1988, or any award pursuant to Section 1927, Rule 37, or the Court's inherent power, the motion is **denied**.[25]

 No further order will be forthcoming from the Court except upon application by any party for final judgment as prescribed by Rule 58.

DONE and ORDERED this 5th day of September, 2024.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[25] The plaintiff and its counsel should not consider this ruling a vindication, much less an endorsement of their approach to this litigation.  The magnitude of the fee award is a product of the stringent standards governing such awards, the selection of arguments by the defendants, and the limited support they provided for them.