IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| 68V BTR HOLDINGS, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 22-0430-WS-B |
| | ) | |
| CITY OF FAIRHOPE, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

ORDER

This matter is before the Court on the defendants' motion to retax costs. (Doc. 161). The plaintiff has filed a response and the defendants a reply, (Docs. 164, 165), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

BACKGROUND

Familiarity with the pleadings, and with other motions, orders, and activity in the file, is assumed. The plaintiff is the owner of two parcels of property ("the Properties") that it sought to develop. The entity defendants are the City of Fairhope ("the City") and the City of Fairhope Planning Commission ("the Commission"). The individual defendants ("the Commissioners") are members of the Commission. The plaintiff sought approval from the Commission for development of the Properties as multi-occupancy housing ("the Projects"), but the Commission, by vote of the Commissioners, denied the plaintiff's applications.

The original complaint, (Doc. 1), asserted both state and federal claims against the City and Commission. The first and second amended complaints, (Docs. 38, 95), asserted both state and federal claims against the City, the Commission, and the Commissioners. In a series of rulings, the Court dismissed on the merits every federal claim and several state claims and dismissed pursuant to 28 U.S.C. § 1367(c) the remaining three state claims. (Docs. 19, 69, 70, 149, 150). The Court then entered final

judgment for the defendants on all claims other than the three claims dismissed under Section 1367(c).  (Docs. 151, 152).  The plaintiff has since refiled these three claims in state court.  (Doc. 158-1 at 345-50).

The defendants filed a bill of costs pursuant to Rule 54(d), seeking taxation of $23,172.86.  (Doc. 153).  The Clerk taxed $0.00, (Doc. 159), and the instant motion timely followed.

## DISCUSSION

"Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).

## I. Prevailing Party.

As noted, the defendants prevailed on the merits on every one of the plaintiff's federal claims, as well as the majority of the plaintiff's state claims.  The plaintiff nevertheless denies that the defendants are prevailing parties for purposes of Rule 54(d), on the grounds that there has been no material change in the parties' legal relationship. (Doc. 164 at 5).  The plaintiff's position is negated by the very case on which it relies.

In *Head v. Medford*, 62 F.3d 351 (11th Cir. 1995), the trial court granted the defendant summary judgment on the plaintiff's federal claims but, declining to exercise supplemental jurisdiction over the state claims, dismissed them without prejudice pursuant to Section 1367(c).  *Id*. at 353.  The trial court without explanation denied costs under Rule 54(d).  *Id*. at 354.  The Eleventh Circuit ruled that, given the entry of judgment for the defendants on the federal claims, "[t]hat the district court declined to exercise its supplemental jurisdiction under 28 U.S.C. § 1367 and dismissed all of the plaintiff's remaining state law claims, does not impair the fact that, as far as the federal case was concerned, defendants prevailed."  *Id*. at 355.  "Thus, defendants were the prevailing party in the district court for purposes of Rule 54(d) and are entitled to their

costs unless the district court has some special reason to deny the costs." *Id*.  In light of *Head*, the defendants are prevailing parties for purposes of Rule 54(d).

## II.  Special Circumstances.

As noted, the *Head* Court recognized that "some special reason" might justify denying costs. 62 F.3d at 355; *accord id*. at 356 ("If there are special circumstances that justify an award of no costs … the district court must make these circumstances clear in its order.").[1]  As a special reason not to award costs, the plaintiff asserts that, because three of its claims in this Court are now pending in state court, the issue of costs is "not ripe" and that "the state court will be in the best position to fairly assess costs after all the state law claims have been litigated."  (Doc. 164 at 6).  For this proposition, the plaintiff relies entirely on *Seeds v. Lucero*, 2002 WL 35649996 (D.N.M. 2002).

*Seeds* involved a state action removed to federal court based on the presence of claims brought pursuant to 42 U.S.C. § 1983.  The federal court granted summary judgment on the federal claims and remanded the state claims.  In denying costs, the *Seeds* Court stated that, because the plaintiffs might prevail in state court on their state claims, "it would be premature and unfair for this Court to award costs in favor of the Defendants, say for a deposition transcript that the Defendants used to defeat the Seeds' federal claims in this forum, when the Seeds may use that same deposition transcript to establish their common law claims in state court."  This possibility, the *Seeds* Court believed, constituted a "special reason" to deny costs within the contemplation of *Head*. 2002 WL 35649996 at *2.  The Court respectfully disagrees.

The question of costs in *Seeds* was not premature.  The defendants were the prevailing parties in the federal litigation,[2] and nothing later occurring in state court could

---

[1] This is consonant with the rule that "there is a strong presumption that the prevailing party will be awarded costs," which can be overcome only by a "sound reason for doing so." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017) (internal quotes omitted).

[2] The *Seeds* Court so recognized.  2002 WL 35649996 at *2.

3

alter that status.  The defendants' awardable costs of the federal litigation could be identified and quantified once that litigation ended, and nothing later occurring in state court could alter that calculation.  What was true in *Seeds* is even more clearly true here, because the plaintiff's state action is not, as in *Seeds*, a continuation of the same lawsuit but is an entirely new (though derivative) one.

Nor was it unfair to the plaintiffs in *Seeds* to assess costs in the federal litigation even though it remained possible (not certain) that the defendants would be assessed costs in the state litigation.  By electing to bring federal claims, the plaintiffs created and took on the risk that the case would be removed and that the federal claims would be rejected on their merits, triggering application of Rule 54(d)(1).  Likewise, the plaintiff here specifically chose a federal forum and thereby accepted the risk of being subject to costs in federal court.  The plaintiff fails to explain why it is more unfair for a losing plaintiff to experience the natural consequences of its litigation choices than for a prevailing defendant to be denied, or delayed in receiving, its costs as allowed by law.[3]

To *Seeds*' notions of ripeness and fairness, the plaintiff adds the concept of judicial economy.  Those interests, it says, are not served by requiring the plaintiff to pay costs now, only to be "repa[id] those same costs" should it prevail in state court.  (Doc. 164 at 8).  The plaintiff does not explain how it could be economical for a state court, a year or two from now, to dive into an unfamiliar federal record in order to reconstruct the costs to which the defendants are entitled from this litigation before considering offsetting or additional costs from the state litigation.  For that matter, neither the plaintiff nor the *Seeds* Court suggests how a state court could even have power under federal and state law to do such a thing.

It is telling that *Head* involved the same procedural background as in this case and yet did not suggest that the possibility of the plaintiff prevailing on her refiled state claims could constitute a "special circumstance" justifying a denial of costs.  The Tenth

---

[3] Neither the *Seeds* Court nor the plaintiff suggests that awarding costs now could allow the defendants to recover costs in this action and later recover the same costs a second time in the state litigation.

Circuit has specifically rejected the argument that it is premature to award costs under Rule 54(d)(1) when a defendant prevails on the plaintiff's federal claims and the state claims are dismissed under Section 1367(c). The plaintiff in *Allen v. Lang*, 738 Fed. Appx. 934 (10th Cir. 2018), argued that "awarding costs before the state proceedings have run their course could lead to inconsistent results." *Id*. at 944. The *Allen* panel ruled that there was no conflict and that costs were to be awarded by each forum to the prevailing party in that forum. *Id*. at 946. The Court concurs.[4]

In summary, the Court finds no special circumstance that could justify the denial of costs.

### III. Taxable Costs.

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case ….

28 U.S.C. § 1920. Because "a court may only tax costs as authorized by statute," *United States Equal Employment Opportunity Commission v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000), costs beyond those listed in Section 1920 are shifted only if the specific statute awarding costs "refers explicitly" to the element of costs at issue. *Glenn v. General Motors Corp*., 841 F.2d 1567, 1575 (11th Cir. 1988).

---

[4] The plaintiff assumes that, should it be the prevailing party in the state litigation, it can recover in that forum the costs it incurred in this forum. (Doc. 164 at 8). The *Allen* Court indicated that costs awardable in the state action would be limited to costs "incurred in state court." 738 Fed. Appx. at 946. Because the resolution of this issue does not affect the resolution of the plaintiff's "special circumstances" argument, the Court does not address it.

The defendants seek taxation under Section 1920 of:  (1) deposition expenses; (2) transcription expenses; (3) copying expenses; (4) subpoena fees; and (5) witness fees. (Doc. 153 at 1).  The Court considers these in turn.

### A.  Deposition Costs.

The defendants seek costs for thirteen depositions.  Six of these depositions were noticed by the defendants and were taken of the plaintiff's experts, chief executive officer, and other representatives/agents.  The other seven depositions were noticed by the plaintiff and were taken of certain Commissioners, certain City employees, a private citizen opposed to the applications, and the defendants' damages expert.  The total amount sought in this category is $16,969.20.  (Doc. 153-1 at 2).

"Taxation of deposition costs is authorized by § 1920(2)."  *W&O*, 213 F.3d at 620. "The question of whether the costs for a deposition are taxable depends on the factual question of whether the deposition was wholly or partially necessarily obtained for use in the case."  *Id*. at 620-21 (internal quotes omitted).  This may (but need not) be shown where the witness is on the losing party's witness list, or where the prevailing party uses the deposition at trial or on motion for summary judgment.  *Id*. at 621.  Even if such usage is "minimal or … not critical to the [prevailing party's] ultimate success," it is up to the losing party to "demonstrate[e] that any portion of the depositions was not related to an issue which was present in the case at the time the deposition was taken."  *Id*. (internal quotes omitted).  Even when the testimony of witnesses deposed by the prevailing party is excluded on the prevailing party's motion, the deposition costs are taxable unless the depositions were "not related to an issue in the case when the depositions were taken."  *Id*. at 622.

### 1.  Universal challenges.

Of the thirteen depositions at issue, the defendants relied on eleven in opposition to the plaintiff's motion for summary judgment and/or in support of their own.  (Docs. 134, 138).  The plaintiff argues that taxation of any deposition costs is nevertheless

barred because the Court did not rely on them in its dispositive orders, such that the depositions "had nothing to do with" the defendants' success. (Doc. 164 at 8). That is not the correct test.

Instead, "[t]he operative principle is that such costs are taxable when the party opposing the costs has not demonstrated that any portion of the depositions was not related to an issue which was present in the case at the time the deposition was taken." *In re: Fundamental Long Term Care, Inc.*, 753 Fed. Appx. 878, 882 (11th Cir. 2019) (internal quotes omitted) (summarizing *W&O*). The plaintiff insists that twelve of the depositions focused on one or more of three matters: the plaintiff's compliance *vel non* with the regulations governing its applications; the plaintiff's damages; and the existence *vel non* of a conspiracy to deny the applications regardless of merit. (Doc. 164 at 9-14). Each of these patently was an issue in the case when the depositions were taken, and the plaintiff has by its argument conceded that the depositions all were related to these issues. Although not admitted by the plaintiff, the thirteenth deposition also addressed these issues.[5]

To escape this box, the plaintiff suggests (again without support) that costs can be awarded only for depositions relevant to claims resolved by the Court, and not for depositions exclusively relevant to the claims dismissed under Section 1367(c). (Doc. 164 at 4, 8). Even did such a limitation exist, all thirteen depositions satisfy it. One of the claims the Court dismissed on the merits was that the defendants violated the plaintiff's federal substantive due process rights by denying its applications even though they complied with the governing subdivision regulations, which placed such compliance

---

[5] The thirteenth deposition was of the plaintiff's private investigator ("Kelley"), who secretly recorded Commissioner MacKellar. The plaintiff does not expressly identify the focus of Kelley's deposition, but it clearly addressed the plaintiff's compliance with regulatory requirements and the existence of a civil conspiracy. The plaintiff alleged in the second amended complaint that, in one of the secret recordings, MacKellar admitted that no legitimate reason existed to deny the applications (*i.e.*, that the applications complied with all applicable requirements). (Doc. 95 at 3, 15). On motion for summary judgment, the plaintiff relied on this secret recording as evidence of a conspiracy among the Commissioners. (Doc. 149 at 11, 39, 89-90).

in issue as to that claim. Damages were of course relevant to every claim brought by the plaintiff, and the existence of a civil conspiracy was of course relevant to the conspiracy claim, as to which the defendants received summary judgment.

The plaintiff next argues without support that the defendants can recover no deposition costs on the grounds that they can, and presumably will, use the same depositions in the state action. (Doc. 164 at 5, 7). This circumstance has nothing to do with the analysis under Section 1920(2).

The plaintiff also argues that the defendants should be denied all deposition costs because they did not submit documentation reflecting the categories of deposition costs sought. (Doc. 164 at 3, 15). Except that the defendants did so. (Doc. 153-1 at 6-10, 12-13, 16-20).

### 2. Limited challenges.

"Where the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." *W&O*, 213 F.3d at 620 (internal quotes omitted). The plaintiff declares, without any explanation, that the six depositions taken by the defendants were taken only for investigation and preparation and "purely for discovery purposes." (Doc. 164 at 14). Depositions are part of the discovery process, but that hardly makes them non-taxable exercises in preparation and investigation. The question is whether they were obtained "for use in the case," which of course includes use on motion for summary judgment or at trial, and all six depositions taken by the defendants were used by them on motion for summary judgment.

The plaintiff next argues that the defendants cannot recover the costs of the six depositions it noticed because they did not file the transcripts of those depositions with the Court on request of the plaintiff. (Doc. 164 at 15). As clearly stated in the case on which the plaintiff relies, this filing requirement applies only to *copies* of depositions taken by the prevailing party. *Corsair Asset Management, Inc. v. Moskovitz*, 142 .F.R.D. 347, 353 (N.D. Ga. 1992). Because the defendants do not seek taxation of the cost of any

copies of depositions they noticed, but only of the original transcript, the plaintiff's argument is irrelevant.

The plaintiff lists various categories of deposition costs and asserts generally that they are non-taxable under governing law. (*Id*. at 17). Because the plaintiff ignores the defendants' documentation, it identifies no specific expenses to which it objects on this score, and the Court will not undertake such a review and assessment on the plaintiff's behalf.

### i. Videotaping.

There is one exception to the preceding paragraph. The defendants recorded three depositions (Babington, Dearing, and Cox) both by stenographer and by videographer. (Doc. 153-1 at 6, 7, 9, 16-17). The defendants seek taxation of the video depositions in the total amount of $3,005. (*Id*. at 2). The plaintiff complains that the defendants should not be awarded the cost of both videotaping and reporting of any deposition, on the grounds they have not shown that the video recordings were "necessarily obtained." (Doc. 164 at 19; Doc. 153-1 at 16-17). The defendants, (Doc. 165 at 3-4), believe the issue was resolved in their favor by *Morrison v. Reichhold Chemicals, Inc*., 97 F.3d 460 (11th Cir. 1996).

"[W]e hold that, when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed." *Morrison*, 97 F.3d at 464-65 (footnote omitted). The defendants read *Morrison* as establishing that the plaintiff's failure to object to the videorecording of the three depositions establishes that both the court reporter's transcript and the videorecording of the deposition were "necessarily obtained" for use in the case. (Doc. 165 at 3-4). The Court cannot agree.

In 1996, Section 1920(2) provided for taxation of the costs of "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in

the case." *Morrison*, 97 F.3d at 464 (internal quotes omitted).  The question before the Eleventh Circuit was whether Section 1920 "excludes video depositions as a taxable cost because it mentions only stenographic depositions."  *Id*.  The Court answered this question in the negative, so long as the deposition was noticed for recording by nonstenographic means and the opposing party failed to object to that method.  In saying that, under such circumstances, it would be "appropriate" to award the cost of a video deposition, the panel affirmed only that a video deposition would be considered the equivalent of a stenographic deposition.

The holding of *Morrison* was effectively mooted by the 2008 amendment to Section 1920(2), which now expressly permits taxation of transcripts whether "printed or electronically recorded."[6]  Under both the 1996 and 2008 versions, however, the transcript to be taxed must have been "necessarily obtained for use in the case."  The *Morrison* Court recognized that "our determination that the taxation for the cost of video depositions is allowable under § 1920 does not end our analysis," precisely because "[w]e must still decide whether the copies of the videos obtained by [the defendant] were 'necessarily obtained for use in the case.'"  97 F.3d at 465.  More recently, the Eleventh Circuit upheld the denial of costs for a video deposition because the prevailing party failed to show that it was necessary for her to obtain a video of the deposition.  *Johnston v. Borders*, 36 F.4th 1254, 1288 n.65 (11th Cir. 2022).

Other appellate courts have likewise recognized that the cost of a video deposition can be taxed only if that method of recording was necessary.  U*nited States v. Halliburton Co*., 954 F.3d 307, 313 (D.C. Cir. 2020) (prevailing party demonstrated that a video of a deposition was necessary despite its possession of a written transcript); *United States ex rel. Long v. GSMDIdea City, L.L.C*., 807 F.3d 125, 130 (5th Cir. 2015) ("[W]e conclude that the cost of taking video depositions may be awarded if shown to be necessary for use in the case under § 1920(2)."); *Cherry v. Champion International*

---

[6] "The phrase 'electronically recorded transcripts' includes video transcripts of depositions."  *United States ex rel. Long v. GSMDIdea City, L.L.C.*, 807 F.3d 125, 131 (5th Cir. 2015).

*Corp.*, 186 F.3d 442, 449 (4ᵗʰ Cir. 1999) (a prevailing party cannot "recover the costs of *both* transcribing and videotaping" a deposition "unless [it] demonstrates that both costs were necessarily obtained for use in the case") (emphasis in original, internal quotes omitted).

Sister courts throughout the Eleventh Circuit have often recognized that, under *Morrison*, the mere noticing without objection of a video deposition will not support taxation of its costs, absent a showing that this additional mode of recording was necessary.[7]  This Court has ruled likewise.  *Selma Housing Development Corp. v. Selma Housing Authority*, 2005 WL 8158927 at *5 (S.D. Ala. 2005).[8]

Given that the defendants obtained from the court reporter a stenographic transcript of each videotaped deposition, it would appear likely that the cost of also videotaping the depositions was "merely incurred for convenience."  Because the defendants have not attempted to demonstrate that the apparently redundant videotapes of these depositions were "necessarily obtained,"[9] their cost cannot be taxed.

---

[7] *E.g.,  Bluegreen Vacations Unlimited, Inc. v. Timeshare Lawyers P.A.*, 2024 WL 2749298 at *6 (S.D. Fla. 2024); *Walker v. Life Insurance Co. of North America*, 2024 WL 872279 at *7-8 (N.D. Ala. 2024); *Porras v. United States*, 2023 WL 8520334 at *4 (M.D. Fla. 2023); *Tsavaris v. Savannah Law School, LLC*, 2021 WL 261272 at *5 (S.D. Ga. 2021); *Davidson v. City of Opelika*, 2016 WL 9113439 at *3 (M.D. Ala. 2016); *Bumpers v. Austal U.S.A., L.L.C.*, 2015 WL 6870122 at *2 (S.D. Ala. 2015); *Wetherington v. Ameripath, Inc.*, 2013 WL 12097825 at *16 (N.D. Ga. 2013).

[8] The defendants rely on this Court's opinion in *Windham v. City of Fairhope*, 2014 WL 3687224 (S.D. Ala. 2014).  (Doc. 161 at 3).  While the Court did allow deposition costs for both a written transcript and a videorecording, it did so without objection from the losing party.  *Id.* at *2.  To the extent that *Windham* may be read as endorsing automatic taxation of both a stenographic and a non-stenographic recording of the same deposition simply because it was so noticed without objection, the Court now retreats from that position.

[9] They have not, for example, asserted that these deponents will be unavailable for trial within the contemplation of Rule 32(a)(4*).  See Johnston*, 36 F.4ᵗʰ at 1288 n.65 (indicating that such unavailability would support the necessity of a video deposition).

### 3.  Summary.

The $3,005.00 requested for the videotaping of three depositions will not be taxed, but all other requested deposition expenses will be taxed, in the total amount of $13,964.20.

### B.  Transcription Costs.

The plaintiff's projects were discussed at three meetings of the Commission, which meetings are routinely recorded.  The defendants seek taxation of the cost of creating full or partial transcripts of these meetings, plus a partial transcript of a fourth meeting at which minutes of an earlier meeting were approved.  They also seek taxation of the cost of creating a transcript of the secret recording of MacKellar that the plaintiff made a focus of its second amended complaint and opposition to the defendants' motion for summary judgment.  *See* note 5, *supra*.  The total amount sought in this category is $3,352.00.

The Eleventh Circuit has permitted the taxation under Section 1920(2) of the cost of a court hearing transcript, if it was necessarily obtained for use in the case,[10] and it has indicated that non-judicial transcripts are similarly taxable.  *Johnston*, 36 F.4th at 1288 n.65 ("It was not clear error to find unnecessary a transcript of a video news piece that was already before the jury simply so they could have it in the jury room.").  The defendants cite sister court decisions to the same effect.  (Doc. 161 at 7).  The plaintiff does not deny that the transcripts at issue fall within Section 1920(2).

The defendants assert that the transcripts were necessarily obtained in order to show what actually transpired and to counter the plaintiff's false narrative.  (*Id*. at 8-9).  The second amended complaint alleged that the Commissioners expressly agreed at the first meeting to fabricate a reason to deny the applications and then executed their plan at the second and third meetings.  (Doc. 95 at 10-11, 14, 21).  The second amended complaint further alleged that MacKellar admitted on tape that no legitimate reason

---

[10] *Fodor v. D'Isernia*, 599 Fed. Appx. 375, 375-76 (11th Cir. 2015); *Watson v. Lake County*, 492 Fed. Appx. 991, 998 (11th Cir. 2012).

existed to deny the applications.  (*Id*. at 3, 15).  The defendants used two of the transcripts on motion for summary judgment.  (Doc. 131-19; Doc. 137-10).   The plaintiff does not deny that the transcripts were necessarily obtained for use in the case.

The plaintiff challenges the taxation of these costs only by questioning whether the transcripts were in fact created and, if so, whether they were created after this lawsuit commenced.  (Doc. 164 at 18-20).  The invoices overlooked by the plaintiff establish both that the transcripts were created and that they were created long after suit was filed. (Doc. 153-1 at 11, 14-15, 21-22).

The cost of transcribing the five recordings requested by the defendants will be taxed, in the total amount of $3,352.00.

### C.  Copying Costs.

The cost of making copies is taxable "where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  The defendants seek taxation of copying costs in the amount of $2,728.66.

The defendants identify three copying jobs supporting this request:  (1) printing oversized plats, construction drawings, and related documents; (2) converting and labeling emails received from a third party; and (3) copying the defense expert's file, with the end product of these activities produced to the plaintiff.  (Doc. 161 at 9).  As the defendants note, "'[c]opies attributable to discovery' are a category of copies recoverable under § 1920(4)."  *W&O*, 213 F.3d at 623 (quoting *Desisto College, Inc. v. Town of Howey-in-the-Hills*, 718 F. Supp. 906, 913 (M.D. Fla. 1989)).  And that category of course includes "documents tendered to the opposing party."  *Desisto College*, 718 F. Supp. at 913.

The plaintiff complains that the defendants did not "present required evidence regarding the documents copied including their use or intended use" as per *Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994).  (Doc. 164 at 16).  As noted, however, the defendants assert they obtained the copies in order to respond to discovery.  The plaintiff obviously knows whether it received these copies in

discovery, and its failure to deny that it received them speaks volumes.  But if the plaintiff insists on literal "evidence" the copies were obtained for production in discovery, defense counsel has provided it.  (Doc. 153-1 at 3).

Echoing a previous argument, the plaintiff claims these costs cannot be awarded because the copies "bear no relation" to the defendants' motion for summary judgment but are instead relevant only to the claims dismissed under Section 1367(c) and now refiled in the state action.  (Doc. 164 at 17-18).  However, the plaintiff admits the documents address regulatory compliance and damages, (*id*. at 18), and, as explained in Part III.A.1,  both were at issue with respect to the claims dismissed on their merits. Moreover, because the copies were necessarily obtained for production to the plaintiff, it is irrelevant whether they supported the defendants' successful dispositive motion.

The plaintiff denies that the defendants submitted documentation to "substantiate the existence of these costs."  (Doc. 164 at 16).  Again, the plaintiff overlooks the defendants' bill of costs and attached exhibits, which provide such documentation.  (Doc. 153-1 at 23-25).

Finally, the plaintiff objects to the taxation of the costs of "converting" and "labeling."  (Doc. 164 at 17).  The plaintiff relies on appellate cases recognizing that Section 1920(4) limits recovery to the act of "making copies" and that manipulation of non-paper materials[11] may require multiple steps that do not themselves make copies (and thus may not be taxable) or that may, conversely, result in multiple generations of copies (with only the final product being taxable).  *In re:  Online DVD-Rental Antitrust Litigation*, 779 F.3d 914, 929-30 (9th Cir. 2015); *Country Vintner, LLC v. E. & J. Gallo Winery, Inc*., 718 F.3d 249, 259 (4th Cir. 2013).  Without resolving how these potentially intricate matters should be analyzed or decided, the Court agrees that the defendants'

---

[11] Prior to its 2008 amendment, Section 1920(4) was limited to fees for "copies of papers" necessarily obtained for use in the case.  *Arcadian Fertilizer, L.P. v. MPW Industrial Services, Inc*., 249 F.3d 1293, 1296 (11th Cir. 2001).  Under that regime, recovery was limited to "reproductions involving paper in its various forms."  *Id*.  Because the statute now allows recovery for making copies "of any materials," that restriction no longer applies.

second category of copies, judging by the provider's invoice, implicates the concerns of these and other cases. Because the defendants elected not to respond to the plaintiff's statement of the problem, the Court will not award costs for that category.

In sum, the Court will tax copying costs in the amount of $2,249.50.

### D. Other Costs.

The defendants seek recovery of a $40 witness fee[12] and an $83 subpoena fee.[13] The plaintiff does not object. Accordingly, the Court will tax these costs.

## CONCLUSION

For the reasons set forth above, the defendants' motion to retax costs is **granted in part**. The defendants are **awarded** $19,688.70 pursuant to Section 1920 and Rule 54(d)(1). To the extent the defendants seek additional relief, the motion is **denied**.

No further order will be forthcoming from the Court except upon application by any party for final judgment as prescribed by Rule 58.

DONE and ORDERED this 5th day of September, 2024.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[12] A witness appearing for deposition is entitled to an attendance fee of $40 per day, which may be taxed pursuant to Section 1920(3). *Morrison*, 97 F.3d at 463.

[13] "We hold that private process server fees may be taxed pursuant to §§ 1920(1) and 1921." *W&O*, 213 F.3d at 624. This includes service of subpoenas. *E.g., Trawick v. Carmike Cinemas, Inc.*, 430 F. Supp. 3d 1354, 1369 (M.D. Ga. 2019).